ORIGINAL

1   JAMES R. McGUIRE (CA SBN 189275)
    JMcGuire@mofo.com
2   GREGORY P. DRESSER (CA SBN 136532)
    GDresser@mofo.com
3   RITA F. LIN (CA SBN 236220)
    RLin@mofo.com
4   GRACE Y. PARK (CA SBN 239928)
    GracePark@mofo.com
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, California 94105-2482
    Telephone: 415.268.7000
7   Facsimile: 415.268.7522

8   JENNIFER C. PIZER (CA SBN 152327)
    JPizer@lambdalegal.org
9   LAMBDA LEGAL, Western Regional Office
    3325 Wilshire Boulevard, Suite 1300
10  Los Angeles, CA 90010-1729
    Telephone: 213.382.7600
11  Facsimile: 213.351.6050

E-filing

12  Attorneys for Plaintiff
    KAREN GOLINSKI

13

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16

17  KAREN GOLINSKI,                    Case No **C 10 0257**

18              Plaintiff,             **COMPLAINT**

19       v.

20  UNITED STATES OFFICE OF PERSONNEL
    MANAGEMENT,
21
                Defendant.
22

23

24

25

26

27

28

**INTRODUCTION**

1.      In January 2009, the Chief Judge of the United States Court of Appeals for the Ninth Circuit found that plaintiff, an employee of the Ninth Circuit, was suffering from unlawful discrimination in the terms of her employment: Plaintiff was denied the ability to add her same-sex spouse to her family health insurance plan. The Chief Judge, having found unlawful discrimination, ordered remedial action: He directed the Administrative Office of the Courts ("AO") to process her enrollment forms and send them to her insurance carrier.

2.      The AO complied. The defendant, Office of Personnel Management ("OPM"), however, instructed plaintiff's insurance carrier not to comply with the Chief Judge's Order.

3.      In November 2009, the Chief Judge issued another Order, addressing the conduct of OPM in "thwarting the relief [he] had ordered." In that Order, the Chief Judge found that he had the authority, under both the Ninth Circuit's Employment Dispute Resolution Plan and the separation of powers doctrine, to interpret laws applicable to judicial employees that would displace "any contrary interpretation by an agency or an officer of the Executive." The Chief Judge directed that the November Order be served on OPM, and invited OPM to appeal any portions of the Order that concerned the agency.

4.      OPM did not comply. And, lacking the courage of its convictions, it did not appeal either. Instead, on December 18, 2009, it issued a press release stating its refusal to comply because the Chief Judge's order purportedly "is not binding on OPM."

5.      On December 22, 2009, the Chief Judge issued yet another Order. The Order noted that the time in which OPM could have filed an appeal had expired and that, accordingly, his prior orders were final and preclusive on all issues decided therein as to which no appeal had been taken. The Order also expressly authorized plaintiff to seek enforcement of the Chief Judge's Orders against OPM at this time.

6.      Plaintiff, seeking redress of defendant's willful violation of the Chief Judge's duly issued Orders, alleges and complains as set forth below.

COMPLAINT
sf-2782758

1

1  **PARTIES**

2  7.  Plaintiff Karen Golinski, a natural person, is a California citizen residing in San

3  Francisco, California.

4  8.  Defendant United States Office of Personnel Management is an independent

5  establishment in the executive branch of the United States.  5 U.S.C. § 1101.

6  **JURISDICTION AND VENUE**

7  9.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1361 in that the

8  action is in the nature of mandamus to compel an agency of the United States to perform a duty

9  owed to plaintiff.

10  10.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

11  **FACTS**

12  11.  Ms. Golinski has been employed by the United States Court of Appeals, now

13  located at 95 Seventh Street in San Francisco, California 94103, for approximately 18 years.

14  Ms. Golinski is currently employed in the Motions Unit of the Office of Staff Attorneys.

15  12.  In December 1997, the United States Court of Appeals for the Ninth Circuit

16  adopted an Employment Dispute Resolution Plan ("EDR Plan").  As revised through

17  December 2000, that EDR Plan prohibits employment discrimination based on, among other

18  things, sex or sexual orientation.

19  13.  Ms. Golinski obtains health insurance through her employer.  Because she and her

20  spouse have a six-year old son, Ms. Golinski has, since his birth, paid for family health insurance

21  coverage under the Blue Cross and Blue Shield Service Benefit Plan ("Blue Cross/Blue Shield").

22  14.  On August 21, 2008, Ms. Golinski married Amy Cunninghis, her long-time

23  domestic partner, pursuant to a duly issued California marriage license.  Ms. Golinski and Ms.

24  Cunninghis remain lawfully married under the laws of the State of California.

25  15.  On September 2, 2008, Ms. Golinski sought to enroll her spouse in the family

26  coverage plan for which she was paying by submitting the appropriate forms to her employer.

27  The AO advised Ms. Golinski that her election form would not be processed because

28  Ms. Golinski and her spouse are both women.

COMPLAINT
sf-2782758

2

1    16.    Ms. Golinski timely and properly filed a complaint under the EDR Plan on
2    October 2, 2008, seeking redress of the discrimination she was suffering in the terms of her
3    employment. As required by the EDR Plan, Ms. Golinski's complaint was heard by the Chief
4    Judge. Following a hearing in November 2008, the Chief Judge issued a series of Orders dated
5    November 24, 2008, January 13, 2009, November 19, 2009, and December 22, 2009. The Chief
6    Judge's Orders are attached hereto as Exhibits A-D, respectively, and incorporated herein by
7    reference.

8    17.    By his Orders dated November 24, 2008, and January 13, 2009, the Chief Judge
9    ordered the Director of the AO to process Ms. Golinski's health benefit election forms without
10   regard to the sex of her spouse. The January 13 Order explained that the AO had incorrectly
11   concluded that the so-called "Defense of Marriage Act" (or "DOMA"), 1 U.S.C. § 7, prohibited
12   the extension of coverage to a same-sex spouse of a judicial employee for family health insurance
13   coverage by misinterpreting the phrase "member of family" in the Federal Employees Health
14   Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-8914. (Exhibit B [January 13, 2009 Order] at 2-6.)
15   The Chief Judge instead construed the FEHBA to permit the extension of coverage to a same-sex
16   spouse. (*Id.* at 7.)

17   18.    The AO complied with the Chief Judge's November 24, 2008 and January 13,
18   2009 Orders. OPM, however, gratuitously instructed Ms. Golinski's insurance carrier, Blue
19   Cross/Blue Shield, not to enroll Ms. Golinski's spouse on the grounds that, notwithstanding
20   contrary analysis and orders from the Ninth Circuit, the FEHBA and DOMA prohibited the
21   extension of such coverage. (Exhibit C [November 19, 2009 Order] at 3 & Exhibit A thereto.)

