1   MICHAEL F. HERTZ
    Deputy Assistant Attorney General
2   JOSEPH P. RUSSONIELLO
    United States Attorney
3   SUSAN K. RUDY
    Assistant Branch Director
4   STEVEN Y. BRESSLER
    Trial Attorney
5   United States Department of Justice
    Civil Division, Federal Programs Branch
6
    P.O. Box 883
7   Washington, D.C.  20044
    Telephone:  (202) 305-0167
8   Facsimile:  (202) 616-8470
    Email: Steven.Bressler@usdoj.gov
9
    Attorneys for Defendant
10  the U.S. Office of Personnel Management

11              UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

13                  OAKLAND DIVISION

14  KAREN GOLINSKI                    )
                                      )   No. C 4:10-00257-SBA
15           Plaintiff,               )
                                      )   **DEFENDANT'S OPPOSITION TO**
16      v.                            )   **PLAINTIFF'S MOTION FOR A**
                                      )   **PRELIMINARY INJUNCTION**
17  THE UNITED STATES OFFICE OF       )
    PERSONNEL MANAGEMENT,             )   Date:   June 15, 2010
18                                    )   Time:   1:00 p.m.
             Defendant .             )   Place:  Courtroom 1, 4th Floor
19  _____  )           U.S. Courthouse, 1301 Clay St.
                                              Oakland, California 94612
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    FEHBP and the Plaintiff's Enrollment Effort. . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    The Ninth Circuit Judicial Council and Its EDR Plan. . . . . . . . . . . . . . . . . 4

    C.    Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.    Standard Of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.    Plaintiff Is Not Likely To Succeed On Her Mandamus Claim. . . . . . . . . . . . . . . . . . 10

    A.    Mandamus Is An Extraordinary And Drastic Remedy. . . . . . . . . . . . . . . . . . 10

    B.    Mandamus Is Not Available To Plaintiff Because OPM Is

        Not Under A "Clear Duty To Act.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1.    The United States Has Not Waived Its Sovereign Immunity
              For The Executive To Be Bound By An Administrative EDR
              Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        2.    The EDR Panel Is An Administrative, Not A Judicial, Body. . . . . . . . . 12

        3.    Congress Has Not Vested Administrative EDR Panels With
              Authority To Bind Federal Agencies Outside The Judiciary. . . . . . . . . . 13

             a.    The Statutory Authorization Of The Merit Systems
                 Protection Board Does Not Empower EDR Panels To
                 Direct Executive Agencies. . . . . . . . . . . . . . . . . . . . . . . . . . . 14

             b.    The Congressional Authorization Act Did Not Vest
                 Administrative EDR Panels With The Authority To Direct
                 Executive Agencies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

             c.    The AOUSC Personnel Act Does Not Empower EDR Panels
                 To Direct Executive Agencies. . . . . . . . . . . . . . . . . . . . . . . . . . 18

4.    Congress Has Vested OPM With The Authority To Interpret And Apply The Federal Health Employee Benefits Act. . . . . . . . . . . . . . . . . 20

5.    Constitutional Separation Of Powers Principles Do Not Authorize EDR Panels To Direct Executive Agencies' Statutorily-Authorized Administration Of Federal Programs. . . . . . . . . . . . . . . . . . . . . . . . . . . 22

6.    OPM Also Cannot Be Bound By The EDR Order Because It Was Not A Party To The EDR Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . 24

C.    Mandamus Is Unavailable Because Any Duty By OPM To Comply With An Administrative, Intra-Judicial EDR Order Is, At A Minimum, Not Free From Doubt. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

D.    Mandamus Is Inappropriate Because Plaintiff Has Adequate, Alternative Remedies At Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

E.    Even If Mandamus Were Otherwise Appropriate, The Court Should Decline To Mandamus OPM Under These Circumstances. . . . . . . . . . . 29

III.    Plaintiff Has Failed To Establish She Will Suffer Cognizable, Non-Speculative Irreparable Harm Absent An Emergency Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

A.    Plaintiff's Monetary Injuries Do Not Constitute Irreparable Harm. . . . . . . . . . . . 31

B.    Plaintiff Cannot Rely Upon Any Presumption Of Irreparable Harm. . . . . . . . . . . 33

C.    Plaintiff's Own Delay Undercuts Her Claims Of Irreparable Harm.  . . . . . . . . . . 34

IV.    The Balance Of Harms Militates Against Entry Of A Preliminary Injunction. . . . . . . . . . 35

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

1

2

## <u>TABLE OF AUTHORITIES</u>

3  **CASES**

4                                                                    **PAGE(s)**

5  Alemite Manufacturing Corporation v. Staff,
     42 F.2d 832 (2d Cir. 1930). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

6

7  America Trucking Association v. City of Los Angeles,
     559 F.3d 1046 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

8  Anderson v. United States,

9     612 F.2d 1112 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

10  Armachuelo v. MSPB,
      337 Fed. Appx. 889, 2009 WL. 1971372 (Fed. Cir. July 9, 2009). . . . . . . . . . . . . . .  passim

11

12  Blankenship v. McDonald,
      176 F.3d 1192 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14, 17

13

14  CAB v. Delta Air Lines,
      367 U.S. 316 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15

16  Caribbean Marine Services Co. v. Baldrige,
      844 F.2d 668 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 32, 33, 36

17  Cedars-Sinai Medical Ctr. v. National League of Postmasters of U.S.,

18     497 F.3d 972 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

19  Chambers v. NASCO,

20     501 U.S. 32 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

21  Chandler v. Judicial Council of the Tenth Circuit,
      398 U.S. 74 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12, 23

22

23  City of Tempe v. FAA,
      239 F. Supp. 2d 55 (D.D.C. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

24

25  Clinton v. Jones,
      520 U.S. 681 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

26  Commodity Futures Comm'n v. Schor,

27     478 U.S. 833, 851 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

28

<u>Consolidated Edison Co. of New York, Inc. v. Ashcroft</u>,
  286 F.3d 600 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Degen v. United States</u>,
  517 U.S. 820 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Department of the Army v. Blue Fox, Inc.</u>,
  525 U.S. 255 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Detroit Trust Co. v. The Thomas Barlum</u>,
  293 U.S. 21 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Director, Edward J. Meyer Mem'l Hospital v. Stetz</u>,
  433 F. Supp. 323 (W.D.N.Y. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

<u>Dollar Rent a Car of Washington v. Travelers Indemnity Co.</u>,
  774 F.2d 1371 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 35

<u>Dotson v. Griesa</u>,
  398 F.3d 156 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

<u>Duke v. Langdon</u>,
  695 F.2d 1136 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

<u>Emergency Disaster Loan Association v. Block</u>,
  653 F.2d 1267 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

<u>Empire Healthchoice Assur., Inc. v. McVeigh</u>,
  547 U.S. 677 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Federal Maritime Commission v. South Carolina State Ports Authority</u>,
  535 U.S. 743 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Federated Department Stores, Inc. v. Moitie</u>,
  452 U.S. 394 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

<u>Forrester v. White</u>,
  484 U.S. 219 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Fund for Animals v. Frizzell</u>,
  530 F.2d 982 (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

<u>GTE Corp. v. Williams</u>,
  731 F.2d 676 (10th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Goldie's Bookstore v. Sup. Ct of Cal.,
   739 F.2d 466 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

In re Golinski,
   587 F.3d 901 (9th Cir. EDR Plan 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

In re Golinski,
   587 F.3d 956 (9th Cir. EDR Plan 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Hanford v. U.S.,
   63 Fed. Cl. 111 (Fed. Cl. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hansberry v. Lee,
   311 U.S. 32 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Headwaters Inc. v. U.S. Forest Serv.,
   399 F.3d 1047 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Heckler v. Ringer,
   466 U.S. 602 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 27

Johnson v. Reilly,
   349 F.3d 1149 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Kerr v. National Endowment for the Arts,
   726 F.2d 730 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Kildare v. Saenz,
   325 F.3d 1078 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28

Kobleur v. Group Hospitalization & Medical Services,
   954 F.2d 705 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Lane v. Pena,
   518 U.S. 187 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,
   507 U.S. 163 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Lee v. OPM,
   32 M.S.P.R. 149 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

Lehman v. Nakshian,
   453 U.S. 156 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

In re Levenson,
  587 F.3d 925 (9th Cir. EDR Panel 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 28, 32

Los Angeles Mem'l Coliseum Committee v. National Football League,
  634 F.2d 1197 (9th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Marbury v. Madison,
  5 U.S. (1 Cranch) 137 (1803). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Martin v. Wilks,
  490 U.S. 755 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Miller ex rel. NLRB v. California Pac. Medical Ctr.,
  19 F.3d 449 (9th Cir. 1994) (quoting United States v. Nutri-Cology,
  982 F.2d 394, 398 (9th Cir. 1992)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Mistretta v. United States,
  488 U.S. 361 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 22

Mitchell v. United States,
  930 F.2d 893 (Fed. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Montana v. United States,
  440 U.S. 147 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Munaf v. Geren,
  128 S. Ct. 2207 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

N. Pipeline Construction Co. v. Marathon Pipe Line Co.,
  458 U.S. 50 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

National Council of Arab Americas v. City of New York,
  331 F. Supp. 2d 258 (S.D.N.Y. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

National Petroleum Refiners Association v. FTC,
  482 F.2d 672 (D.C. Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

National Treasury Employees Union v. Campbell,
  589 F.2d 669 (D.C. Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

National Treasury Employees Union v. Nixon,
  492 F.2d 587 (D.C. Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

National Wildlife Federation v. United States,
  626 F.2d 917 (D.C. Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Nken v. Holder,
129 S. Ct. 1749 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

O'Malley v. Woodrough,
307 U.S. 277 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Oakland Tribune Inc. v. Chronicle Publishing Co.,
762 F.2d 1374 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Oppenheim v. OPM,
51 M.S.P.R. 255 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

Patel v. Reno,
134 F.3d 929 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Pit River Home & Agr. Co-op. Association v. United States,
30 F.3d 1088 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 26

Plaut v. Spendthrift Farm, Inc.,
514 U.S. 211 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Prescott v. United States,
973 F.2d 696 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rendish v. City of Tacoma,
123 F.3d 1216 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Matter of Requested Extradition of Kirby,
106 F.3d 855 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Riley v. Giguiere,
631 F. Supp. 2d 1295 (E.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . 25

Roberts v. Dep't of the Army,
168 F.3d 22 (Fed. Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Rosano v. Dep't of the Navy,
699 F.2d 1315(Fed. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18, 21

Railway Labor Executives' Ass 'n v. National Mediation Board,
29 F.3d 655 (D.C. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sable Communications of Cal. v. FCC,
827 F.2d 640 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Sampson v. Murray,
    415 U.S. 61 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

San Jose Mercury News v. U.S. District Ct. -- Northern District (San Jose),
    187 F.3d 1096 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Stanley v. Univ. of S. Cal.,
    13 F.3d 1313 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 33

Taylor v. Sturgell,
    128 S. Ct. 2161 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Textile Unlimited v. A..BMH & Co.,
    240 F.3d 781 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Transitional Learning Community at Galveston v. OPM,
    220 F.3d 427 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Travelers Indemnity Co. v. Bailey,
    129 S. Ct. 2195 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 26

United States v. Ferreira,
    54 U.S. (13 How.) 40 (1852).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Hatter,
    532 U.S. 557 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Mitchell,
    463 U.S. 206 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Sherwood,
    312 U.S. 584 (1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Virginian Railway Co. v. System Federation No. 40,
    300 U.S. 515 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

West v. Gibson,
    527 U.S. 212 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Whitehouse v. Illinois Central R. Co.,
    349 U.S. 366 (1955). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Wilbur v. United States,
    281 U.S. 206 (1930). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 26

<u>Winter v. NRDC</u>,
    129 S. Ct. 365 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 30, 35

<u>Young v. U.S., ex rel. Vuitton et Fils S.A.</u>,
    481 U.S. 787 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## **STATUTES**

28 U.S.C. § 332.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1 U.S.C. § 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7

2 U.S.C. § 1302(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5 U.S.C. § 701 <u>et</u> <u>seq</u>.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 27

5 U.S.C. § 704. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

5 U.S.C. § 1204(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5 U.S.C. § 2104.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

5 U.S.C. § 2105.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 21

5 U.S.C. § 5596.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 28, 31

5 U.S.C. § 7701(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

5 U.S.C. § 8901.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 7

5 U.S.C. § 8903(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5 U.S.C. § 8905.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 U.S.C. § 8906.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 U.S.C. § 8912.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 27, 28

5 U.S.C. § 8913.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 45(a)(3)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 332(d)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 13

1

28 U.S.C. § 351.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 352.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 602 note.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 604(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 1361.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

42 U.S.C. § 2000e-16(b) (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

U.S. Const., Art. II, § 3.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

U.S. Const. art. III, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Pub. L. 101-474, 104 Stat. 1097. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Pub. L. No. 76-299, § 304(1), 53 Stat. 1223, 1223. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

AOUSC Personnel Act, 104 Stat. 1099. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## RULES AND REGULATIONS

5 C.F.R. §§ 890.101 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

5 C.F.R. § 890.102. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 C.F.R. § 890.104 (1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 27

5 C.F.R. § 890.105. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 C.F.R.§ 890.107.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 27

5 C.F.R. § 1201.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## LEGISLATIVE MATERIALS

H.R. Rep. No. 101-770. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**MISCELLANEOUS**

OPM, Benefits Administration Letter No. 96-111, at 3 (Nov. 15, 1996). . . . . . . . . . . . . . . . . 7

Gordon Bermant & Russell R. Wheeler, "Federal Judges and the Judicial Branch: Their
    Independence and Accountability," 46 Mercer L. Rev. 835, 855 (1995). . . . . . . . . . . . . . . 14

**INTRODUCTION**

Federal judges exercising judicial power in resolving cases or controversies pursuant to Article III of the Constitution undoubtedly have authority to issue directives to agencies of the United States that are properly before them. Not every action by a federal judicial officer, however, is an exercise of such judicial authority. When acting pursuant to administrative power that is derived from statute or some other source, rather than judicial power to resolve cases and controversies under Article III, a judge's authority extends no further than that underlying grant of authority contemplates. A judge acting pursuant to a limited grant of administrative authority to adjudicate grievances within the *Judicial* Branch cannot, therefore, bind the other branches of government. Moreover, an order against the government can be made binding only following a valid waiver of sovereign immunity. For these reasons, among others, the Court should deny plaintiff's Motion for Preliminary Injunction.

