**EXHIBIT B**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 1 3 2009

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

IN THE MATTER OF KAREN
GOLINSKI

AMENDED
ORDER

An employee has complained of workplace discrimination. Karen Golinski is a staff attorney at the Ninth Circuit headquarters in San Francisco, California. In 2008, she married Amy Cunninghis, with whom she has a five-year-old son. Since her son's birth, Golinski has paid for family health insurance under the Federal Employees Health Benefits Act. After marrying, Golinski applied to add her wife to her health insurance, but was denied because of Cunninghis's sex.

The staff attorney's office is governed by the Ninth Circuit's employment dispute resolution plan, which prohibits discrimination based on sex and sexual orientation. Golinski complains that she has been denied health insurance benefits for her spouse. Specifically, she points to similarly situated heterosexual employees who receive health insurance benefits for their spouses and argues that the unequal treatment is on account of sexual orientation and sex, namely the sex of her wife. The availability of health insurance for oneself and one's family is a valuable benefit of employment, and denial of such a benefit on account of sex and

sexual orientation violates the terms of the EEO plan that covers Golinski.

The denial occurred when the Director of the Administrative Office of the United States Courts refused to certify Golinski's identification of her spouse as family, because he believed that such an identification was barred by the Defense of Marriage Act (DOMA). 1 U.S.C. § 7. DOMA provides that, when interpreting federal law, the term "marriage" means only a legal union between one man and one woman, and the word "spouse" refers only to a person of the opposite sex who is a husband or a wife. As I understand it, the Director has refused to certify Golinski for family coverage because her wife is not considered a spouse for purposes of federal law, and thus isn't "family" as that term is used in 5 U.S.C. § 8903(1), which is part of the Federal Employee Health Benefits Act (FEHBA). That section authorizes the Office of Personnel Management to contract for health benefit plans covering "employees, annuitants [and] members of their families . . . ." "Member of family" is, in turn, defined as an employee's spouse and children. 5 U.S.C. § 8901(5). The Director reads these provisions as a limitation on the type of plan for which OPM may contract. Under this construction, OPM would act beyond its authority if it were to contract for benefits beyond those specified in section 8903.

But this isn't the only plausible reading of the FEHBA. Another way of

construing these statutory provisions is as a set of general guidelines for medical

benefit plans, as well as a number of minimum requirements that such plans must

satisfy. Under this construction, OPM would be acting outside the scope of its

authority if it contracted for a plan that did not cover, say, an employee's children,

but not if it contracted for terms that exceed the minimum statutory requirement.

For example, section 8901(5) includes within the definition of "family" an

employee's "dependent child under 22 years of age." Under the broader

construction of the section, OPM would be required to contract for a plan covering

children meeting the statutory definition, but would be free to negotiate coverage

that includes older children—say until age 25—or other members of the

employee's family, such as parents or siblings living in the employee's household.

Under this broader construction, OPM would also be free to contract for "family"

benefits for individuals who do not qualify as spouses under federal law, but who

are considered spouses under state law.

Adopting the broader construction of the statute not only harmonizes the

statutory scheme with our EEO plan, it avoids difficult constitutional issues. If I

were to interpret the FEHBA as excluding same-sex spouses, I would first have to

decide whether such an exclusion furthers a legitimate governmental end. Because

mere moral disapproval of homosexual conduct isn't such an end, the answer to

this question is at least doubtful.

In <u>Romer</u> v. <u>Evans</u>, 517 U.S. 620 (1996), the Supreme Court held unconstitutional an amendment to the Colorado constitution that prohibited civil rights protections for gays, lesbians and bisexuals. The stated basis for that amendment was simply "moral disapproval of homosexual conduct, the same sort of moral disapproval that produced the centuries-old criminal laws that [the Court] held constitutional in [<u>Bowers</u> v. <u>Hardwick</u>, 478 U.S. 186 (1986), <u>overruled by</u> <u>Lawrence</u> v. <u>Texas</u>, 539 U.S. 558 (2003)]." <u>Id.</u> at 644 (Scalia, J., dissenting). The Court held that a law that "classifies homosexuals not to further a proper legislative end but to make them unequal to everyone else" lacks a rational basis. <u>Id.</u> at 635 (majority opinion). Implicit in this conclusion is that disapproval of homosexuality isn't itself a proper legislative end.