22   19.    As a result of OPM's interference in the EDR proceeding, the Chief Judge issued a
23   further Order on November 19, 2009 "to protect Ms. Golinski and the integrity of the Judiciary's
24   EDR plans." (Exhibit C at 3.) In a thorough and well-reasoned decision, the Chief Judge
25   explained that, as to judicial employees, the separation of powers doctrine requires that an EDR
26   tribunal's reasonable interpretations of the law take precedence over that of any office or agency
27   of the executive:

28

COMPLAINT
sf-2782758

3

1               OPM has a duty to take care that the laws be faithfully executed, but it may not disregard a coordinate branch's construction of the laws that apply to its employees. No less than the other branches of government, the Judiciary is dependent on people to carry out its mission. Barring us from determining, within reasonable bounds, the rights and duties of our personnel under the laws providing for their employment would make us a "handmaiden of the Executive." *United States v. Smith*, 899 F.2d 564, 569 (6th Cir. 1990). The power both to interpret and execute a law is the power to control those governed by it. *Cf.* The Federalist No. 47 (James Madison).

Concern about such a fate is particularly acute for the Judicial Branch. We rely on Congress to fund and the Executive to carry out many aspects of our day-to-day operations. GSA manages the buildings where we work, Treasury cuts our checks, U.S. Marshals provide our security and OPM administers our employee benefits programs. But if the theory of separate powers means anything, it's that the Executive cannot use its dominance over logistics to destroy our autonomy. Would we permit OPM to interpret a statute so as to require us to racially discriminate in what we pay our employees? Could the U.S. Marshals refuse to protect our courthouses because they disagree with our decisions? May the Treasury refuse to cut paychecks to judicial employees it believes are not suitable for their positions?

That those rights are not in question here is irrelevant. The power the Executive has arrogated to itself in this case would be enough to sustain those actions as well. Nor is it any answer that OPM could set out a plausible interpretation of the law to support its actions in this case. Some branch must have the final say on a law's meaning. At least as to laws governing judicial employees, that is entirely our duty and our province. We would not be a co-equal branch of government otherwise.

(Exhibit C at 11-12.)

20.     The Chief Judge expressly ordered OPM to remedy its prior, erroneous guidance to Blue Cross/Blue Shield and to cease all prospective interference:

(3)  Within 30 days, the Office of Personnel Management shall rescind its guidance or directive to the Blue Cross and Blue Shield Service Benefit Plan and any other plan that Ms. Golinski's wife is not eligible to be enrolled as her spouse under the terms of the Federal Employees Health Benefits Program because of her sex or sexual orientation, or that the plans would violate their contracts with OPM by enrolling Ms. Golinski's wife as a beneficiary.

(4)  The Office of Personnel Management shall cease at once its interference with the jurisdiction of this tribunal. Specifically, OPM shall not advise Ms. Golinski's health plan, the Blue Cross and Blue Shield Service Benefit Plan, that providing coverage for Ms. Golinski's wife violates DOMA or any other federal law. Nor

COMPLAINT

sf-2782758

4

1

shall OPM interfere in any way with the delivery of health benefits
to Ms. Golinski's wife on the basis of her sex or sexual orientation.

2

3    (Exhibit C at 15-16.) The Chief Judge ordered the Clerk of the Court to serve the Order on OPM,

4    and invited OPM to appeal. (*Id.* at 16.)

5        21.    The Clerk of the Court complied with the Chief Judge's Order, and served the

6    Order on OPM.

7        22.    OPM did not appeal the Chief Judge's November 19, 2009 Order as it was entitled

8    and invited to do. Nor did it comply with the Order. Instead, it issued a press release stating that

9    it will not, and has no obligation to, comply because, in its view, the Order "is not binding on

10   OPM as it was issued in [the Chief Judge's] administrative capacity, and not as a judge in a court

11   case." *See* Statement from Elaine Kaplan, OPM General Counsel, *available at* http://www.

12   washingtonpost.com/wp-srv/nation/documents/statement_from_elaine_kaplan_opm.pdf, a true

13   and correct copy of which is attached hereto as Exhibit E, and incorporated herein by reference.

14       23.    On December 22, 2009, the Chief Judge issued a final Order, holding that the time

15   to appeal the prior orders had expired, finding that those prior orders are "therefore final and

16   preclusive on all issues decided therein as to those who could have, but did not appeal, such as the

17   [OPM]," and authorizing Ms. Golinski to take further action to enforce the prior orders.

18   (Exhibit D [December 22, 2009 Order] at 1.)

19                              **CLAIM FOR RELIEF**
                                     **(Mandamus)**
20

21       24.    Plaintiff incorporates and realleges each and every allegation contained in

22   paragraphs 1 through 23 of this Complaint as if set forth fully herein.

23       25.    Plaintiff has a clear and certain right to have defendant rescind its prior guidance

24   to Blue Cross/Blue Shield and to cease its interference with plaintiff's attempts to redress the

25   workplace discrimination she has suffered and continues to suffer. Plaintiff, by pursuing her

26   claim under the EDR, followed the only remedial path lawfully available to her and obtained

27   Orders from the Chief Judge granting her relief. Defendant had a full and fair opportunity to

28   contest the Chief Judge's Orders, including an appeal therefrom, but chose not to avail itself of

COMPLAINT                                                                                              5
sf-2782758

1  such remedies. Defendant has, accordingly, waived any and all arguments that are contrary to the

2  Chief Judge's Orders.

3      26.     Defendant's duty to comply requires only the ministerial acts of rescinding its

4  prior guidance and ceasing further interference. No exercise of defendant's discretion is required.

5      27.     Plaintiff has no other adequate remedy. Indeed, plaintiff has fully and finally

6  pursued her only lawful remedy under the EDR and obtained the relief she seeks. Defendant,

7  however, has willfully interfered with that proceeding and thwarted plaintiff's attempt to

8  vindicate her rights. Only an Order from this Court — the legitimacy of which defendant will

9  presumably recognize — can afford plaintiff her rights.

10                                        **PRAYER**

11      Wherefore, plaintiff Karen Golinski prays for relief as follows:

12      a. the issuance of preliminary and permanent injunctions compelling defendant, and those

13  acting at its direction or on its behalf, to comply with the Chief Judge's November 24, 2009

14  Order;

15      b. costs incurred in maintaining this suit; and

16      c. such other and further relief as the Court may deem just and proper.