Plaintiff Karen Golinski is a staff attorney for the Ninth Circuit Court of Appeals. She brought a complaint before the Ninth Circuit's administrative Employee Dispute Resolution ("EDR") panel when the Administrative Office of U.S. Courts ("AOUSC") denied a request to enroll her same-sex spouse in her family insurance policy under the Federal Employees Health Benefits Program ("FEHBP"). Consistent with long-standing guidance from defendant the Office of Personnel Management ("OPM"), which Congress has entrusted with administration of the FEHBP, the AOUSC had found that the Defense of Marriage Act, 1 U.S.C. § 7 ("DOMA"), precludes enrolling plaintiff's spouse in her FEHBP insurance plan. In her EDR complaint, plaintiff claimed that the AOUSC violated the Ninth Circuit EDR Plan's prohibition of discrimination based on sex or sexual orientation. The Honorable Alex Kozinski, Chief Judge of the Ninth Circuit, heard Ms. Golinski's EDR complaint in his administrative capacity as an EDR hearing officer. Chief Judge Kozinski ordered AOUSC to submit enrollment forms for Ms. Golinski's spouse to her insurance carrier, which AOUSC then did. The insurance contractor sought guidance from OPM, administrator of the FEHBP, and in response OPM instructed the carrier not to process the enrollment because it would be contrary to federal law. Chief Judge Kozinski subsequently issued administrative orders in the EDR proceeding that purport to direct

1  OPM to withdraw its guidance to the insurance carrier.  Based on those administrative EDR

2  orders, plaintiff seeks an order of mandamus against OPM and a preliminary injunction.

3  As the President has stated previously, this Administration does not support DOMA as a

4  matter of policy, believes that it is discriminatory, and supports its repeal.  The Administration

5  also supports legislation that would make federal benefits such as the FEHBP available to the

6  same-sex partners of federal employees, including plaintiff's spouse.  Nonetheless, the Executive

7  Branch must apply and faithfully execute the laws as they stand, <u>see</u> U.S. Const., Art. II, § 3, even

8  where it disagrees with them as a policy matter, as it does here.  When the Executive Branch

9  makes an error of law, moreover, any such error must be corrected by the judicial power of the

10 courts under Article III of the Constitution and pursuant to a valid waiver of sovereign immunity.

11 A judge acting as part of the Ninth Circuit's administrative EDR panel does not exercise such

12 judicial power and cannot direct executive agencies.

13 Plaintiff's motion for preliminary injunction based on her mandamus claim must,

14 accordingly, fail.  Mandamus is appropriate only where an official owes a clear, non-discretionary

15 duty, and the injured party has no adequate remedy at law.  OPM is under no duty to rescind its

16 guidance to plaintiff's insurance carrier, however.  The only sources of such a duty identified or

17 alleged by plaintiff are the orders of the EDR panel, but an administrative actor's power is limited

18 to its grant of authority.  Congress has not vested EDR panels with the authority to bind the

19 Executive Branch, so they cannot do so.  In particular, Congress has not waived sovereign

20 immunity in such administrative proceedings.  Nor do constitutional separation of powers

21 principles authorize judicial officers to direct executive agencies when those officers act in an

22 administrative capacity, without judicial power: the core judicial power of deciding cases and

23 controversies without interference is not impermissibly intruded upon by executive administration

24 of laws of general applicability to all federal employees, including those of the judiciary.  In any

25 event, even if the administrative EDR process could bind an executive agency, it could not do so

26 here where the agency in question, OPM, was never a party to the administrative proceedings.

27 Moreover, plaintiff has adequate remedies that also preclude mandamus relief:  she is

28 receiving back pay via the administrative EDR process, and the law entitles her to challenge

1   OPM's actions under the Federal Employees Health Benefits Act and the Administrative

2   Procedure Act.  Even if all of this were not so, mandamus is a discretionary remedy that should

3   not be invoked in a case involving the relationships between the branches of government or

4   where, as here, the underlying administrative proceeding has not concluded.  Plaintiff is,

5   accordingly, not likely to succeed on the merits of her claims.

6        Plaintiff's allegations of irreparable harm are also insufficient to justify emergency

7   injunctive relief.  Plaintiff asserts that she suffers monetary damage, which generally does not

8   qualify as irreparable harm.  In any event, the EDR process has granted her relief under the Back

9   Pay Act to correct such financial harm.  Plaintiff also appears to argue that irreparable harm is to

10  be presumed in a discrimination case, but that is not the law.

11       The balance of equities also counsels against entry of an injunction.  The public interest is

12  in following the duly enacted laws of the United States, even where the Administration disagrees

13  with them as policy.  It is also in the public interest to honor our constitutional separation of

14  powers, not to upset that balance by permitting an administrative hearing officer -- even one who

15  otherwise sits as a federal judge -- to direct executive agencies, especially when there has been no

16  waiver of sovereign immunity. Plaintiff's remedies therefore lie with the political process or, if she

17  is right about the law, in a civil action at law.  Mandamus is not available, however.

18       For all of these reasons, this Court should deny plaintiff's Motion for Preliminary

19  Injunction.

## BACKGROUND

20

21  **A.     FEHBP and the Plaintiff's Enrollment Effort**

22       The Federal Employees Health Benefits Act of 1959 ("FEHBA"), 5 U.S.C. § 8901 et seq.,

23  establishes a comprehensive health insurance program for federal civilian employees, their family

24  members, and others, known as the Federal Employees Health Benefits Program ("FEHBP").

25  FEHBA confers broad authority on OPM to administer the program and to promulgate

26  regulations necessary to carry out the statute's objectives, including regulations prescribing "the

27  manner and conditions under which an employee is eligible to enroll." 5 U.S.C. § 8913.  FEHBA

28  does not grant OPM authority to offer health benefit plans itself, but rather grants it authority to

1   contract with "qualified carriers" offering such plans.  5 U.S.C. §§ 8902, 8903, 8906.  For

2   purposes of the FEHBA, the "employees" who may participate in the program include employees

3   of the Judiciary.  5 U.S.C. §§  2105(a)(2), 8901(1)(A).

4          Under FEHBA, an employee may enroll in an OPM-approved insurance plan by

5   submitting a request to her employing agency, for either individual or for "self and family"

6   coverage.  5 U.S.C. § 8905(a); 5 C.F.R. § 890.102.  Prior to 1994, the employing agency made

7   the initial enrollment determination, subject to review by OPM.  5 C.F.R. § 890.104 (1994).  Now

8   the employing agency makes an initial decision in writing which must inform the employee that

9   she has a right to seek reconsideration from the employing agency within 30 days.  5 C.F.R.

10  § 890.104.  The employing agency's decision on a reconsideration request must also be in writing,

11  must state findings and conclusions, and is the agency's final decision.  Id.  That decision is

12  subject to OPM's corrective authority, however.  Id. § 890.103(b).  OPM's regulations and the

13  FEHBA provide for judicial review of enrollment decisions after exhaustion of administrative

14  remedies.  5 U.S.C. § 8912; 5 C.F.R.§ 890.107.  Such judicial review would be under the

15  Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq.

16         OPM's FEHBP regulations also provide for administrative and judicial review of decisions

17  on particular claims for benefits.  See 5 C.F.R. §§ 890.105, 890.107.  The FEHBP regulations

18  apply generally to federal employees, without regard to which branch of government employs

19  them.  See generally 5 C.F.R. Part 890.

20  **B.      The Ninth Circuit Judicial Council and Its EDR Plan**

21         A judicial council is established within each federal appellate court to "make all necessary

22  and appropriate orders for the effective and expeditious administration of justice within its

23  circuit."  28 U.S.C. § 332(d)(1).  Orders of the judicial council are binding on "[a]ll judicial

24  officers and employees of the circuit," who "shall promptly carry [those orders] into effect."  Id.

25  § 332(d)(2).  The judicial council in each circuit appoints a circuit executive who, among other

26  duties, "[a]dminister[s] the personnel system of the court of appeals of the circuit."  Id.

27  § 332(e)(2).  The Judicial Council of the Ninth Circuit was created under this authority, "to

28  consider and take required action upon any matter affecting the administration of its own work

and that of all federal courts within the circuit . . . ."  See 9th Cir. Rules, Court Structure & Procedures(D).  The chief judge of a circuit presides over its judicial council.  28 U.S.C. § 332(a)(1).[1]

In 1998, the Judicial Council of the Ninth Circuit approved an Employee Dispute Resolution ("EDR") plan that grants circuit employees certain substantive rights and sets out a procedure for the enforcement of those rights.  See U.S. Court of Appeals for the Ninth Circuit, Employment Dispute Resolution Plan (rev. ed. 2000) ("EDR plan"), Exhibit A to plaintiff's Motion for Preliminary Injunction. The plan prohibits, among other things, "[d]iscrimination against employees based on . . . sex . . . and sexual orientation," and it also incorporates the rights and protections afforded under the Ninth Circuit Equal Employment Opportunity ("EEO") plan. Id. at 2.[2]  In addition, the plan sets forth a detailed administrative process for the resolution of employment disputes involving circuit employees. See id. at 1 ("Claims arising under this Plan or the EEO Plan shall be treated in accordance with the procedures set forth in this Plan.").  After mandatory counseling and mediation, an employee with an unresolved grievance may file a formal written complaint with the chief judge of the relevant court.  Id. at 1, 3, 5-7.  The respondent identified in an EDR complaint must in all cases be "the employing office that would be

---

[1]     The chief judge is also responsible for, among other matters, the designation and assignment of district judges "to hold a district court in any district within the circuit" or "to sit upon the court of appeals . . . whenever the business of that court so requires." Id. §§ 292(a), (b); see id. §§ 294(c) (assignment of retired judges), 295 (chief judge's authority to consent to assignment of judges to cases outside circuit), 333 (chief judge's authority to summon judges to circuit judicial conference).  Additionally, the chief judge reviews and resolves any complaint that any "judge [in the circuit] has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts, or alleging that such judge is unable to discharge all the duties of office by reason of mental or physical disability."  28 U.S.C. §§ 351(a), 352(a), (b). Further, the chief judge determines whether a retired judge within the circuit qualifies to continue to receive "the salary of the office," such as by carrying a sufficient caseload. Id. §§ 371(b)(1), (e)(1).  A chief judge generally serves for a period of at least seven years.  28 U.S.C. § 45(a)(3)(A).

[2]     The EEO Plan sets forth EEO rules for employees of the Court.  See Blankenship v. McDonald, 176 F.3d 1192, 1194 (9th Cir. 1999) (discussing claim under the plan); cf. Dotson v. Griesa, 398 F.3d 156, 172 (2d Cir. 2005) (discussing the Judicial Conference's development of a model EEO plan).

1   responsible for redressing, correcting or abating the violations(s) alleged in the complaint." Id.