Moreover, in <u>Reitman</u> v. <u>Mulkey</u>, 387 U.S. 369 (1967), the Supreme Court struck down a California housing law. The law was facially neutral with respect to race: By its own terms, it simply protected certain ownership and sale rights of property owners. But the Court concluded that, on the basis of the context and circumstances of the law's passage, it had the "design and intent" of weakening the state's anti-discrimination laws. <u>Id.</u> at 374. <u>Reitman</u> counseled "sifting facts and weighing circumstances on a case-by-case basis" to determine whether the State

page 5

has become "significantly involved in private discriminations," which is forbidden. Id. at 378 (internal quotation marks and citation omitted).

Whether DOMA's sweeping classification has a proper legislative end, or whether it reflects no more than an invidious design to stigmatize and disadvantage same-sex couples, is a hard question. The inquiry conducted by the Court in Reitman into the history and context of the California law was searching and careful, and to conduct a similar inquiry of DOMA would be a delicate and difficult task.

A separate line of authority would also require me to determine whether DOMA impermissibly punishes homosexuality. In Lawrence v. Texas, 539 U.S. 558 (2003), the Supreme Court invalidated a Texas statute criminalizing same-sex sodomy. Though its facts are narrow, its reasoning and the potential scope of its holding are broad. Lawrence rests explicitly on the proposition that "our laws and tradition afford constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education," and that one's sexual orientation therefore enjoys protection from punishment. Id. at 574. The Court went on to "counsel against attempts by the State, or a court, to define the meaning of the relationship or to set its boundaries absent injury to a person or abuse of an institution the law protects." Id. at 567.

The bounds of Lawrence's holding are unclear; this is itself a difficult matter of constitutional law, as we recently recognized in Witt v. Dep't of Air Force, 527 F.3d 806 (9th Cir. 2008). Witt held that the military's "Don't Ask, Don't Tell" policy, which prohibits open homosexuality in the armed forces, had to survive heightened scrutiny as applied to each service member discharged. Given the "studied limits of the verbal analysis in Lawrence," we declined the invitation of the parties to "pick through Lawrence with a fine-toothed comb and to give credence to the particular turns of phrase used." Id. at 816. We ultimately fashioned a multi-pronged balancing test for state sanction of homosexuality derived from yet another separate line of Supreme Court authority, Sell v. United States, 539 U.S. 166 (2003).

The effect of Lawrence and Witt on a discriminatory benefits law are far from clear. I would have to consider, for example, the relative magnitude of the state sanction here: Lawrence involved a criminal penalty, but that penalty was only a small fine. Golinski pays out of pocket to purchase additional health insurance for her spouse, and her expenses each month exceed the total fine imposed in Lawrence. I would need to apply Witt's multi-pronged balancing test or fashion my own interpretation of Lawrence's requirements—in either case, a major decision of constitutional law.

When a statute admits two constructions, one of which requires a decision on a hard question of constitutional law, it has long been our practice to prefer the alternative.  Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 345–46 (1936) (Brandeis, J., concurring).  The discussion above illustrates the constitutional thicket into which the discriminatory construction drags us.  I therefore construe the Federal Employee Health Benefits Act to permit the coverage of same-sex spouses.

The Director of the Administrative Office of the United States Courts is therefore ordered to submit Karen Golinski's Health Benefits Election form 2809, which she signed and submitted on September 2, 2008, to the appropriate health insurance carrier.  Any future health benefit forms are also to be processed without regard to the sex of a listed spouse.

1 - 12 - 09

Alex Kozinski
Chief Judge