17

18  Dated: January 20, 2010                    MORRISON & FOERSTER LLP

19                                             LAMBDA LEGAL

20

21                                        By: _____
                                              JAMES R. MCGUIRE
22

23                                             Attorneys for Plaintiff
                                               KAREN GOLINSKI
24

25

26

27

28

COMPLAINT                                                                                    6
sf-2782758

**EXHIBIT A**

**FILED**

NOV 2 4 2008

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

In re: Employee Dispute )
  Resolution Plan )

         **AMENDED**
         **ORDER**

    In light of Karen Golinski's October 2, 2008 complaint filed under the

Court's Employee Dispute Resolution Plan, and due to the holding in

*In re Marriage Cases*, 43 Cal. 4th 757, 183 P.3d 384 (2008), the Director of the

Administrative Office of the United States Courts is ordered to submit Ms.

Golinski's Health Benefits Election form 2809, which she signed and submitted on

September 2, 2008, to the appropriate health insurance carrier. Further, if Ms.

Golinski submits any additional forms during open season, those forms should be

submitted as well.

11 - 24 - 08

Alex Kozinski
Chief Judge

# EXHIBIT B

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

**FILED**

JAN 1 3 2009

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

IN THE MATTER OF KAREN
GOLINSKI

AMENDED
ORDER

An employee has complained of workplace discrimination. Karen Golinski

is a staff attorney at the Ninth Circuit headquarters in San Francisco, California. In

2008, she married Amy Cunninghis, with whom she has a five-year-old son. Since

her son's birth, Golinski has paid for family health insurance under the Federal

Employees Health Benefits Act. After marrying, Golinski applied to add her wife

to her health insurance, but was denied because of Cunninghis's sex.

The staff attorney's office is governed by the Ninth Circuit's employment

dispute resolution plan, which prohibits discrimination based on sex and sexual

orientation. Golinski complains that she has been denied health insurance benefits

for her spouse. Specifically, she points to similarly situated heterosexual

employees who receive health insurance benefits for their spouses and argues that

the unequal treatment is on account of sexual orientation and sex, namely the sex

of her wife. The availability of health insurance for oneself and one's family is a

valuable benefit of employment, and denial of such a benefit on account of sex and

sexual orientation violates the terms of the EEO plan that covers Golinski.

The denial occurred when the Director of the Administrative Office of the United States Courts refused to certify Golinski's identification of her spouse as family, because he believed that such an identification was barred by the Defense of Marriage Act (DOMA). 1 U.S.C. § 7. DOMA provides that, when interpreting federal law, the term "marriage" means only a legal union between one man and one woman, and the word "spouse" refers only to a person of the opposite sex who is a husband or a wife. As I understand it, the Director has refused to certify Golinski for family coverage because her wife is not considered a spouse for purposes of federal law, and thus isn't "family" as that term is used in 5 U.S.C. § 8903(1), which is part of the Federal Employee Health Benefits Act (FEHBA). That section authorizes the Office of Personnel Management to contract for health benefit plans covering "employees, annuitants [and] members of their families . . . ." "Member of family" is, in turn, defined as an employee's spouse and children. 5 U.S.C. § 8901(5). The Director reads these provisions as a limitation on the type of plan for which OPM may contract. Under this construction, OPM would act beyond its authority if it were to contract for benefits beyond those specified in section 8903.

But this isn't the only plausible reading of the FEHBA. Another way of

construing these statutory provisions is as a set of general guidelines for medical benefit plans, as well as a number of minimum requirements that such plans must satisfy. Under this construction, OPM would be acting outside the scope of its authority if it contracted for a plan that did not cover, say, an employee's children, but not if it contracted for terms that exceed the minimum statutory requirement. For example, section 8901(5) includes within the definition of "family" an employee's "dependent child under 22 years of age." Under the broader construction of the section, OPM would be required to contract for a plan covering children meeting the statutory definition, but would be free to negotiate coverage that includes older children—say until age 25—or other members of the employee's family, such as parents or siblings living in the employee's household. Under this broader construction, OPM would also be free to contract for "family" benefits for individuals who do not qualify as spouses under federal law, but who are considered spouses under state law.

Adopting the broader construction of the statute not only harmonizes the statutory scheme with our EEO plan, it avoids difficult constitutional issues. If I were to interpret the FEHBA as excluding same-sex spouses, I would first have to decide whether such an exclusion furthers a legitimate governmental end. Because mere moral disapproval of homosexual conduct isn't such an end, the answer to

this question is at least doubtful.

In <u>Romer</u> v. <u>Evans</u>, 517 U.S. 620 (1996), the Supreme Court held
unconstitutional an amendment to the Colorado constitution that prohibited civil
rights protections for gays, lesbians and bisexuals. The stated basis for that
amendment was simply "moral disapproval of homosexual conduct, the same sort
of moral disapproval that produced the centuries-old criminal laws that [the Court]
held constitutional in [<u>Bowers</u> v. <u>Hardwick</u>, 478 U.S. 186 (1986), <u>overruled by</u>
<u>Lawrence</u> v. <u>Texas</u>, 539 U.S. 558 (2003)]." <u>Id</u>. at 644 (Scalia, J., dissenting). The
Court held that a law that "classifies homosexuals not to further a proper legislative
end but to make them unequal to everyone else" lacks a rational basis. <u>Id</u>. at 635
(majority opinion). Implicit in this conclusion is that disapproval of homosexuality
isn't itself a proper legislative end.

Moreover, in <u>Reitman</u> v. <u>Mulkey</u>, 387 U.S. 369 (1967), the Supreme Court
struck down a California housing law. The law was facially neutral with respect to
race: By its own terms, it simply protected certain ownership and sale rights of
property owners. But the Court concluded that, on the basis of the context and
circumstances of the law's passage, it had the "design and intent" of weakening the
state's anti-discrimination laws. <u>Id</u>. at 374. <u>Reitman</u> counseled "sifting facts and
weighing circumstances on a case-by-case basis" to determine whether the State

page 5

has become "significantly involved in private discriminations," which is forbidden. Id. at 378 (internal quotation marks and citation omitted).

Whether DOMA's sweeping classification has a proper legislative end, or whether it reflects no more than an invidious design to stigmatize and disadvantage same-sex couples, is a hard question. The inquiry conducted by the Court in Reitman into the history and context of the California law was searching and careful, and to conduct a similar inquiry of DOMA would be a delicate and difficult task.