2   For complaints that are not frivolous, the chief judge or his designee must hold a hearing on the

3   merits and "may provide for such discovery and investigation as is necessary." Id. at 8. In the

4   event that the presiding officer finds a violation of a substantive right protected by the plan, he

5   may award "a necessary and appropriate remedy," including placement of the aggrieved individual

6   in a particular position of employment, reinstatement of the individual to a position previously

7   occupied, and relief under the Back Pay Act, 5 U.S.C. § 5596.  EDR plan at 9-10.  "A party or

8   individual" dissatisfied with the final decision may petition the Judicial Council of the Ninth

9   Circuit for review. Id. at 9.

10  **C.    Procedural History**

11        Plaintiff Karen Golinski, a staff attorney with the U.S. Court of Appeals for the Ninth

12  Circuit, is enrolled in the FEHBP.  Compl. ¶ 11 & Ex. C at 1.  The plaintiff is married under the

13  laws of California to a spouse who, like plaintiff, is a woman.  Compl. ¶ 14.  On October 2, 2008,

14  plaintiff filed a complaint under the Ninth Circuit EDR Plan, seeking relief from the decision of

15  the AOUSC denying enrollment of her spouse in the FEHBP.  Compl. ¶ 16 & Compl. Exh. B at 2.

16  Plaintiff does not allege that she pursued or exhausted her administrative remedies under the

17  FEHBA or OPM's implementing regulations, and OPM is not and was never a party to the EDR

18  proceeding.

19        In the AOUSC's view, the FEHBA, 5 U.S.C. §§ 8901-8914, when read in light of the

20  Defense of Marriage Act ("DOMA"), did not permit OPM to contract with an insurance carrier

21  for a health benefits plan covering an employee's same-sex spouse.  See In re Golinski, 587 F.3d

22  901, 902 (9th Cir. EDR Plan 2009); see also 5 U.S.C. §§ 8901(5), 8903(1), 8905(a) (providing

23  for enrollment of a "spouse" in a FEHBP family plan).  DOMA provides in pertinent part:

24        In determining the meaning of any Act of Congress, or of any ruling, regulation, or
          interpretation of the various administrative bureaus and agencies of the United
25        States, the word "marriage" means only a legal union between one man and one
          woman as husband and wife, and the word "spouse" refers only to a person of the
26        opposite sex who is a husband or wife.

27  1 U.S.C. § 7.

28        The Honorable Alex Kozinski, Chief Judge of the U.S. Court of Appeals for the Ninth

1   Circuit, heard the EDR complaint and entered an order requiring the Director of the AOUSC to

2   submit plaintiff's enrollment form to her health insurance carrier.  Compl. ¶ 17; see In re Golinski,

3   587 F.3d at 902.[3]  The AOUSC complied with that order.  Compl. ¶ 18.  Plaintiff's insurance

4   carriers sought guidance from OPM, which, acting in its statutorily-assigned capacity as the

5   government-wide administrator of the FEHBP, see 5 U.S.C. §§ 8901 et seq., advised the AOUSC

6   and plaintiff's insurance carriers that DOMA, 1 U.S.C. § 7, forecloses enrolling plaintiff's same-

7   sex spouse in the FEHBP.  See Compl. Ex. C (Attachment A, at 1).  This was consistent with

8   OPM's long-standing guidance to federal agencies that, as a consequence of DOMA, "same-sex

9   marriages cannot be recognized for benefit entitlement purposes under . . . [the FEHBP]."  OPM,

10  Benefits Administration Letter No. 96-111, at 3 (Nov. 15, 1996), available at

11  http://www.opm.gov/retire/pubs/bals/1996/96-111.pdf.  On November 19, 2009, Chief Judge

12  Kozinski entered another order in the EDR proceeding that rejected OPM's position that it was

13  not bound by the earlier order and directed OPM to "rescind its guidance or directive to the

14  [insurance carrier] that [plaintiff's] wife is not eligible to be enrolled as her spouse . . . because of

15  her sex or sexual orientation" and to permit the enrollment.  Compl. Ex. C at 15 ("the November

16  19, 2009 Order").

17       The November 19, 2009 Order asserted that OPM had "thwart[ed] the relief . . . ordered

18  [in the January 13, 2009 Order]," In re Golinski, 587 F.3d 956, 958 (9th Cir. EDR Plan 2009),

19  and concluded that Ms. Golinski was entitled to, inter alia, prospective relief that would enable

20  her spouse to enroll in her FEHBP plan, see id. at 960-61. The November 19, 2009 Order

21  expressed the view that an EDR hearing officer's "authority to order such relief is clear under the

22  language of the EDR plan" and was intended by Congress.  Id. at 961.  In addition, asserting that

23  "OPM's actions implicate . . . the autonomy and independence of the Judiciary as a co-equal

24  branch of government," id., the Order declared that "an EDR tribunal's reasonable interpretation

25  of a law applied to judicial employees must displace, for purposes of those employees, any

26

27  ───────────────────

28       [3]     The AOUSC is an administrative body acting "under the supervision and direction of the
         Judicial Conference of the United States."  28 U.S.C. § 604(a).

1   contrary interpretation by an agency or officer of the Executive," id. at 963. The Order directed

2   OPM "to cease at once its interference with the jurisdiction of this tribunal" and, specifically, not

3   to "advise [the Blue Cross and Blue Shield Association] that providing coverage for Ms.

4   Golinski's wife violates DOMA or any other federal law" and not to "interfere in any way with

5   the delivery of health benefits to Ms. Golinski's wife on the basis of her sex or sexual orientation."

6   Id. at 963-64.

7          On December 17, 2009, the Blue Cross and Blue Shield Association filed a petition for

8   review of the November 19, 2009 Order with the Judicial Council of the Ninth Circuit, arguing

9   that "the Judicial Council has no jurisdiction over [the Association] under the EDR Plan" and that,

10  in any event, Chief Judge Kozinski's conclusion that the FEHBA permits enrollment of same-sex

11  spouses was incorrect. See Petition for Review for Blue Cross and Blue Shield Association at 1,9,

12  In re Golinski, No. 09-80173 (9th Cir. EDR Plan December 17, 2009). On December 22, 2009,

13  Chief Judge Kozinski issued another order in the EDR proceeding, stating that the time for

14  appealing his prior orders had expired; that OPM and the AOUSC had not appealed; and that,

15  accordingly, his orders were "final and preclusive·on all issues decided therein as to [the AOUSC

16  and OPM]." In re Golinski, No. 09-80173, Docket Entry No. 23, at 1.

17         On January 20, 2010, plaintiff filed her Complaint seeking an order of mandamus requiring

18  OPM to abide by Chief Judge Kozinski's orders under the EDR Plan. Plaintiff asserts that OPM

19  has "violat[ed]" those orders and "gratuitously . . . interfer[ed] in the EDR proceeding." Compl.

20  ¶¶ 6, 18, 19. She requests "the issuance of preliminary and permanent injunctions compelling

21  defendant, and those acting at its direction or on its behalf, to comply with the Chief Judge's

22  [orders]." Compl. at 6, Prayer for Relief. One week later, on January 26, 2010, plaintiff filed a

23  Motion for Preliminary Injunction. Docket Entry No. 8. On January 29, plaintiff Golinski and

24  Blue Cross sought and, on February 1, Chief Judge Kozinski granted a stay of the EDR

25  proceedings pending the outcome of this civil action. See In re Golinski, No. 09-80173 (9th Cir.

26  EDR Plan), Docket Entry No. 38.

27

28

**ARGUMENT**

**I.    Standard Of Review**

A preliminary injunction is an "extraordinary and drastic remedy." <u>Munaf v. Geren</u>, 128 S. Ct. 2207, 2218-19 (2008); <u>Winter v. NRDC</u>, 129 S. Ct. 365, 376 (2008).   "'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" <u>Am. Trucking Ass'n v. City of Los Angeles</u>, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting <u>Winter</u>, 129 S. Ct. at 374) (also stating that "[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable.").

The purpose of a preliminary injunction is generally to preserve the status quo pending full adjudication of a movant's claims on the merits. <u>Textile Unlimited v. A..BMH & Co.</u>, 240 F.3d 781,786 (9th Cir. 2001). Here, however, plaintiff seeks a "mandatory" injunction that would alter, rather than preserve, the status quo: plaintiff asks that this Court order OPM "rescind[] its prior guidance" to Blue Cross. Such an injunction "'goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored.' When a mandatory preliminary injunction is requested, the district court should deny such relief 'unless the facts and law clearly favor the moving party.'" <u>Stanley v. Univ. of S. Cal.</u>, 13 F.3d 1313, 1320 (9th Cir. 1994) (quoting <u>Anderson v. United States</u>, 612 F.2d 1112, 1114 (9th Cir. 1979) (citation omitted)).

Plaintiff cannot meet these exacting standards for entry of a mandatory emergency injunction. As set forth below, plaintiff is not likely to succeed on the merits of her claim for mandamus. Plaintiff's alleged harm is compensable with monetary relief and, accordingly, does not qualify as irreparable harm. And the balance of equities favors permitting OPM to follow and apply the law as it has been enacted by Congress.

1  **II.      Plaintiff Is Not Likely To Succeed On Her Mandamus Claim.**

2         **A.      Mandamus Is An Extraordinary And Drastic Remedy.**

3         "The common law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to

4  provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the

5  defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984).

6  Therefore, jurisdiction under 28 U.S.C. § 1361 only "'exists when a plaintiff has a clear right to

7  relief, a defendant has a clear duty to act and no other adequate remedy is available.'" Pit River

8  Home & Agr. Co-op. Ass'n v. United States, 30 F.3d 1088, 1097 (9th Cir. 1994).  The defendant

9  must have a ministerial duty; "such a duty must be 'so plainly prescribed as to be free from doubt

10  and equivalent to a positive command. . . . [W]here the duty is not thus plainly prescribed, but

11  depends on a statute or statutes the construction or application of which is not free from doubt, it

12  is regarded as involving the character of judgment or discretion which cannot be controlled by

13  mandamus.'" Consol. Edison Co. of New York, Inc. v. Ashcroft, 286 F.3d 600, 605 (D.C. Cir.

14  2002) (quoting Wilbur v. United States, 281 U.S. 206, 218-19 (1930)).

15         Plaintiff does not meet these requirements.

16         **B.      Mandamus Is Not Available To Plaintiff Because OPM Is Not Under A "Clear Duty To Act."**

17
18         Plaintiff premises her claim for mandamus on an assertion that OPM has a "ministerial"

19  "dut[y]" to comply with the EDR Order.  Pl. Mem. 8.  Because the EDR Order does not impose

20  any binding duty on OPM or the Executive, however, plaintiff's mandamus claim must fail.

20
21              **1.      The United States Has Not Waived Its Sovereign Immunity For The Executive To Be Bound By An Administrative EDR Order.**

22         Even in the context of actual litigation pursuant to Article III, it is "axiomatic that the

23  United States may not be sued without its consent and that the existence of consent is a

24  prerequisite for jurisdiction."  United States v. Mitchell, 463 U.S. 206, 212 & n.9 (1983) (citing

25  United States v. Sherwood, 312 U.S. 584, 586 (1941)).  Moreover, "the terms of [the

26  government's] consent to be sued in any court define that court's jurisdiction to entertain suit."

27  Sherwood, 312 U.S. at 586.  This applies no less to an administrative tribunal than to the federal

28  courts.  See, e.g., Fed. Mar. Comm'n v. South Carolina State Ports Authority, 535 U.S. 743, 760

*Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction*
*Civ. No. 4:10 257 SBA*                                                                                                          10

1  (2002) ("if the Framers thought it an impermissible affront to a State's dignity to be required to

2  answer the complaints of private parties in federal courts, we cannot imagine that they would have

3  found it acceptable to compel a State to do exactly the same thing before [an] administrative

4  tribunal . . ."); Hanford v. U.S., 63 Fed. Cl. 111, (Fed. Cl. 2004) ("plaintiff has failed to establish

5  that [the United States] has expressly consented to be sued in plaintiff's state administrative

6  tribunal; accordingly, plaintiff's 'Administrative Judgment' is without effect and his claim for

7  'judgment by estoppel' must fail."). The United States plainly has not expressly consented to be

8  bound by orders under the Ninth Circuit's EDR process, and the EDR Order identifies no

9  applicable waiver of sovereign immunity. A waiver to suit in an Article III court would not apply

10 to the EDR panel. See West v. Gibson, 527 U.S. 212, 226 (1999) ("It is settled law that a waiver

11 of sovereign immunity in one forum does not effect a waiver in other forums."). To the extent the

12 EDR Order seeks to imply such a waiver via analogies to the Congressional Authorization Act or

13 other statutes, see In re Golinski, 587 F.3d at 961-63 & nn.4, 6, this is not sufficient -- the

14 government's consent to be sued or bound by a judgment must be "'unequivocally expressed' in

15 . . . statutory text" and strictly construed in favor of the government. Dep't of the Army v. Blue

16 Fox, Inc., 525 U.S. 255, 261 (1999) (quoting Lane v. Pena, 518 U.S. 187, 192 (1996)); see

17 Lehman v. Nakshian, 453 U.S. 156, 161 (1981) ("limitations and conditions upon which the

18 Government consents to be sued must be strictly observed and exceptions thereto are not to be

19 implied").