A separate line of authority would also require me to determine whether DOMA impermissibly punishes homosexuality. In Lawrence v. Texas, 539 U.S. 558 (2003), the Supreme Court invalidated a Texas statute criminalizing same-sex sodomy. Though its facts are narrow, its reasoning and the potential scope of its holding are broad. Lawrence rests explicitly on the proposition that "our laws and tradition afford constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education," and that one's sexual orientation therefore enjoys protection from punishment. Id. at 574. The Court went on to "counsel against attempts by the State, or a court, to define the meaning of the relationship or to set its boundaries absent injury to a person or abuse of an institution the law protects." Id. at 567.

The bounds of Lawrence's holding are unclear; this is itself a difficult matter of constitutional law, as we recently recognized in Witt v. Dep't of Air Force, 527 F.3d 806 (9th Cir. 2008). Witt held that the military's "Don't Ask, Don't Tell" policy, which prohibits open homosexuality in the armed forces, had to survive heightened scrutiny as applied to each service member discharged. Given the "studied limits of the verbal analysis in Lawrence," we declined the invitation of the parties to "pick through Lawrence with a fine-toothed comb and to give credence to the particular turns of phrase used." Id. at 816. We ultimately fashioned a multi-pronged balancing test for state sanction of homosexuality derived from yet another separate line of Supreme Court authority, Sell v. United States, 539 U.S. 166 (2003).

The effect of Lawrence and Witt on a discriminatory benefits law are far from clear. I would have to consider, for example, the relative magnitude of the state sanction here: Lawrence involved a criminal penalty, but that penalty was only a small fine. Golinski pays out of pocket to purchase additional health insurance for her spouse, and her expenses each month exceed the total fine imposed in Lawrence. I would need to apply Witt's multi-pronged balancing test or fashion my own interpretation of Lawrence's requirements—in either case, a major decision of constitutional law.

When a statute admits two constructions, one of which requires a decision on a hard question of constitutional law, it has long been our practice to prefer the alternative. <u>Ashwander</u> v. <u>Tenn. Valley Auth.</u>, 297 U.S. 288, 345–46 (1936) (Brandeis, J., concurring). The discussion above illustrates the constitutional thicket into which the discriminatory construction drags us. I therefore construe the Federal Employee Health Benefits Act to permit the coverage of same-sex spouses.

The Director of the Administrative Office of the United States Courts is therefore ordered to submit Karen Golinski's Health Benefits Election form 2809, which she signed and submitted on September 2, 2008, to the appropriate health insurance carrier. Any future health benefit forms are also to be processed without regard to the sex of a listed spouse.

1 - 1 2 - 0 9

Alex Kozinski
Chief Judge

# EXHIBIT C

CALENDARED
MORRISON & FOERSTER LLP
DOCKET DEPARTMENT
SAN FRANCISCO

NOVEMBER 23, 2009

DATE:_____12/21, 1/28/2010____
BY:          KIM M. MEANS

## FOR PUBLICATION

## UNITED STATES COURT OF APPEALS

F I L E D

## FOR THE NINTH CIRCUIT

NOV 19 2009

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| IN THE MATTER OF KAREN GOLINSKI* et ux. | No. 09-80173 <br><br> **ORDER** |

Karen Golinski has been denied a benefit of federal employment because

she married a woman rather than a man. I previously determined that violates this

court's guarantee of equal employment opportunity. See In re Golinski, 2009 WL

2222884, at *1 (9th Cir. Jan. 13, 2009).** To avoid a difficult constitutional

problem, I harmonized the Defense of Marriage Act (DOMA), 1 U.S.C. § 7; the

statutes creating the benefit program at issue, the Federal Employees Health

Benefits Program (FEHBP), 5 U.S.C. §§ 8901 et seq.; and this court's commitment

to equal employment opportunity. In re Golinski, 2009 WL 2222884 at *1–3.

I then entered the following order:

---

* While personnel matters are ordinarily confidential, Ms. Golinski has
consented to the use of her name in this order.

** Because I rely on it as background for this order, I have directed my
earlier order be published.

The Director of the Administrative Office of the United States Courts is therefore ordered to submit Karen Golinski's Health Benefits Election form 2809, which she signed and submitted on September 2, 2008, to the appropriate health insurance carrier. Any future health benefit forms are also to be processed without regard to the sex of a listed spouse.

Id. at *3. No "party or individual aggrieved" by my decision appealed it. See U.S. Court of Appeals for the Ninth Circuit, Employment Dispute Resolution Plan 9 (1997) (hereinafter EDR Plan).

The Administrative Office of the United States Courts (AO) complied with my order and submitted Ms. Golinski's form 2809 to the Blue Cross and Blue Shield Service Benefit Plan, Ms. Golinski's health insurance carrier. That's as it should be; the AO is subject to the "supervision and direction" of the Judicial Conference of the United States, 28 U.S.C. § 604(a), and I exercised authority delegated by the Judicial Conference when I ordered relief.[1] After the AO submitted Ms. Golinski's form, I thought this matter had concluded. See 5 C.F.R.

---

[1] This court's EDR plan was adopted at the direction, and with the approval, of the Judicial Conference of the United States, see Judicial Conference of the United States, Model EDR Plan, ch. I, § 1 (hereinafter Model EDR Plan); EDR Plan at 1, as part of the tradition of decentralized administration and local management of the federal courts. Judicial Conference of the United States, Study of Judicial Branch Coverage Pursuant to the Congressional Accountability Act of 1995 2–3 (1996). Judicial officers acting pursuant to our EDR plan have the responsibility and authority "to provide the rights, protections, and remedies" to judicial employees enjoyed by congressional employees, and do so in the name of the Judicial Conference. See id. at 15.

page 3

§ 890.104.

The Executive Branch, acting through the Office of Personnel Management (OPM), thought otherwise. It directed the insurance carrier not to process Ms. Golinski's form 2809, thwarting the relief I had ordered. See Letter from Lorraine E. Dettman, Assistant Dir., Ins. Servs. Programs, U.S. Office of Pers. Mgmt., to Nancy E. Ward, Deputy Assistant Dir., Office of Human Res., Admin. Office of U.S. Courts (Feb. 20, 2009) (attached herewith as Exhibit A). I must now decide what further steps are necessary to protect Ms. Golinski and the integrity of the Judiciary's EDR plans.

### Retrospective Relief

Ms. Golinski has requested an award under the Back Pay Act. 5 U.S.C. §§ 5595 et seq. This court's EDR plan provides that relief under the Back Pay Act is available, EDR Plan at 9–10; see Dotson v. Griesa, 398 F.3d 156, 175 (2d Cir. 2005); Blankenship v. McDonald, 176 F.3d 1192, 1195 (9th Cir. 1999), and I must resolve any claim for such relief in the first instance. EDR Plan at 3.