20      Similarly, plaintiff has not met her burden to identify a waiver of sovereign immunity for

21 her claims in this Court although "'[t]he party who sues the United States bears the burden of

22 pointing to . . . an unequivocal waiver of [sovereign] immunity.'" Prescott v. United States, 973

23 F.2d 696, 701 (9th Cir. 1992) (citation omitted). Plaintiff relies upon Congress's grant of

24 jurisdiction over actions in the nature of mandamus, 28 U.S.C. § 1361, but that statute does not

25 constitute a waiver of sovereign immunity. See, e.g., Pit River Home & Agric. Coop. Ass'n, 30

26 F.3d at 1098 n. 5. Plaintiff's failure to point to an applicable waiver of sovereign immunity is,

27 alone, reason to deny her motion for emergency relief and dismiss her Complaint.

28

## 2.   The EDR Panel Is An Administrative, Not A Judicial, Body.

In resolving "cases" and "controversies," it is the federal courts' "duty . . . to say what the law is." Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803).  Accordingly, as noted above, there is no dispute that a federal judge deciding a case or controversy pursuant to his or her judicial power under Article III may issue binding directives to agencies of the United States.  But this power does not extend beyond cases and controversies, and not every act by one who is a federal judicial officer is a judicial act taken in exercise of Article III powers.  See Mistretta v. United States, 488 U.S. 361, 404 (1989) (power wielded by judges serving on U.S. Sentencing Commission "is not judicial power; it is administrative power derived from the enabling legislation").  Thus, a judge's "[a]dministrative decisions, even though they may be essential to the very functioning of the courts," are not "judicial acts." Forrester v. White, 484 U.S. 219, 228 (1988) (holding judicial immunity does not protect a judge's administrative decisions).  Indeed, a judge exercising administrative authority *cannot* simultaneously exercise his or her judicial power. See Mistretta, 488 U.S. at 404 (the constitution "does not forbid judges to wear two hats" but it does "forbid[] them to wear both hats at the same time"); Matter of Requested Extradition of Kirby, 106 F.3d 855, 864 n.11 (9th Cir. 1996) (same).  Accordingly, the circuit judicial councils, the Judicial Conference of the United States, the Rules Advisory Committees, and the AOUSC, "some of which [entities] are comprised of judges, . . . do not exercise judicial power in the constitutional sense of deciding cases and controversies, but they share the common purpose of providing [through administration and rulemaking] for the fair and efficient fulfillment of responsibilities that are properly the province of the Judiciary." Mistretta, 488 U.S. at 388.  See Chandler v. Judicial Council of the Tenth Circuit, 398 U.S. 74, 86 n.7 (1970) (characterizing circuit judicial councils as "administrative bodies").

Chief Judge Kozinski's authority in his administrative capacity under the Ninth Circuit's EDR process is therefore "not judicial . . . in the sense in which judicial power is granted by the Constitution to the courts of the United States." United States v. Ferreira, 54 U.S. (13 How.) 40, 47-48 (1852) (discussing powers conferred by statute authorizing federal district judges to adjust claims made against the United States, subject to approval of the Secretary of the Treasury).

1    Accordingly, he was not exercising Article III authority to resolve a case or controversy when, in

2    Ms. Golinski's EDR proceeding, he ordered OPM to rescind its guidance to BC/BS.  The

3    question, then, is whether the authority with which he was vested in that administrative

4    proceeding is sufficient to bind an Executive agency that was not before him.  It is not.

### 3.    Congress Has Not Vested Administrative EDR Panels With Authority To Bind Federal Agencies Outside The Judiciary.

6          In determining whether Congress has delegated certain authority to an administrative

7    actor, the delegation must be either "explicit" or "*fairly* . . . implied" by a statute.  Ry. Labor

8    Executives' Ass 'n v. Nat'l Mediation Bd., 29 F.3d 655, 666 n.6 (D.C. Cir. 1994) (en banc).

9    Thus, the question to be answered here is not merely what an administrative EDR Panel "thinks it

10   should do but what Congress has said it can do."  CAB v. Delta Air Lines, 367 U.S. 316, 322

11   (1961); see also Nat'l Petroleum Refiners Ass'n v. FTC, 482 F.2d 672,674 (D.C. Cir. 1973)

12   ("The extent of [an entity's administrative] powers can be decided only by considering the powers

13   Congress specifically granted it in the light of the statutory language and background.").

14   Moreover, as noted, "limitations and conditions upon which the Government consents to be sued

15   must be strictly observed and exceptions thereto are not to be implied."  Lehman, 453 U.S. at

16   161.  Chief Judge Kozinski wrote that the November 19, 2009 EDR Order "is proper and within

17   my jurisdiction because Congress intended this [EDR] tribunal to be the sole forum for

18   adjudicating complaints of workplace discrimination by employees of the Judiciary.  With that

19   responsibility must come power equal to the task."  In re Golinski, 587 F.3d at 961.  Defendant

20   respectfully but strongly disagrees that this was Congress's intent,[4] and this Court should find that

21   it was not.

22          As the history of this Circuit's EDR Plan demonstrates, Congress has not vested it with

23   the authority to issue binding directives on entities outside the Judiciary.  The EDR Plan was

24   developed without any express statutory authorization, and its issuance followed a long history of

26   _____

[4]       Title 28 U.S.C. § 332 empowers the judicial council of each circuit to "make all necessary

27   and appropriate orders for the effective and expeditious administration of justice *within its

28   circuit*."  28 U.S.C. § 332(d)(l) (emphasis added).  This language does not encompass the
     issuance of orders that direct Executive Branch agencies without regard to sovereign immunity.

1  Executive Branch administrative support for the Judiciary.[5]  See Dotson v. Griesa, 398 F.3d 156,

2  169-76 (2d Cir. 2005); Blankenship v. McDonald, 176 F.3d 1192, 1195 (9th Cir. 1999)

3  ("Congress has given judicial employees certain employment benefits and remedies, such as back

4  pay, severance pay, family and medical leave, and health and retirement benefits. Congress has

5  withheld other benefits and remedies, such as review of adverse personnel decisions. This

6  demonstrates that the lack of more complete remedies was not inadvertent.").  It was only in 1980

7  that the Judicial Conference developed a model EEO plan and required federal courts to adopt

8  EEO plans of their own.  See Dotson, 398 F.3d at 172. As set forth below, the administrative,

9  intra-Judiciary EDR plans established thereafter were not vested with any authority, statutory or

10  otherwise, to bind the Executive.[6]

11                          **a.    The Statutory Authorization Of The Merit Systems Protection
                                    Board Does Not Empower EDR Panels To Direct Executive
12                                  Agencies.**

13          The November 19, 2009 EDR Order suggests that the express statutory authority of the

14

15

16  [5]     "Those who established the system of separation of powers, including an independent
        judiciary, were content to allow judges and their clerks to rely on executive branch support."
17      Gordon Bermant & Russell R. Wheeler, "Federal Judges and the Judicial Branch: Their
        Independence and Accountability," 46 MERCER L. REV. 835, 855 (1995).  Indeed, the
18      Department of Justice provided administrative support for the Judiciary until Congress created the
        AOUSC in 1939.  See id. at 854-55; see also Pub. L. No. 76-299, § 304(1), 53 Stat. 1223, 1223.
19      Accordingly, there is no support for an argument that an *administrative* power to direct the other
        Branches is inherent to the Judiciary.  Inherent judicial powers are those "which cannot be
20      dispensed with in a Court, because they are necessary to the exercise of all others."  Chambers v.
        NASCO, 501 U.S. 32, 43 (1991) (quotation marks and citation omitted). "Principles of deference
21      counsel restraint in resorting to inherent power, and require its use to be a reasonable response to
        the problems and needs that provoke it." Degen v. United States, 517 U.S. 820, 824 (1996)
22      (internal citations omitted); see also Chambers, 501 U.S. at 44.  Article III courts possess the
        inherent "ability to punish disobedience to *judicial* orders." Young v. U.S., ex rel. Vuitton et Fils
23      S.A., 481 U.S. 787, 796 (1987) (emphasis added). But that authority -- "essential to ensuring that
24      the Judiciary has a means to vindicate its own authority without complete dependence on other
        Branches," id. at 796-97 -- is part of the courts' core judicial power, and says nothing about an
25      authority of federal judges to compel compliance with orders issued in an administrative capacity.

26

27  [6]     By arguing that Congress has not statutorily vested administrative EDR panels with
        authority to bind Executive agencies, OPM does not take any position as to whether such
28      legislation would accord with separation of powers or otherwise be constitutionally permissible.

1   Merit Systems Protection Board ("MSPB") to bind Executive agencies when they are within the

2   MSPB's jurisdiction implies parallel authorization for an EDR hearing officer.  In re Golinski, 587

3   F.3d at 961 n.4.  Chief Judge Kozinski wrote that had the January 13, 2009 EDR Order "come

4   from the MSPB, there would have been no question that it would have had to be obeyed," and

5   that because "EDR tribunals take the place of the MSPB for judicial employees, . . . it makes

6   sense that Congress gave our EDR tribunals powers coextensive with those of the MSPB."  Id.

7   (citing 5 U.S.C. § 1204(a)(2)).  Defendant respectfully submits that these statements in the

8   January 13, 2009 EDR Order are based on two false premises:  even the MSPB is not empowered

9   to do what the EDR Order seeks to do here and, regardless, Congress has not granted intra-

10  judiciary EDR panels the same authority to bind executive agencies as the MSPB.

11          The MSPB's jurisdiction is restricted to actions made "appealable to the Board under any

12  law, rule, or regulation," 5 U.S.C. § 7701(a), and there is no such legal authorization for appeal to

13  the MSPB of OPM enrollment decisions.  See 5 C.F.R. § 1201.3 (enumerating actions that may

14  be appealed to the MSPB); Roberts v. Dep't of the Army, 168 F.3d 22, 23-24 (Fed. Cir. 1999)

15  ("It is well established that the Board's authority to accept an appeal is not plenary, but is limited

16  to those matters over which it has been given jurisdiction by some statute or regulation.").

17  Indeed, the MSPB itself has held that OPM's "decisions concerning its administration of health

18  benefits are not reviewable by the [MSPB]."  Oppenheim v. OPM, 51 M.S.P.R. 255, 257 (1991);

19  Lee v. OPM, 32 M.S.P.R. 149, 152 (1987) (same).  See also Rosano v. Dep't of Navy, 699 F.2d

20  1315, 1318-20 (Fed. Cir. 1983) (MSPB lacks jurisdiction to review a challenge to OPM's

21  decision approving or not approving a health plan); Armachuelo v. MSPB, 337 Fed. Appx. 889,

22  2009 WL 1971372 (Fed. Cir. July 9, 2009) (unpublished) ("OPM determinations concerning

23  health plan enrollment are final and not reviewable by the Board." (citing Oppenheim, 51

24  M.S.P.R. at 257, & Mitchell v. OPM, 25 M.S.P.R. 186, 189 (1984)).

25          Moreover, even if the MSPB could review OPM's FEHBP coverage decisions (which,

26  again, it cannot), the Executive Branch's MSPB and an EDR hearing officer within the Judicial

27  Branch do not have "coextensive" statutory authority over Executive Branch agencies.  Contra In

28  re Golinski, 587 F.3d at 961 n.4.  Congress granted the MSPB "special power" to compel

1   agencies within its jurisdiction in proceedings before the Board to comply with its orders and

2   decisions.  Kerr v. Nat'l Endowment for the Arts, 726 F.2d 730, 732 (Fed. Cir. 1984); see 5

3   U.S.C. § 1204(a)(2) ("The [MSPB] shall . . . order any Federal agency or employee to comply

4   with any order or decision issued by the Board under the authority granted under paragraph (1) of

5   this subsection and enforce compliance with any such order."); cf. 42 U.S.C. § 2000e-16(b)

6   (2006) (providing that "[t]he head of each . . . department, agency, or unit shall comply with . . .

7   rules, regulations, orders, and instructions" issued by the Equal Employment Opportunity

8   Commission).  By contrast, as noted above, there is no equivalent provision authorizing the

9   establishment of judicial EDR processes that can do the same, and no similar, express language

10   that would waive Executive Branch sovereign immunity to such directives.  See Leatherman v.