There's no doubt the Act entitles judicial employees to back pay, 5 U.S.C. § 5596(a)(2), but I am aware of no prior determination as to what showing they must

make to receive an award.[2] I conclude they must prove three things: (1) there has

been a "personnel action"; that (2) is "unjustified or unwarranted"; and (3) results

in a "withdrawal or reduction of all or part of [the employee's] pay, allowances, or

differentials." Id. § 5596(b)(1).

**1.** The Back Pay Act defines a personnel action to include "the omission or

failure to take an action to confer a benefit." Id. § 5596(b)(5). It also covers "a

decision concerning pay [or] benefits." Id. § 2302(a)(2)(A)(ix). Refusing to

provide Ms. Golinski with health insurance for her wife satisfies either definition.

**2.** I find OPM's definition of the phrase "unjustified or unwarranted

personnel action" persuasive. For purposes of this court's EDR plan I therefore

define that phrase to mean:

> [A]n act of commission or an act of omission (i.e., failure to take an
> action or confer a benefit) that an appropriate authority subsequently

---

[2] I have no controlling precedent on which to rely. OPM's regulations don't
apply of their own force, 5 U.S.C. § 5596(c), and this claim doesn't arise under the
jurisdiction of the Court of Federal Claims, the Federal Circuit, the Merit System
Protection Board (MSPB) or a similar entity charged with interpreting the Act.
The body with supervisory jurisdiction over this proceeding—the Judicial Council
of the Ninth Circuit—has not, so far as I know, had occasion to interpret the Act.
Nor am I aware of any similar rulings from other circuits' Judicial Councils or the
Judicial Conference of the United States. My analysis is, however, consistent with
that in a recent order of another EDR tribunal in the Ninth Circuit. See In re
Levenson, No. 09-80172, slip op. at 20–22 (9th Cir. Nov. 18, 2009).

determines, on the basis of substantive or procedural defects, to have been unjustified or unwarranted under applicable law, Executive order, rule, regulation, or mandatory personnel policy established by an agency or through a collective bargaining agreement. Such actions include personnel actions and pay actions (alone or in combination).

5 C.F.R. § 550.803. The "agency" here is the United States Court of Appeals for the Ninth Circuit, 5 U.S.C. § 5596(a)(2); 28 U.S.C. § 610, and I conclude that denying an employee a benefit based on her sex or sexual orientation violates one of our "mandatory personnel policies." See EDR Plan at 2.

**3.** I also find OPM's definition of "pay, allowances, and differentials" persuasive. I therefore determine that the Act covers "pay, leave, and other monetary employment benefits to which an employee is entitled by statute or regulation and which are payable by the employing agency to an employee during periods of Federal employment." 5 C.F.R. § 550.803. The commentary to that regulation says it includes "benefits received under the Federal employee health benefits and group life insurance programs," 46 Fed. Reg. 58,271, 58,272 (Dec. 1, 1981), so I conclude spousal health insurance benefits qualify. As Ms. Golinski has been denied the benefit of insuring her wife, Amy Cunninghis, her "pay, allowances, [or] differentials" have been "withdraw[n] or reduc[ed]."[3]

---

[3] I also conclude that my prior order qualifies as a "correction of the (continued...)

**4.** Based on the above, I conclude Ms. Golinski is entitled to an award under the Back Pay Act, and I refer this matter to the Appellate Commissioner to determine its amount. Within 70 days the Commissioner shall forward to me, with copies to the parties, a report and recommendation as to the award I should enter (including attorneys' fees and any other monetary award to which Ms. Golinski may be entitled under the Act).

Because Ms. Golinski has already waited too long for relief, I wish to avoid the need for additional proceedings to determine the amount of her award. I therefore offer the Commissioner the following guidance: Compensatory damages aren't recoverable under this court's EDR plan, EDR Plan at 10, so Ms. Golinski is entitled only to an award equal in amount to the benefits she would have received, but has been denied, under the FEHBP, regardless of whether she's spent more (or less) on insurance in the interim. I determine the relevant measure of those benefits to be the cost of obtaining comparable private insurance for her wife, see 5 U.S.C. § 5596(b)(1)(A)(i), which the Commissioner should calculate on a monthly

---

[3](...continued)
personnel action," 5 U.S.C. § 5596(b)(1)(A), for purposes of the Back Pay Act. Denying back pay simply because a remedial decree has been frustrated would be inequitable. In any event, I see no reason that back pay cannot be awarded contemporaneously with a corrective action. See Robinson v. Dep't of the Army, 21 M.S.P.R. 270, 272–73 (1984).

basis for the relevant period(s) of time.

## Prospective Relief

An award of back pay only compensates Ms. Golinski for discrimination she's suffered until today. I have no reason to believe that this discrimination will cease without further action on my part, so I also consider whether to grant prospective relief as well. There are three options: (1) again order enrollment of Ms. Golinski's wife in a FEHBP insurance plan without regard to her sex; (2) enter an order prospectively awarding back pay to Ms. Golinski, payable on some regular basis, until she is permitted to enroll her otherwise-eligible spouse for insurance benefits; or (3) do nothing and leave Ms. Golinski with the burden of filing a new complaint every time she would like to purchase health insurance for her wife.

The third option is clearly inappropriate. Forcing an employee to endlessly litigate the same claim would be unjust and wasteful of the court's EDR resources. No doubt to avoid that very result, the EDR plan specifically authorizes an order designed to "prospectively insur[e] compliance" with this court's guarantee of equal employment opportunity. EDR Plan at 9. To do nothing in this case would read that language out of the plan.

I consider the second option inappropriate because it would be a colossal waste of taxpayer money. Unlike the employee in In re Levenson, Ms. Golinski is already signed up for a family plan to cover the children of the marriage. Adding her wife's name to the plan would cost the government nothing, see In re Levenson, No. 09-80172, slip op. at 13–14 & n.6, while providing prospective relief in the form of substitute insurance coverage would be expensive.

Also, it might be impossible to find an insurance plan on the private market that provides exactly the same benefits as provided under the FEHBP. Group plans almost always provide broader coverage than individual plans. I must consider the hassle and expense of finding such a plan, even if it does exist, as well. I am also uncertain whether "prospective" back pay would put Ms. Golinski in a position as advantageous as if her wife were covered by premiums that are automatically deducted, pre-tax, from her paycheck. And, even if those mundane concerns weren't present, there is an inherent inequality in allowing some employees to participate fully in the FEHBP, while giving others a wad of cash to go elsewhere. Even if the destination is the same, it's still the back of the bus.