11   Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993)

12   ("*Expressio unius est exclusio alterius*.").

13        Thus, the EDR process provides "administrative review *within the judiciary*."  See

14   Dotson, 398 F.3d at 176 (emphasis added).  It is more akin to an intra-agency equal employment

15   opportunity adjudication process than a separate tribunal empowered by Congress to bind federal

16   agencies.  Indeed, the EDR Plan itself lists "remedies available to successful complainants," and

17   those remedies are all actions that may be taken solely by and within the Judicial Branch such as

18   reinstatement, promotion, and modification of the judiciary's records on the employee.  See Ninth

19   Circuit EDR Plan at 9-10.  Plaintiff thus obtained the full relief available under the EDR process

20   when Chief Judge Kozinski ordered AOUSC to submit her enrollment papers and provide back

21   pay.  FEHBP remedies that require action by entities outside the Judiciary are available, not via

22   the EDR process but, as discussed below, under OPM's FEHBP regulations and the APA.

23        Assuming arguendo that Chief Judge Kozinski is correct that it would "make[] sense" to

24   empower the Ninth Circuit EDR process to bind Executive Branch agencies in the same manner

25   as the MSPB can, In re Golinski, 587 F.3d at 961 n.4, it is of no moment.  First, as noted above,

26   the MSPB also could not do what Chief Judge Kozinski's EDR Orders seek to do -- it could not

27   direct OPM's actions concerning FEHBP enrollment.  In any event, Congress has not acted to

28   vest EDR panels with such authority any more than it has done so for the MSPB.  See Detroit

1  Trust Co. v. The Thomas Barlum, 293 U.S. 21, 38 (1934) ("The question of policy-whether

2  different terms should have been imposed-is not for us. We may not add to the conditions set up

3  by Congress any more than we can subtract from them.")

4          **b.    The Congressional Authorization Act Did Not Vest
               Administrative EDR Panels With The Authority To Direct
5              Executive Agencies.**

6          In 1995, Congress extended to congressional (but not judicial) employees the protections

7  of various workplace laws applicable to other public and private sector employees when it enacted

8  the Congressional Accountability Act ("CAA").  See 2 U.S.C. § 1302(a).  The CAA vests

9  enforcement authority in an Office of Compliance established within the legislative branch.  Id.

10 § 1381.  Under the statute, congressional employees with cognizable grievances must complete

11 counseling and mediation, after which they may either file a civil action in federal district court, or

12 initiate proceedings with the Office of Compliance and then seek judicial review of that Office's

13 decisions.  See id. §§ 1401-1408.  Congress considered bringing judicial employees within the

14 ambit of the CAA, but chose not to do so.  See Dotson, 398 F.3d at 173.  "Instead, Congress

15 required the Judicial Conference to prepare a report 'on the application to the judicial branch' of

16 the labor laws in question, including 'any recommendations the Judicial Conference may have for

17 legislation to provide to employees of the judicial branch the rights, protections, and procedures

18 under the [labor] laws, including administrative and judicial relief, that are comparable to those

19 available to employees of the legislative branch under [the CAA].'"  Id. (quoting 2 U.S.C. § 1434).

20 The Judicial Conference did not recommend any such legislation, but in 1997 it issued a model

21 EDR plan.  See id., 398 F.3d at 175.  The Ninth Circuit's EDR plan was adopted in accord with

22 that model.  See Ninth Circuit EDR Plan at 1. Consistent with the recommendations in the

23 Judicial Conference's report, Congress did not enact any legislation providing for administrative

24 or judicial review of adverse employment decisions involving judicial employees.  Dotson, 398

25 F.3d at 175; cf. Blankenship, 176 F.3d at 1195 ("the lack of more complete remedies [for judicial

26 employees] was not inadvertent.").  Nor did Congress waive the United States' sovereign

27 immunity for claims in any administrative grievance process within the Judiciary.

28

1

   c.   **The AOUSC Personnel Act Does Not Empower EDR Panels To**
        **Direct Executive Agencies.**

2

3          The November 19, 2009 Order also suggests that the Administrative Office of the United

4   States Courts Personnel Act of 1990 ("AOUSC Personnel Act"), Pub. L. 101-474, 104 Stat.

5   1097, which transferred control over the AOUSC's personnel matters from the Executive Branch

6   to a personnel system within the AOUSC, may constitute implicit congressional recognition of the

7   Judiciary's authority to exercise the same powers as the MSPB.  See In re Golinski, 587 F.3d at

8   962 n.6.  Like the statutes empowering the MSPB, however, the AOUSC Personnel Act provides

9   no legal basis for EDR Panels to issue binding directives to agencies outside the Judicial Branch

10  such as OPM.

11         By its terms, the AOUSC Personnel Act solely addresses personnel matters within the

12  AOUSC and thus does not even speak to such matters within the federal courts generally.

13  Section 3(g) of the AOUSC Personnel Act, 104 Stat. 1099, empowers the AOUSC to exercise,

14  *with respect to employees or applicants for employment in the AOUSC,* "any authority granted"

15  to the MSPB under "any law prohibiting" certain enumerated forms of "discrimination in Federal

16  employment."  28 U.S.C. § 602 note.  This provision does not even apply to Judiciary employees

17  outside AOUSC such as plaintiff.

18         Even if the language did apply to plaintiff, it would make no difference here.  First, as

19  noted above, the MSPB does not have the authority or jurisdiction to issue directives to OPM

20  concerning OPM's administration of FEHBP.  See Oppenheim, 51 M.S.P.R. at 257; Lee, 32

21  M.S.P.R. at 152; see also Rosano, 699 F.2d at 1318-20.

22         Second, the November 19, 2009 Order is clear that the directives to OPM are for the

23  purpose of enforcing the nondiscrimination protections set forth in the Ninth Circuit's own

24  internal EDR and EEO plans, not any federal anti-discrimination statute.  See In re Golinski, 587

25  F.3d at 963 ("This court's non-discrimination plan requires that Ms. Golinski be afforded

26  [FEHBP] coverage for her spouse]").  But the AOUSC Act speaks in terms of empowering the

27  AOUSC to exercise the authorities granted the MSPB under laws prohibiting federal employment

28  discrimination. Even if the Ninth Circuit EDR plan qualified as such a law, it grants no power to

1   the MSPB.  Accordingly, even if the MSPB could direct OPM's actions with respect to

2   enrollment in the FEHBP -- which it cannot -- the AOUSC Personnel Act does not authorize the

3   AOUSC to do likewise when it is enforcing an internal rule of the Judiciary and not a federal

4   statute that actually grants such power to the MSPB.

5          Third, the text of the AOUSC Personnel Act contains no language expressly conferring on

6   the AOUSC the authority to issue directives to OPM in its administration of the FEHBP, and

7   none may be fairly implied.  Nor does the Act contain any language waiving the Executive

8   Branch's sovereign immunity to such directives.  Indeed, legislative history makes clear that the

9   Act affects neither the entitlement of the AOUSC's employees to health benefits under the

10  FEHBP nor OPM's responsibility for hearing those employees' administrative appeals of its

11  decisions under the FEHBA.  See H.R. REP. NO. 101-770, pt. 1, at 6 (1990), reprinted in 1990

12  U.S.C.C.A.N. 1709, 1710 ("Being subject to the retirement and insurance plans administered by

13  [OPM], employees of the AO[USC] will continue to appeal adverse rulings on these matters to

14  the OPM").

15         Based on the foregoing, it is plain that the EDR process is one for "administrative review

16  within the judiciary." Dotson, 398 F.3d at 176.[7]  It is not specifically authorized by any statute,

17  and Congress has never waived the Executive's sovereign immunity in those administrative review

18  proceedings.  It is thus unsurprising that plaintiff has cited no source of support for the

19  extraordinary proposition that federal courts have the authority to establish an internal,

20  administrative dispute resolution process that can direct OPM's administration of the FEHBP, let

21  alone that such administrative orders can bind OPM even when OPM was not a party to the

22

23

24  _____

25  [7]      Although the Second Circuit in Dotson noted in a footnote a "long history of judicial
    review within the courts' EEO plans," 398 F.3d at 176 n.14, the use of the term "judicial review"
26  served to point out that internal, administrative review within the judiciary will often be conducted
    by officials who are, in fact, federal judges, not that such administrative review is an exercise of
27  Article III to decide cases and controversies. See id. ("Indeed the judiciary is unique among the
    branches of government in being able to provide for itself some review of its administrative
28  employment decisions by a judicial officer.").

proceedings.[8]

### 4.    Congress Has Vested OPM With The Authority To Interpret And Apply The Federal Health Employee Benefits Act.

Unlike administrative EDR Panels within the Judiciary, Congress has conferred on OPM the authority to administer the FEHBP under FEHBA.  OPM's actions are therefore appropriate under law, and plaintiff is mistaken in asserting that "OPM does not have the authority to interpret the FEHBA as it applies to judicial employees."  Pl. Mem. 12.[9]  The FEHBA specifically entrusts OPM with administering the FEHBP as to *all* federal employees.  See Transitional Learning Cmty. at Galveston v. OPM, 220 F.3d 427, 429 (5th Cir. 2000) (in case involving benefits for retired district judge, stating "[u]nder FEHBA, the OPM is delegated the authority to promulgate regulations and to negotiate and contract with qualifying private insurance carriers to offer health benefit plans to federal employees."); Kobleur v. Group Hospitalization & Med. Servs., 954 F.2d 705, 709 (11th Cir. 1992) ("The FEHBA gives OPM the authority to administer the program by contracting with qualified private carriers to offer a variety of health care plans, . . . by promulgating necessary regulations, and by interpreting the plans to determine the carrier's liability in an individual case." (citations omitted)).  In particular, the FEHBA authorizes OPM to

---

[8]    Nor, as one of the EDR Orders suggests, has Congress somehow acquiesced in the assertion of such power by administrative EDR panels because Congress has not acted to abolish the panels.  See November 19, 2009 Order at 14 ("Congress took no further action, so it must have been satisfied with the Judiciary's efforts.").  The EDR Orders here appear to be wholly without precedent, and Congress can hardly have acquiesced to an assertion of power that has never before been made.

[9]    Plaintiff's sole citation in support is unavailing.  Plaintiff cites Director, Edward J. Meyer Mem'l Hospital v. Stetz, 433 F. Supp. 323, 325 (W.D.N.Y. 1977), for the proposition that the "scope of OPM's authority is 'solely to contract with qualified carriers, to make information regarding the plans available to eligible employees, and to make a continuing study of the administration and operation of this program.'"  Pl. Mem. 12, quoting id.  The cited case deals not with OPM but the former Civil Service Commission, and it speaks not to that Commission's "authority" but to its "role."  Stetz, 433 F. Supp. at 325.  It also states that the Commission had the "authority" to issue regulations carrying out the mandate of the FEHBA.  Id.  In any event, the case held merely the Commission was not "authorized to act as an insurer of its employees" and that a suit concerning a benefits dispute was properly brought against the insurance carrier, not the Commission.  Id.

---

*Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction*
*Civ. No. 4:10 257 SBA*                                                        20

1  negotiate and contract with private insurance carriers to offer health benefits plans to federal

2  employees -- including judicial employees -- and other eligible individuals, see 5 U.S.C. §§ 2104,

3  2105, 8901, 8902(a), 8903, and to determine if carriers are contractually obliged to pay benefits

4  to enrollees for particular services, see id. § 8902(j).  The FEHBA also authorizes OPM to

5  "prescribe regulations necessary to carry out" the Act, id. § 8913(a), including with respect to

6  plan enrollment.  Id. § 8913(b) (OPM's regulations may specify the "time at which and the

7  manner and conditions under which an employee is eligible to enroll in an approved health benefits

8  plan").

9      OPM's authority is not unreviewable, however.  The APA affords a cause of action for

10  claims against OPM arising out of its administration of the FEHBP, and the FEHBA specifically

11  provides that jurisdiction to review claims challenging OPM's administration of the FEHBP lies in

12  the U.S. district courts and the U.S. Court of Federal Claims, which have concurrent jurisdiction

13  "of a civil action or claim against the United States founded on [the Act]."  Id. § 8912.  See Nat'l

14  Treasury Employees Union v. Campbell, 589 F.2d 669, 674 (D.C. Cir. 1978) (section 8912 "is

15  . . . a broad consent to all suits brought to enforce rights and obligations created by the

16  [FEHBA]"); see also Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 686 (2006).