The EDR plan provides that I may order a "necessary and appropriate" remedy for workplace discrimination. EDR Plan at 9. For the discrimination she's suffered in the past, I can offer Ms. Golinski only money. The remedy that's

"appropriate" for the future, however, is enrollment of Ms. Golinski's wife into the

same program an opposite-sex spouse would enjoy.  I see no justification for

giving Ms. Golinski a lesser remedy at substantial taxpayer expense when she can

have a full remedy at zero cost to the taxpayers.

My authority to order such relief is clear under the language of the EDR

plan.  Id. at 1, 9–10.  However, OPM's actions in this case suggest that further

explanation is "necessary."  Ordering enrollment is proper and within my

jurisdiction because Congress intended this tribunal to be the sole forum for

adjudicating complaints of workplace discrimination by employees of the

Judiciary.  With that responsibility must come power equal to the task.

1.  Congress has decided that the Judiciary's EDR tribunals are the only

forum where judicial employees may seek redress for unlawful personnel actions.

See Dotson, 398 F.3d at 171–76; Blankenship, 176 F.3d at 1195; Lee v. Hughes,

145 F.3d 1272, 1276 (11th Cir. 1998).  Our employees can't appeal to the MSPB,[4]

they have no Bivens action and they aren't provided remedies by the Civil Service

---

[4] Had my original order come from the MSPB, there would have been no
question that it would have had to be obeyed.  See 5 U.S.C. § 1204(a)(2); Kerr v.
NEA, 726 F.2d 730, 733 (Fed. Cir. 1984).  Our EDR tribunals take the place of the
MSPB for judicial employees, so it makes sense that Congress gave our EDR
tribunals powers coextensive with those of the MSPB.

Reform Act or state law. See, e.g., Dotson, 398 F.3d at 171–76. If a judicial

employee suffers an unjustified personnel action, such as being fired on account of

race, sex or religion, the only remedy possible would come from an EDR tribunal.

Our EDR tribunals must therefore have the authority to grant full relief, including

reinstatement (or other prospective relief) and back pay. If that's not true, judicial

employees who are victims of discrimination would have no remedy at all.

2. OPM's actions implicate an even more fundamental concern: the

autonomy and independence of the Judiciary as a co-equal branch of government.

In effect, OPM has claimed that its interpretations of the rights and benefits of

judicial employees are entitled to supremacy over those of the Judiciary. That's

incorrect, and the Executive must henceforth respect the Judiciary's interpretation

of the laws applicable to judicial employees. Any other result would prevent the

Judiciary from "accomplishing its constitutionally assigned functions," Nixon v.

Adm'r of Gen. Servs., 433 U.S. 425, 443 (1977), by seriously undermining our

autonomy over personnel matters. "While it may be convenient to have the

personnel system of [the Judiciary] covered by the personnel management network

of the executive branch, it is contrary to the doctrine of separation of powers."

H.R. Rep. 101-770(I), at 6 (1990), reprinted in 1990 U.S.C.C.A.N. 1709, 1710.

OPM has a duty to take care that the laws be faithfully executed, but it may not disregard a coordinate branch's construction of the laws that apply to its employees. No less than the other branches of government, the Judiciary is dependent on people to carry out its mission. Barring us from determining, within reasonable bounds, the rights and duties of our personnel under the laws providing for their employment would make us a "handmaiden of the Executive." United States v. Smith, 899 F.2d 564, 569 (6th Cir. 1990). The power both to interpret and execute a law is the power to control those governed by it. Cf. The Federalist No. 47 (James Madison).

Concern about such a fate is particularly acute for the Judicial Branch. We rely on Congress to fund and the Executive to carry out many aspects of our day-to-day operations. GSA manages the buildings where we work, Treasury cuts our checks, U.S. Marshals provide our security and OPM administers our employee benefits programs. But if the theory of separate powers means anything, it's that the Executive cannot use its dominance over logistics to destroy our autonomy. Would we permit OPM to interpret a statute so as to require us to racially discriminate in what we pay our employees? Could the U.S. Marshals refuse to our protect courthouses because they disagree with our decisions? May the Treasury refuse to cut paychecks to judicial employees it believes are not suitable

for their positions?

That those rights are not in question here is irrelevant. The power the Executive has arrogated to itself in this case would be enough to sustain those actions as well. Nor is it any answer that OPM could set out a plausible interpretation of the law to support its actions in this case.[5] Some branch must have the final say on a law's meaning. At least as to laws governing judicial employees, that is entirely our duty and our province. We would not be a co-equal branch of government otherwise.

History reveals that Congress intended the Judiciary to have, like Congress itself, the authority to manage its own personnel and adjudicate workplace complaints.[6] Until the Congressional Accountability Act of 1995 (CAA), none of

---

[5] In fact, the more a law the Executive administers is open to interpretation, the greater the separation-of-powers concerns. It is only because OPM has broad power to administer a grant of somewhat nebulous authority to contract for health insurance that the question I confront today arises: As between the Executive and the Judiciary, whose interpretation of the law should control for judicial employees? If Congress had spoken clearly on the scope of FEHBP coverage, there would be nothing to interpret and therefore no potential for conflicting interpretations.

[6] Take, for example, the Administrative Office of the United States Courts Personnel Act of 1990, Pub. L. 101-474, 104 Stat. 1097. The accompanying report by the House noted that the AO was, at the time of the act, "to a large extent . . . subject to the control of the executive branch in personnel matters." H.R. Rep. 101-770(I), at 6 (1990), reprinted in 1990 U.S.C.C.A.N. 1709, 1710. In contrast, (continued...)

the major workplace protection laws applied to congressional employees; Congress

worried that applying those laws to itself would grant the Executive too much

power over its affairs. See generally Harold H. Bruff, That the Laws Shall Bind

Equally On All: Congressional and Executive Roles in Applying Laws to

Congress, 48 Ark. L. Rev. 105, 120 (1994). The CAA solved this problem by

creating a special legislative branch agency called the Office of Compliance. Id. at

158. That office, rather than the Executive, enforces the workplace protection laws

that the CAA extended to Congress.

"Congress initially considered extending the [CAA's] coverage to

employees of the judicial branch but, mindful of the importance of judicial

autonomy, ultimately decided against such action." Dotson, 398 F.3d at 173.