17  Review is therefore proper by judicial officers hearing a case or controversy pursuant to Article

18  III.  There is, however, no provision of the FEHBA expressly granting any administrative entity a

19  role in reviewing any actions taken by OPM in administering the FEHBP, including actions with

20  respect to enrollment.  Cf. Rosano, 699 F.2d at 1319 (stating that the Navy, as the employing

21  agency, "had no power to change" "FEHB[P] options[] determined by OPM"); In re Levenson,

22  587 F.3d 925, 934 (9th Cir. EDR Panel 2009) (Reinhardt, J.) (observing that FEHBA vests

23  authority to enter into health insurance contracts for federal employees "in a single executive

24  agency, OPM" and that it would be inappropriate to issue an order directing the Office of the

25  Federal Public Defender ("FPD") "to enter into separate contracts [for its employees] with private

26  insurers" because "[n]o statute or regulation authorizes the FPD to enter into [such contracts] or

27  to bind the United States to any such contract").

28      Review of OPM's administration of the FEHBP may thus be had by a court in its

1    *judicial* capacity, <u>accord</u> 5 U.S.C. §§ 704, 706, but the sole *administrative* actor entrusted with

2    interpreting and applying the FEHBA is OPM.

3          **5.      Constitutional Separation Of Powers Principles Do Not Authorize**
                 **EDR Panels To Direct Executive Agencies' Statutorily-Authorized**
4                **Administration Of Federal Programs.**

5          Plaintiff argues that OPM's actions with respect to enrollment of Ms. Golinski's spouse

6    "undermined the co-equal status of another branch of government, the independence of the

7    Judiciary, and the Courts' power to interpret the laws of the United States," in violation of

8    constitutional separation of powers principles.  Pl. Mem. 12.  Plaintiff is mistaken.  As noted

9    above, OPM has the *administrative* authority, granted by statute, to administer the FEHBP.

10   Because of its statutory grant of power, OPM's administrative determinations concerning the

11   FEHBP take precedence over another administrative actor, such as an EDR panel.  This says

12   nothing whatsoever about the courts' undisputed *judicial power* to say what the law is in a case

13   or controversy pursuant to Article III.

14         In any event, the Supreme Court has squarely rejected "the notion that the three Branches

15   must be entirely separate and distinct," <u>Mistretta</u>, 488 U.S. at 380, and emphasized instead that

16   the Constitution "'enjoins upon its branches separateness but interdependence, autonomy but

17   reciprocity,'" <u>id.</u> at 381 (quoting <u>Youngstown Sheet & Tube Co. v. Sawyer</u>, 343 U.S. 579, 635

18   (1952).  Separation of powers thus does not require a "hermetic division among the Branches,"

19   <u>id.</u>, and there is nothing impermissible about the benefits received by one branch's employees

20   being to some extent dependent on another branch's administrative interpretation of the laws.

21   Indeed, "even quite burdensome interactions" "between the Judicial Branch and the Executive" do

22   not "necessarily rise to the level of [unconstitutionality]."  <u>Clinton v. Jones</u>, 520 U.S. 681, 702

23   (1997).

24         Of course, "'the separation-of-powers doctrine requires that a branch not impair another

25   in the performance of its constitutional duties,'" <u>id.</u> at 701 (quoting <u>Loving v. United States</u>, 517

26   U.S. 748, 757 (1996)), and in considering alleged encroachments upon the Judiciary, the Supreme

27   Court specifically has identified the danger of another branch "'impermissibly threaten[ing] the

28   institutional integrity of the Judicial Branch,'" <u>Mistretta</u>, 488 U.S. at 383 (quoting <u>Commodity</u>

1    Futures Comm'n v. Schor, 478 U.S. 833, 851 (1986)).  The coordinate branches therefore may

2    not interfere with the "total and absolute independence of judges *in deciding cases* or in any phase

3    of the decisional function."  Chandler, 398 U.S. at 84 (emphasis added).  Congress may not "vest

4    review of the decisions of Article III courts in officials of the Executive Branch" or "command[]

5    the federal courts to reopen final judgments." Plaut v. Spendthrift Farm, Inc., 514 U.S. 211,

6    218-19 (1995).  And Congress may not "authorize the adjudication of Article III business in a

7    non-Article III tribunal" in a way that "impermissibly threatens the institutional integrity of the

8    Judicial Branch."  Schor, 478 U.S. at 851.[10]

9         Intrusions that transgress separation of powers are therefore those that go to the core

10   *judicial* function of judging cases or controversies pursuant to Article III.  But here, OPM's

11   *administrative* interpretation and enforcement of generally applicable, statutory limitations on

12   enrollment in the FEHBP as to judicial employees does not touch upon the judicial

13   decisionmaking process or any related activities at the core of federal judicial power.  Indeed,

14   even judges themselves are not exempt from generally applicable laws that directly affect their

15   compensation.  See United States v. Hatter, 532 U.S. 557, 571 (2001) ("There is no good reason

16   why a judge should not share the tax burdens borne by all citizens."); O'Malley v. Woodrough,

17   307 U.S. 277, 282 (1939) (holding the Compensation Clause does not forbid subjecting federal

18   judges to a generally applicable income tax and stating that "[t]o subject [federal judges] to a

19   general tax is merely to recognize that judges are also citizens").

20        Article II of the Constitution directs that the Executive faithfully execute the laws passed

21   by Congress under Article I, including those laws that affect the other branches or their

22   employees, subject to appropriate review by the Judiciary pursuant to Article III.  That does not

23   violate separation of powers; to the contrary, it is how the Framers intended that federal power be

24   balanced.

25   _____

26   [10]    Specific constitutional provisions help to preserve judicial independence: the good
     Behavior Clause "guarantees that Art. III judges shall enjoy life tenure, subject only to removal by

27   impeachment," and the Compensation Clause "guarantees Art. III judges a fixed and irreducible
     compensation for their services." N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S.

28   50, 59 (1982) (plurality opinion); see also U.S. Const. art. III, § 1.

6.  **OPM Also Cannot Be Bound By The EDR Order Because It Was Not A Party To The EDR Proceedings.**

It is a well-established "'principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'"  Martin v. Wilks, 490 U.S. 755, 761 (1989) (quoting Hansberry v. Lee, 311 U.S. 32, 40 (1940)).  Here, plaintiff argues that an office of the Executive Branch, OPM, is bound via an order from an administrative proceeding to which OPM was not a party.  Plaintiff has identified, and counsel for defendant is aware of, no precedent for such an assertion of administrative authority.  While Chief Judge Kozinski, in his administrative capacity, invited OPM to appeal his ruling, it was under no obligation to appeal an order by which it is not bound and from a proceeding to which it was not a party.  Moreover, the EDR Plan by its own terms applies within the Judiciary, not to Executive agencies.  See EDR Plan at 1.  In any event, notice and an invitation to participate are not enough to bind a party to a federal court judgment, let alone a non-judicial, administrative order.  "Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree."  Martin, 490 U.S. at 765, quoted in Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks, 915 F.2d 1301, 1307 (9th Cir. 1990).  Of course, the rule that an entity is not bound by a judgment in a proceeding to which it was not a party applies with special force when that entity is an agency or instrumentality of the United States, protected by sovereign immunity -- the government cannot be bound in a proceeding even where it *has* been joined as a party unless it has unequivocally consented to the jurisdiction of the tribunal.

Nor is it the case, as Chief Judge Kozinski stated and plaintiff alleges, that the EDR Orders are "final and preclusive" as to OPM because it "could have, but did not appeal" those administrative orders.  In re Golinski, No. 09-80173 (9th Cir. EDR Panel December 22, 2009), cited in Pl. Mem. 9.  Chief Judge Kozinski cited Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398-402 & n.4 (1981), and Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195 (2009) (upon which plaintiff also relies, see Pl. Mem. at 9), but those cases are inapposite.  As the Supreme

1   Court held in <u>Federated Dep't Stores</u>, "[a] final judgment on the merits of an action precludes *the*

2   *parties or their privies* from relitigating issues that were or could have been raised in that action."

3   452 U.S. at 398 (emphasis added).  As noted above, OPM was not a party to the EDR proceeding

4   between Ms. Golinski and the AOUSC, nor can it be said to be in privity with those parties.[11]

5   Similarly, <u>Travelers Indem. Co. v. Bailey</u> relied on the unexceptional, general proposition that

6   "[e]ven subject-matter jurisdiction . . . may not be attacked collaterally." 129 S. Ct at 2205

7   (quoting <u>Kontrick v. Ryan</u>, 540 U.S. 443, 455 n.9 (2004)).  But this general principle applies only

8   to the parties to the original proceeding "or those in privity with them."  <u>Id.</u>  And, critically, it is

9   beside the point here:  the Supreme Court recognized in <u>Travelers</u> that "a collateral attack on

10  subject-matter jurisdiction is permissible 'where the issue is the waiver of [sovereign] immunity.'"

11  <u>Id.</u> n.6 (in a parenthetical, quoting <u>United States v. United States Fid. & Guar. Co.</u>, 309 U.S. 506,

12

---

13  [11]     "'Privity' . . . is a legal conclusion 'designating a person so identified in interest with a
   party to former litigation that he represents precisely the same right in respect to the subject

14  matter involved.'"  <u>Headwaters Inc. v. U.S. Forest Serv.</u>, 399 F.3d 1047, 1052-53 (9th Cir. 2005)
   ((citation omitted)).  "[P]arallel legal interests alone, identical or otherwise, are not sufficient to

15  establish privity." <u>Id.</u> at 1054.  It is axiomatic that "no court can make a decree which will bind
   any one but a party; a court of equity is as much so limited as a court of law; it cannot lawfully

16  enjoin the world at large, no matter how broadly it words its decree." <u>Alemite Mfg. Corporation

17  v. Staff</u>, 42 F.2d 832, 832-33 (2d Cir. 1930) (Hand, J.).  The Supreme Court has identified six
   exceptions to the general "rule against nonparty preclusion," none of which apply here.  <u>See

18  Taylor v. Sturgell</u>, 128 S. Ct. 2161, 2172-73 (2008).  For example, there is no suggestion that
   OPM "assume[d] control over" AOUSC's participation in the administrative EDR process.  <u>See

19  Montana v. United States</u>, 440 U.S. 147, 154 (1979).  AOUSC is an entity within the Judiciary,
   not the Executive, and not subject to "control" by OPM.  Nor could AOUSC have adequately

20  represented OPM's interests in the EDR proceeding because their interests were different.  <u>E.g.</u>,
   AOUSC could not represent OPM as to the questions now at issue in this litigation -- whether an

21  EDR Panel can bind an Executive agency at all -- because AOUSC, of course unlike OPM, is
   subject to the supervision of the Judicial Conference.  Likewise, AOUSC does not share OPM's

22  statutory mandate to administer the FEHBP across all federal agencies, or OPM's related interest
   that such administration is consistent.  <u>Compare</u> <u>Taylor</u>, 128 S.Ct. at 2172-73 (relationships that

23  give rise to adequate representation of a non-party include "properly conducted class actions and
   suits brought by trustees, guardians, and other fiduciaries" (internal citations omitted)); <u>id.</u> at

24  2176 ("A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a
   minimum: (1) the interests of the nonparty and her representative are aligned; and (2) either the

25  party understood herself to be acting in a representative capacity or the original court took care to
   protect the interests of the nonparty." (internal citations omitted)); <u>Riley v. Giguiere</u>, 631 F. Supp.

26  2d 1295, 1307 (E.D. Cal. 2009) (same, following <u>Taylor</u>).

27

28

---

1  514 (1940)).[12]

2  **C.  Mandamus Is Unavailable Because Any Duty By OPM To Comply With An Administrative, Intra-Judicial EDR Order Is, At A Minimum, Not Free From Doubt.**

3

4  Mandamus is "an extraordinary remedy" available only where "the official's duty is

5  nondiscretionary" and "ministerial," Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003)

6  (affirming Armstrong, J., and quoting Patel v. Reno, 134 F.3d 929, 931 (9th Cir. 1997)), and "so

7  plainly prescribed as to be free from doubt and equivalent to a positive command." Emergency

8  Disaster Loan Ass'n v. Block, 653 F.2d 1267, 1271 (9th Cir. 1981) (quoting Wilbur v. United

9  States ex rel. Kadrie, 281 U.S. 206, 218-19 (1930)).  Where "the duty is not thus plainly

10  prescribed but depends upon a statute or statutes the construction or application of which is not

11  free from doubt, it is regarded as involving the character of judgment or discretion which cannot

12  be controlled by mandamus." Id. (quoting Wilbur, 281 U.S. at 219).

13  As the foregoing demonstrates, a judgment that an administrative EDR hearing officer

14  within the Judiciary is empowered to bind the Executive without regard to sovereign immunity,

15  and in a proceeding to which the Executive was not a party, is, at a minimum, "not free from

16  doubt." See id.  For that reason, even if this Court were to conclude that plaintiff's legal position

17  is on balance correct, mandamus is not an available or appropriate remedy.