Instead, it asked us to report on our efforts to adopt the CAA's standards

---

⁶(...continued)

"[t]he United States courts, which [the AO] serves, . . . are mostly free of such
Executive Branch supervision." Id. In order to correct that asymmetry, Congress
determined that the "authority granted under such law to the Equal Employment
Opportunity Commission (EEOC), the Office of Personnel Management (OPM),
the Merit System Protection Board (MSPB), or any other agency in the executive
branch, shall be exercised by the Administrative Office." Id. at 1712. No mention
of such a power for the courts was necessary. Our authority, part statutory and part
inherent, to control matters that touch on the operation of the courts was
recognized long before those agencies existed. See, e.g., Young v. United States
ex rel. Vuitton et Fils S.A., 481 U.S. 787, 793 (1987); Ex Parte Hennen, 38 U.S.
(13 Pet.) 230, 261–62 (1839).

voluntarily. 2 U.S.C. § 1434. The Judicial Conference of the United States

submitted that report in 1996, telling Congress: "The judicial branch is committed

to providing the general protections of the CAA laws in a manner that preserves

judicial independence and the decentralized administration of the federal courts."

Study of Judicial Branch Coverage, supra note 1, at 2. As part of that commitment,

the Judicial Conference reported that it was developing "a plan to provide the

rights, protections, and remedies similar to those provided in the CAA." Id. at 15.

That plan became the Model EDR Plan, supra note 1, under which this court

adopted, and the Judicial Council of the Ninth Circuit approved, the EDR plan that

controls these proceedings.

Congress took no further action, so it must have been satisfied with the

Judiciary's efforts. OPM's actions in this case have undermined the balance

Congress struck in the CAA, and have done so in a way that threatens the

independence of Congress's Office of Compliance as much as that of our EDR

tribunals. I don't believe Congress intended to grant OPM that authority. Instead,

I hold the CAA's reporting provision recognized the Judiciary's inherent authority

to resolve workplace complaints without interference by the Executive. I therefore

conclude that an EDR tribunal's reasonable interpretation of a law applied to

judicial employees must displace, for purposes of those employees, any contrary

interpretation by an agency or officer of the Executive.

I have determined that, even as limited by DOMA, the FEHBP permits

judicial employees to provide health insurance coverage to their same-sex spouses.

See In re Golinski, 2009 WL 222284 at *1–3. This court's non-discrimination plan

requires that Ms. Golinski be afforded that benefit. EDR Plan at 2. OPM had, and

has, no authority to conclude otherwise.

## Order

I order as follows:

(1)    This matter is referred to the Appellate Commissioner for a hearing on
Ms. Golinski's claim under the Back Pay Act. Within 70 days he shall submit a
report and recommendations on the factual issues listed above. See p. 6 supra.

(2)    Within 30 days, the Administrative Office of the United States Courts
shall re-submit Ms. Golinski's Health Benefits Election form 2809 to her
designated insurer, the Blue Cross and Blue Shield Service Benefit Plan. The AO
shall process any future benefit forms without regard to the sex of the listed
spouse. See pp. 8–9 supra.

(3)    Within 30 days, the Office of Personnel Management shall rescind its
guidance or directive to the Blue Cross and Blue Shield Service Benefit Plan and
any other plan that Ms. Golinski's wife is not eligible to be enrolled as her spouse
under the terms of the Federal Employees Health Benefits Program because of her
sex or sexual orientation, or that the plans would violate their contracts with OPM
by enrolling Ms. Golinski's wife as a beneficiary. See pp. 3, 9–15 supra.

(4)    The Office of Personnel Management shall cease at once its
interference with the jurisdiction of this tribunal. Specifically, OPM shall not
advise Ms. Golinski's health plan, the Blue Cross and Blue Shield Service Benefit

Plan, that providing coverage for Ms. Golinski's wife violates DOMA or any other
federal law. Nor shall OPM interfere in any way with the delivery of health
benefits to Ms. Golinski's wife on the basis of her sex or sexual orientation. See
pp. 3, 9–15 supra.

(5)    The Blue Cross and Blue Shield Service Benefit Plan shall enroll Ms.
Golinski's wife within 30 days of receipt of the appropriate forms from the
Administrative Office of the United States Courts, without regard to her sex or
sexual orientation.

I authorize Ms. Golinski to take appropriate action to secure compliance

with this order, such as by petition for enforcement or mandamus. I trust, however,

that such action will not be necessary.

November 19, 2009
Date

Alex Kozinski
Chief Judge

The Clerk shall send this order to the Administrative Office of the United

States Courts and serve the order and a copy of our EDR plan on the Office of

Personnel Management and the Blue Cross and Blue Shield Service Benefit Plan in

the manner described by Fed. R. Civ. P. 4(h), (i). If OPM or Blue Cross wishes, it

may appeal so much of this order as concerns it using the procedures outlined in

the plan. See EDR Plan at 9; Dep't of Agric., Food and Nutrition Servs. v. FLRA,

879 F.2d 655, 658–59 (9th Cir. 1989), vacated in part on other grounds, 895 F.2d

1239 (9th Cir. 1990). Any other individual or party aggrieved by this proceeding

may similarly appeal.

page 18

## Counsel

Argued by Rita F. Lin, Morrison & Foerster LLP, San Francisco, CA, who was joined on the briefs by James R. McGuire, Morrison & Foerster LLP, San Francisco, CA, for Karen Golinski.

## EXHIBIT A



**Human Resources
Products and Services
Division**

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

**FEB 2 0 2009**

Ms. Nancy E. Ward
Deputy Assistant Director
Office of Human Resources
Administrative Office of the United States Courts
Washington, D.C. 20544

Dear Ms. Ward:

We have recently been contacted by officials of the Kaiser Foundation Health Plan and the Blue Cross and Blue Shield Service Benefit Plan regarding enrollment forms, and Orders from the U.S. Court of Appeals for the Ninth Circuit, submitted by your office. The intent of the enrollment forms was to provide health benefits coverage for the same-sex spouses of Mr. Brad Levenson and Ms. Karen Golinski.

As you are aware, Title 5, chapter 89 of the United States Code governs the Federal Employees Health Benefits (FEHB) Program. It provides for coverage of the employee and members of the employee's family. Members of the family are defined in the law, and include only certain unmarried dependent children and the spouse of the eligible employee or annuitant. P.L. 104-199, the Defense of Marriage Act (DOMA) requires an agency when interpreting an Act of Congress, to define the word "spouse" as a person of the opposite sex who is a husband or a wife. OPM issued guidance to agencies regarding the definitions of "marriage" and "spouse" in Benefits Administration Letter 96-111, dated November 15, 1996. This Letter is available on the OPM web site at http://www.opm.gov/retire/pubs/bals and remains in effect. Officials of agencies participating in the Federal benefits programs administered by OPM must follow the guidance provided in the Letters.

Because of the provisions of the FEHB law, as further defined by DOMA, Plans in the FEHBP may not provide coverage for domestic partners, or legally married partners of the same sex, even though recognized by state law.