18  **D.  Mandamus Is Inappropriate Because Plaintiff Has Adequate, Alternative Remedies At Law.**

19

20  Mandamus is appropriate only where "no other adequate remedy is available.'" Pit River

21  Home and Agr. Co-op. Ass'n, 30 F.3d at 1097.  Because other "review could correct the

22  individual errors alleged" by Ms. Golinski, "there is an adequate alternative remedy" and

23  mandamus jurisdiction is precluded. Kildare, 325 F.3d at 1085.

24

25  [12]     Moreover, the preclusion of a "collateral" attack on jurisdiction presupposes that the
original order in question was not "'plainly beyond'" the original tribunal's authority. Travelers,
26  129 S. Ct. at 2205 n.6 (quoting RESTATEMENT (2D) OF JUDGMENTS § 12, p. 115 (1980)). Cf. id.
("This is not a situation, for example, in which a bankruptcy court decided to conduct a criminal
27  trial, or to resolve a custody dispute, matters 'so plainly beyond the court's jurisdiction' that a
different result might be called for.").
28

1    First, FEHBA itself affords judicial review to individuals, like Ms. Golinski, alleging harm

2    as a result of actions taken by OPM or an insurance carrier.  Plaintiff has the right to seek judicial

3    review of OPM's actions under the APA, 5 U.S.C. § 701 et seq., and Congress has expressly

4    provided for U.S. district courts and the U.S. Court of Federal Claims to exercise concurrent

5    jurisdiction "of a civil action or claim against the United States founded on" the FEHBA, 5 U.S.C.

6    § 8912.  OPM's regulations also entitled plaintiff to seek reconsideration of AOUSC's initial

7    denial of her spouse's enrollment.  5 C.F.R. § 890.104; see also id. § 890.103(b) (employing

8    agency's final decision is subject to OPM's corrective authority).  These administrative remedies

9    apply to judicial employees no less than other federal employees.  See generally 5 C.F.R. Part

10   890.  Similarly, if plaintiff believes Blue Cross has wrongly denied her benefits, she may pursue

11   administrative remedies with OPM and seek judicial review if necessary thereafter.  See

12   Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S., 497 F.3d 972, 980 (9th Cir.

13   2007) ("FEHBA's implementing regulations establish a mandatory administrative remedy that is

14   available to a party who believes that a carrier has wrongfully denied benefits."); see also 5 C.F.R.

15   § 890.107(c).[13]

16   Thus, plaintiff's remedies under the APA and FEHBA provide an adequate and

17   appropriate avenue for resolving plaintiff's complaints.  Contrary to plaintiff's claims that "no

18   other remedy is available" to her, Pl. Mem. 8, it is the APA and the FEHBA process, not the EDR

19   process, that affords remedies for complaints concerning FEHBP.  This is true for judicial

20   employees no less than other federal employees.  As noted above, the EDR process is intra-

21   judiciary, and EDR panels are not authorized to bind Executive agencies.  The Ninth Circuit EDR

22

23   [13]    OPM does not concede, of course, that such a suit would have merit or that it would be
     properly brought at this time.  Even if plaintiff's relief under the APA and the FEHBA scheme is

24   forclosed, however, it is nonetheless an "adequate" remedy that forecloses mandamus jurisdiction.
     See Ringer, 466 U.S. at 620 (denying mandamus relief where claimant could take an

25   administrative appeal even though success on that appeal was foreclosed by Secretary's formal
     ruling on the issue); Sable Communications of Cal. v. FCC, 827 F.2d 640, 642 (9th Cir. 1987) (in

26   APA case, statutory review provision was "adequate" even though plaintiff's petition under that
     review provision was dismissed as untimely); Mitchell v. United States, 930 F.2d 893, 897 (Fed.

27   Cir. 1991) (remedy in Claims Court was adequate even though the plaintiff's claim in that court
     may have been time-barred).

28

1  Plan itself implicitly recognizes this: the plan lists "remedies available to successful complainants,"

2  and those remedies are all actions such as reinstatement, promotion, and modification of the

3  judiciary's records on the employee, that may be taken solely by and within the Judicial Branch.

4  See Ninth Circuit EDR Plan at 9-10.  Plaintiff therefore obtained the full relief available under the

5  EDR process when Chief Judge Kozinski ordered AOUSC to submit her enrollment papers and to

6  provide back pay.  Conversely, the FEHBA and OPM's implementing regulations provide for

7  administrative and judicial review of claims by federal employees concerning FEHBP enrollment

8  and benefits.  See 5 U.S.C. § 8912; 5 C.F.R. §§ 890.101 et seq.

9        To the extent plaintiff seeks to vindicate not any federal statutory or constitutional

10  interest, but her rights under the Ninth Circuit EDR Plan, see Pl. Mem. 9, that administrative plan

11  cannot and does not create a cause of action against OPM for all the reasons discussed supra.

12  Nonetheless, plaintiff has available, and is pursuing, an adequate remedy before the EDR panel.

13  The EDR Plan provides for relief under the Back Pay Act, 5 U.S.C. § 5596. Ninth Circuit EDR

14  Plan at 9-10.  And as discussed in further detail infra, in the November 19, 2009 Order, Chief

15  Judge Kozinski directed that plaintiff receive such back pay relief.  In re Golinski, 587 F.3d at

16  963-64.  Pursuant to Chief Judge Kozinski's direction, a Ninth Circuit Appellate Commissioner

17  considered evidence submitted by plaintiff concerning just what her relief should be.

18  See generally In re Golinski, No. 09-80173 (9th Cir. EDR Panel), Docket Entry Nos. 7201661

19  (Order of the Appellate Commissioner) & 7206864 (evidentiary submission by claimant Golinski).

20  Based on plaintiff's evidence, the Appellate Commissioner awarded plaintiff back pay to

21  compensate her for the cost of obtaining private health insurance for her spouse.  Id., Docket

22  Entry No. 32 (awarding $6,272 in back pay to Ms. Golinski).  It is not clear, and plaintiff does not

23  explain, why she cannot seek relief for future costs incurred.

24        Whatever the appropriateness of such relief, Chief Judge Kozinski, among others, has

25  ordered it.  See In re Golinski, 587 F.3d at 963-64; In re Levenson, 587 F.3d at 935.  Like the

26  availability of a federal court suit at law under FEHBA and the APA, see supra, this remedy

27  precludes a grant of mandamus.  See Kildare, 325 F.3d at 1085.

28

E.   **Even If Mandamus Were Otherwise Appropriate, The Court Should Decline To Mandamus OPM Under These Circumstances.**

Even if plaintiff satisfied all of the prerequisites to mandamus (which she does not), whether to grant the petition would remain within the Court's discretion. See Whitehouse v. Illinois Cent. R. Co., 349 U.S. 366, 373 (1955) ( "mandamus is itself governed by equitable considerations and is to be granted only in the exercise of sound discretion"); Johnson v. Reilly, 349 F.3d 1149, 1154 (9th Cir. 2003) ("Even if the test is met, the district court still retains the discretion to deny relief."); see also San Jose Mercury News v. U.S. Dist. Ct. -- Northern Dist. (San Jose), 187 F.3d 1096, 1099 (9th Cir. 1999) ("Mandamus review is at bottom discretionary -- even where the . . . factors are satisfied, the court may deny the petition.").  Plaintiff cites no case in which a writ of mandamus was issued to resolve an inter-branch dispute like that presented here.  That is unsurprising, given that courts "are reluctant to afford discretionary relief when to do so would intrude on the responsibilities including the shared responsibilities of the coordinate branches." Nat'l Wildlife Fed'n v. United States, 626 F.2d 917, 924 (D.C. Cir. 1980). Cf. Nat'l Treasury Employees Union v. Nixon, 492 F.2d 587, 616 (D.C. Cir. 1974) (declining to mandamus the President, but instead issuing a declaratory judgment, "in order to show the utmost respect to the office of the Presidency and to avoid, if at all possible, . . . any clash between the judicial and executive branches of the Government.").

Moreover, a drastic and extraordinary order of mandamus is also inappropriate where, as here, ongoing administrative proceedings could moot plaintiff's claims.  Non-party Blue Cross Association, arguing that it is not bound by orders of the EDR Panel, has appealed to the Judicial Council of the Ninth Circuit Chief Judge Kozinski's EDR order that Blue Cross enroll plaintiff. See In re Golinski, No. 09-80173 (9th Cir. EDR Panel) (Docket Entry No. 12).  That process could, of course, render this case moot should the administrative appeal result in a ruling that Chief Judge Kozinski erroneously read and applied the relevant statutes and policies, or that he exceeded the EDR Panel's authority by issuing orders to non-parties outside the judiciary.  To date, plaintiff has avoided any such review of the EDR Orders -- on January 29, 2010, the plaintiff and Blue Cross sought and, on February 1, 2010, Chief Judge Kozinski granted a stay of the EDR

1    proceedings pending the outcome of this civil action.  Id. Docket Entry No. 38.  Nonetheless, this

2    Court should not invoke the discretionary and extraordinary remedy of mandamus against the

3    Executive Branch based on an administrative order when the underlying administrative process

4    has not been exhausted.[14]

5        This Court should, accordingly, decline to enter an order of mandamus.

6    **III.    Plaintiff Has Failed To Establish She Will Suffer Cognizable, Non-Speculative
          Irreparable Harm Absent An Emergency Injunction.**

7

8        To qualify for an emergency injunction, plaintiff must clearly establish a substantial threat

9    of irreparable injury absent relief.  Winter, 129 S. Ct. at 375-76 ("Issuing a preliminary injunction

10   based only on a possibility of irreparable harm is inconsistent with our characterization of

11   injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that

12   the plaintiff is entitled to such relief.").  Thus, "a plaintiff must *demonstrate*," not merely predict,

13   "immediate threatened injury as a prerequisite to preliminary injunctive relief."  Caribbean Marine

14   Servs. Co. v. Baldrige, 844 F.2d 668 (9th Cir. 1988) (emphasis in original); see Goldie's

15   Bookstore v. Sup. Ct of Cal., 739 F.2d 466, 472 (9th Cir. 1984) (speculative injury "does not

     constitute irreparable injury.").

16

17       Plaintiff's conclusory allegations do not meet this standard; rather, as this Court has

18   already recognized in a related context, plaintiff's claims of harm are "tenuous . . . at this

19   juncture."  See Order Denying Plaintiff's Ex Parte Application for Order Shortening Time for

20   Notice and Hearing for Preliminary Injunction (Docket Entry No. 22), at 2.  Plaintiff relies on

21   assertions that her spouse cannot obtain private insurance as good as plaintiff's FEHBP plan, but

22   even assuming this is true, any harm can be compensated (and, indeed, is being compensated) with

23   monetary relief.  Plaintiff also appears to argue that the nature of her claims means she

24   presumptively suffers irreparable harm, but there is no such presumption available.  Moreover,

25   plaintiff's delay to date counsels against a finding that she is suffering irreparable injury.

26   _____

     [14]    As noted above, plaintiff's assertion that the EDR Orders directed at OPM are "final and
27   preclusive" and, therefore, even the ongoing EDR appellate review cannot alter them is
     unfounded.  This principle does not apply to a non-party such as OPM, and it also does not apply
28   where the issue is sovereign immunity.  See supra 23-25.

*Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction*
*Civ. No. 4:10 257 SBA*                                                                                      30

1    As set forth below, plaintiff simply has not established a substantial threat of cognizable,

2    irreparable injury absent an injunction.  Accordingly, even if plaintiff could clearly establish a

3    substantial likelihood of success on the merits (which, as explained above, she cannot do), this

4    Court must nonetheless deny plaintiff's motion for preliminary injunction.

5    **A.      Plaintiff's Monetary Injuries Do Not Constitute Irreparable Harm.**

6    It is well-settled that "[m]ere injuries, however substantial, in terms of money, time and

7    energy . . . are not enough" to justify entry of a preliminary injunction.  See Sampson v. Murray,

8    415 U.S. 61, 90 (1974).  "The possibility that adequate compensatory or other corrective relief

9    will be available at a later date in the ordinary course of litigation, weighs heavily against a claim

10   of irreparable harm."  Id.; see also Los Angeles Mem'l Coliseum Comm. v. Nat'l Football

11   League, 634 F. 2d 1197, 1202 (9th Cir. 1980) (monetary injury is not irreparable harm).

12   Despite this established principle that "injuries, however substantial, in terms of money . . .

13   are not enough" to justify preliminary relief, see Murray, 415 U.S. at 90, plaintiff relies on

14   allegations of financial injury to support her claim of irreparable harm.  Plaintiff admits that her

15   spouse is covered by health insurance, albeit not her FEHBP plan, but states that the individual

16   insurance plans she and her spouse have researched have "co-payments and deductibles, non-

17   emergency and emergency services fees, or brand-name prescription medication reimbursements"

18   that are not "comparable" to those under plaintiff's FEHBP plan, and that she and her spouse

19   would face "higher out-of-pocket expenses" with them. Pl. Mem. 10.  Thus, plaintiff argues that

20   these "higher . . . expenses" she will incur cannot be compensated with monetary relief because

21   her spouse cannot obtain a health insurance plan that is precisely the same as what she would have

22   under FEHBP.  Id.  This is, however, an "injur[y] . . . in terms of money," Sampson, 415 U.S. at

23   90, and plaintiff does not explain why it is not fully remediable with money.  Indeed, it appears

24   that it is.