Ms. Nancy E. Ward                                                                    2

We have advised Kaiser Foundation Health and the Blue Cross and Blue Shield Service Benefit Plans that they may not accept the enrollment forms submitted by your agency to provide coverage that is not allowed under Federal law.

If you have any questions, you may reach me at (202) 606-4762.


                                                      Sincerely,

                                                      Lorraine E. Dettman

                                                      Lorraine E. Dettman
                                                      Assistant Director
                                                      Insurance Services Programs


cc: Kaiser Foundation Health Plan
    Blue Cross and Blue Shield Service Benefit Plan

# EXHIBIT D

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**F I L E D**

DEC 2 2 2009

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| IN THE MATTER OF KAREN GOLINSKI et ux. | No. 09-80173 |
| | **ORDER** |

The time for appeal from my orders in this matter, dated January 13, 2009, and November 19, 2009, has expired. Only the Blue Cross and Blue Shield Association ("Blue Cross") has filed a timely notice of appeal; it petitioned the Judicial Council for review of my November 19, 2009, order on December 17, 2009. My prior orders in this matter are therefore final and preclusive on all issues decided therein as to others who could have, but did not appeal, such as the Office of Personnel Management ("OPM") and the Administrative Office of the United States Courts. Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398–402 & n.4 (1981); see also Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195, 2205–07 (2009).

As the jurisdictional issues presented in Blue Cross's petition for review are separate and distinct from those concerning my now conclusively-determined

page 2

jurisdiction over governmental entities such as OPM, I authorize Ms. Golinski to

take what further action she deems fit against any entity other than Blue Cross,

without waiting for the Judicial Council's disposition of Blue Cross's appeal.

December 22, 2009

Alex Kozinski
Chief Judge

**EXHIBIT E**

Subject  STATEMENT FROM ELAINE KAPLAN, OPM
          GENERAL COUNSEL

## STATEMENT FROM ELAINE KAPLAN, OPM GENERAL COUNSEL

There have been some developments in the Ninth Circuit regarding access to
benefits for same-sex spouses of federal employees, and there's some confusion
over this important issue. Specifically, Karen Golinski, an employee of the Federal
Courts, filed a grievance against her employer claiming that the denial of enrollment
of her same-sex spouse in the Federal Employees Health Benefits Plan (FEHBP)
violated the Ninth Circuit's Equal Employment Opportunity policy. Ninth Circuit Chief
Judge Alex Kozinski, sitting in his administrative capacity, and not as a federal judge
in a court case, said that employees of the court were entitled to FEHBP health
benefits for their same-sex spouses. OPM must administer the FEHBP in a lawful
manner, and the Department of Justice (DOJ) has advised OPM that providing those
benefits would violate the so-called "Defense of Marriage Act."

All federal employees – be they in the Executive, Legislative or Judicial branch –
receive their heath care benefits in the FEHBP, which is administered by OPM.
Spouses and minor children of federal employees are eligible to be enrolled in the
FEHBP. However, in 1996, the so-called "Defense of Marriage Act" was signed into
law and it states that the word "spouse," when used in a federal statute, can mean
only opposite-sex spouses. In other words, the current federal law means that same-
sex spouses are ineligible to be enrolled in federal benefit programs that define
eligibility based on their status as spouses. As the President has explained, the
Administration believes that this law is discriminatory and needs to be repealed by
Congress – that is why President Obama has stated that he opposes DOMA and
supports its legislative repeal. He also has said he supports the Domestic Partner
Benefits and Obligations Act (DPBO), which would allow all same-sex domestic
partners of federal employees to receive federal benefits, including enrollment in the
FEHB Plan.

It's important to understand that Judge Kozinski was acting as an administrative
official in this matter, reacting to the concerns of an employee of the judiciary. He
was not acting as a federal judge in a court case. This does not mean that the
inability to extend benefits to Karen Golinski's spouse is any less real or less painful,
but it is a critical point.

The decision in this matter was not reached lightly – after we learned of this
development, we examined our options and consulted with the DOJ. DOJ advised us
that the order issued by Judge Kozinski does not supersede our obligation to comply

with existing law because it is not binding on OPM, as it was issued in his administrative capacity, and not as a judge in a court case. Thus, this type of order does not change the existing law, which DOJ concludes prevents the enrollment. DOJ also advised us that DOMA prohibits same-sex spouses of federal employees from enrolling in the FEHBP and that the law does not permit OPM to allow this enrollment to proceed.

This issue shows exactly why Congress needs to repeal DOMA and pass the DPBO. In fact, the passage of the DPBO would remedy this situation in a way that reaches beyond this individual case involving an employee of the judiciary by providing benefits to same-sex domestic partners of all federal employees across the government whether or not they are married. That is why the Administration has testified before Congress on this crucial legislation, and why the President has personally called for its passage.

1  **CERTIFICATE OF SERVICE BY CERTIFIED MAIL**
(Fed. R. Civ. Proc. Rule 5(b))

2

     I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address
3  is 425 Market Street, San Francisco, California 94105-2482; I am not a party to the within cause;
I am over the age of eighteen years and I am readily familiar with Morrison & Foerster's practice
4  for collection and processing of correspondence for mailing with the United States Postal Service
and know that in the ordinary course of Morrison & Foerster's business practice the document
5  described below will be deposited with the United States Postal Service on the same date that it is
placed at Morrison & Foerster with postage thereon fully prepaid for collection and mailing.

6

     I further declare that on the date hereof I served a copy of:
7

8                    **COMPLAINT**

on the following by placing a true copy thereof enclosed in a sealed envelope addressed as
9  follows for collection and mailing at Morrison & Foerster LLP, 425 Market Street, San Francisco,
California 94105-2482, in accordance with Morrison & Foerster's ordinary business practices:

10

     United States Office of Personnel Management
11  Theodore Roosevelt Building
     1900 E Street NW, Room 7355
12  Washington, DC 20415

13  Joseph P. Russoniello, Esq.
     U. S. Attorney for the Northern District of California
14  450 Golden Gate Avenue, 10th Floor

15  San Francisco, CA 94102

16  Eric Holder, Esq.
     Attorney General of the United States
17  U.S. Department of Justice
     950 Pennsylvania Avenue, NW
18  Washington, DC 20530

19  Steven Y. Bressler, Esq.
     Trial Attorney
20  U. S. Department of Justice
     Civil Division
21  Federal Programs Branch
     P. O. Box 883
22  Washington, DC 20044

23       I declare under penalty of perjury that the above is true and correct.

24       Executed at San Francisco, California, this 20th day of January, 2010.

25

26  _____Janie Fogel_____  _____
           (typed)  (signature)

27

28

Certificate of Service
sf-2787463