25   As noted supra, the Ninth Circuit EDR Plan provides that EDR hearing officers may

26   award relief under the Back Pay Act, 5 U.S.C. § 5596.  Ninth Circuit EDR plan at 9-10.  In the

27   November 19, 2009 Order, Chief Judge Kozinski directed that plaintiff receive such relief based

28   on "the cost of obtaining comparable private insurance" for plaintiff's spouse.  In re Golinski, 587

---

*Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction*
*Civ. No. 4:10 257 SBA*                                                                                    31

1    F.3d at 963-64.  Pursuant to Chief Judge Kozinski's direction, a Ninth Circuit Appellate

2    Commissioner considered evidence submitted by plaintiff concerning just what her relief should

3    be.  See In re Golinski, No. 09-80173 (9th Cir. EDR Panel), Docket Entry Nos. 7201661 (Order

4    of the Appellate Commissioner) & 7206864 (evidentiary submission by plaintiff Golinski).  Upon

5    consideration of plaintiff's evidence, the Appellate Commissioner awarded her back pay to

6    compensate her for the cost of her spouse's health insurance.  See In re Golinski, No. 09-80173

7    (9th Cir. EDR Plan), Docket Entry No. 32 (awarding $6,272 in back pay to Ms. Golinski).  In any

8    event, if there is no plan that provides "comparable coverage" relative to plaintiff's FEHBP plan,

9    it is not clear why she cannot seek an appropriate back pay remedy in the EDR process to make

10   "comparable" the coverage that is available and compensate her for her family's "higher . . .

11   expenses."  See Pl. Mem. 10.  Another judge of this Circuit acting as an EDR hearing officer has

12   found that back pay is the sole appropriate remedy for an identical alleged violation of the EDR

13   Plan.  See In re Levenson, 587 F.3d at 935.[15]

14           Plaintiff's monetary injuries do not constitute irreparable harm sufficient to justify entry of

15   a preliminary injunction.[16]  To the contrary, they are compensable (and are being compensated) by

16   the remedies already available to her.

17

18

19   _____

20   [15]    Defendant takes no position at this time as to the appropriateness of the back pay
     remedies ordered against AOUSC in the Golinski and Levenson EDR proceedings.  As a practical

21   matter, however, it is plain that such remedies are being made available to EDR claimants such as
     (and including) plaintiff.

22

23   [16]    Plaintiff also asserts in her declaration, though not in her motion or memorandum, that it is
     possible her family will face increased health care costs.  See Declaration of Karen Golinski ¶ 14.

24   This alleged harm has not occurred and may never occur, however.  See id.  Because "a plaintiff
     must demonstrate," not merely predict, "immediate threatened injury as a prerequisite to

25   preliminary injunctive relief," this also does not justify an emergency injunction.  See Caribbean
     Marine Servs., 844 F.2d 668 (emphasis in original).  See also Order Denying Plaintiff's Ex Parte

26   Application for Order Shortening Time for Notice and Hearing for Preliminary Injunction (Docket
     Entry No. 22), at 1 (finding plaintiff's allegations of harm insufficient to justify shortening time

27   where such harm is "anxiety . . .  predicated upon the possibility that her spouse may require

28   treatment that may not be covered by her current health insurance plan.") (emphasis in original).

**B.     Plaintiff Cannot Rely Upon Any Presumption Of Irreparable Harm.**

Plaintiff also argues that OPM's differential treatment pursuant to current federal law "of same-sex and opposite-sex married couples is an injury that remains non-compensable." Pl. Mem. 9. Plaintiff's conclusory assertion appears to be that such discrimination is, itself, irreparable harm that is presumptively sufficient to justify extraordinary, emergency relief, but plaintiff cites no authority for this proposition. Plaintiff's argument is at odds with the law of this Circuit that "a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." Caribbean Marine Servs., 844 F.2d 668 (emphasis in original). Moreover, plaintiff asserts a violation not of any federal statute or constitutional provision but of the Ninth Circuit EDR plan. Pl. Mem. 9 (citing EDR Plan at 2). Again, plaintiff cites (and defendant is aware of) no authority that would support a presumption of irreparable harm based on a violation of the Court's internal policies. That is because there is no such authority, and plaintiff's claims do not create a presumption of irreparable injury.

Even if plaintiff were seeking to vindicate statutory or constitutional rights, under plaintiff's theory virtually every discrimination claimant would be able to meet the irreparable harm prong of the preliminary injunction standard. That is not the case under current law. See, e.g., Stanley v. University of Southern California, 13 F.3d 1313, 1320 (9th Cir. 1994) (plaintiff claiming discrimination under the Equal Pay Act who could recover money damages and back pay for the loss of her job had an adequate remedy at law and could not demonstrate irreparable injury); Duke v. Langdon, 695 F.2d 1136, 1137 (9th Cir. 1983) (Title VII plaintiff alleging unlawful discrimination in her termination failed to demonstrate irreparable injury because she could regain her job with back pay if she prevailed on the merits). Moreover, while some courts have presumed irreparable harm in the First Amendment retaliation context, the Ninth Circuit has rejected even that approach. See Rendish v. City of Tacoma, 123 F.3d 1216, 1226 (9th Cir. 1997) ("In this circuit, no presumption of irreparable harm arises in a First Amendment retaliation claim, and the district court did not abuse its discretion by refusing to presume injury based on out-of-circuit Title VII authority."). If such constitutional claims do not create a presumption of irreparable harm, then plaintiff's claim, which is premised on the Ninth Circuit's internal EDR plan

1  (and which may be remedied by back pay), cannot absolve plaintiff of the need to demonstrate

2  irreparable injury.

3    **C. Plaintiff's Own Delay Undercuts Her Claims Of Irreparable Harm.**

4     Plaintiff's delay in bringing her emergency motion also militates strongly against a finding

5  of irreparable harm.  Plaintiff waited four weeks after Chief Judge Kozinski issued the December

6  22, 2009 Order to file her Complaint, and another week to seek emergency relief.   This

7  "unnecessary delay" is "inconsistent with [the] claim that plaintiff is asserting great injury."  11A

8  Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2946.  Compare

9  Oakland Tribune Inc. v. Chronicle Publishing Co., 762 F.2d 1374, 1377 (9th Cir. 1985) (delay

10  before seeking injunction "implies a lack of urgency and irreparable harm."); GTE Corp. v.

11  Williams, 731 F.2d 676, 679 (10th Cir. 1984) ("Delay of this nature undercuts the sense of

12  urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in

13  fact, no irreparable injury."); Fund for Animals v. Frizzell, 530 F.2d 982, 987 (D.C. Cir. 1976)

14  (delay of 44 days called "inexcusable"); Nat'l Council of Arab Ams. v. City of New York, 331 F.

15  Supp. 2d 258, 265-66 (S.D.N.Y. 2004) (delay in plaintiff's motion for preliminary injunction, filed

16  one and one-half months after the defendant's challenged decision, precluded relief); City of

17  Tempe v. FAA, 239 F. Supp. 2d 55, 65 n.13 (D.D.C. 2003) (delay of two months undermined

18  case for preliminary injunction).

19     Plaintiff relies on Chief Judge Kozinski's findings in the EDR proceeding that plaintiff

20  suffers non-compensable harm, Pl. Mem. 10, but it bears noting that plaintiff has neither sought

21  nor received expedition of that administrative proceeding to prevent the accrual of such allegedly

22  non-compensable injury.  The EDR process began almost 16 months ago, on October 2, 2008.

23  That process has continued since that time, with orders issued in November 2008 and January and

24  November 2009.  Chief Judge Kozinski's final order concerning OPM was issued on December

25  22, 2009.  Compl. ¶ 23 & Exhibit D thereto.  On January 5, 2010, Chief Judge Kozinski set a

26  nine-week schedule for non-party Blue Cross Association and Ms. Golinski to brief Blue Cross's

27  administrative appeal of the November 19, 2009 EDR Order.  See In re Golinski, No. 09-80173

28  (9th Cir. EDR Plan), Docket Entry No. 27.  Most recently, on January 29, 2010, the parties

1   sought and, on February 1, 2010, Chief Judge Kozinski granted a stay of those proceedings

2   pending the outcome of this civil action. <u>Id.</u> Docket Entry No. 38. Thus, far from seeking to

3   move the administrative proceedings to a conclusion, plaintiff has asked that they come to a halt.

4   In so doing, plaintiff chose to expend the resources of this Court before the administrative process

5   was fully exhausted. That process could, of course, render this case moot should the

6   administrative appeal result in a ruling that Judge Kozinski erroneously read and applied the

7   relevant statutes and policies, or that he exceeded the EDR Panel's authority by issuing orders to

8   non-parties outside the judiciary.

9        Plaintiff has failed to demonstrate a likelihood that she will suffer cognizable, irreparable

10  harm absent an injunction. That, alone, requires denial of preliminary relief. <u>Winter</u>, 129 S. Ct. at

11  374; <u>Dollar Rent a Car of Washington v. Travelers Indem. Co.</u>, 774 F.2d 1371, 1375 (9th Cir.

12  1985) (a showing of irreparable injury is an "essential prerequisite" to entry of a preliminary

13  injunction).

14  **IV.    The Balance Of Harms Militates Against Entry Of A Preliminary Injunction.**

15       The final two factors of the traditional preliminary injunction inquiry -- harm to the

16  opposing party and the public interest -- merge when the Government is the opposing party. <u>Cf.</u>

17  <u>Nken v. Holder</u>, 129 S. Ct. 1749, 1762 (2009) (discussing criteria in related context of motion for

18  stay pending appeal).

19       Weighed against plaintiff's insufficient allegations of irreparable harm, the harm to the

20  government of a mandatory injunction counsels against granting plaintiff extraordinary,

21  emergency relief. Although this Administration disagrees as a matter of policy with the result

22  compelled here under current law, the public interest is, nonetheless, in following the duly enacted

23  laws of Congress. <u>See</u> <u>Virginian Ry. Co. v. Sys. Fed'n No. 40</u>, 300 U.S. 515 (1937) (statutory

24  policy of Congress "is in itself a declaration of the public interest which should be persuasive" to

25  courts); <u>Miller ex rel. NLRB v. California Pac. Med. Ctr.</u>, 19 F.3d 449, 459 (9th Cir. 1994) (en

26  banc) ("'passage of the statute is itself an implied finding by Congress that violations will harm the

27  public'") (quoting <u>United States v. Nutri-Cology</u>, 982 F.2d 394, 398 (9th Cir. 1992)). OPM is

28  bound to follow and apply the law; unless and until that law changes, OPM would be harmed by a

1    court order that prevents it from enforcing FEHBA as it stands modified by DOMA.  See

2    Caribbean Marine Servs. Co., 844 F.2d at 676-77 (failure to consider government's alleged harm

3    "that its ability to enforce the mandate of the Act would be hampered" by a preliminary injunction

4    is reversible error).  Similarly, the public interest is served by permitting the Executive Branch to

5    perform its functions under our system of separation of powers of administering the FEHBP while

6    applying and enforcing the law, subject to judicial review pursuant to Article III, but not

7    administrative review pursuant to an EDR plan.

8                                             **CONCLUSION**

9            For all of the foregoing reasons, the Court should deny plaintiff's Motion for Preliminary

10   Injunction.

11   Dated March 2, 2010

12                                                    Respectfully Submitted,

13                                                    MICHAEL F. HERTZ
                                                     Deputy Assistant Attorney General
14
                                                     JOSEPH P. RUSSONIELLO
15                                                    United States Attorney

16                                                    SUSAN K. RUDY
                                                     Assistant Branch Director
17
                                                     _____/s/ Steven Y. Bressler_____
18                                                    STEVEN Y. BRESSLER D.C. Bar #482492
                                                     Trial Attorney
19                                                    U.S. Department of Justice
                                                     Civil Division, Federal Programs Branch
20                                                    P.O. Box 883
                                                     Washington, D.C. 20044
21                                                    (202) 305-0167 (telephone)
                                                     (202) 616-8470 (fax)
22
                                                     Attorneys for Defendant
23

24

25

26

27

28