**EXHIBIT C**

FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

**NOV 19 2009**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| IN THE MATTER OF KAREN GOLINSKI* et ux. | No. 09-80173 |
| | **ORDER** |

Karen Golinski has been denied a benefit of federal employment because she married a woman rather than a man. I previously determined that violates this court's guarantee of equal employment opportunity. See In re Golinski, 2009 WL 2222884, at *1 (9th Cir. Jan. 13, 2009).** To avoid a difficult constitutional problem, I harmonized the Defense of Marriage Act (DOMA), 1 U.S.C. § 7; the statutes creating the benefit program at issue, the Federal Employees Health Benefits Program (FEHBP), 5 U.S.C. §§ 8901 et seq.; and this court's commitment to equal employment opportunity. In re Golinski, 2009 WL 2222884 at *1–3.

I then entered the following order:

---

* While personnel matters are ordinarily confidential, Ms. Golinski has consented to the use of her name in this order.

** Because I rely on it as background for this order, I have directed my earlier order be published.

The Director of the Administrative Office of the United States Courts is therefore ordered to submit Karen Golinski's Health Benefits Election form 2809, which she signed and submitted on September 2, 2008, to the appropriate health insurance carrier. Any future health benefit forms are also to be processed without regard to the sex of a listed spouse.

Id. at *3. No "party or individual aggrieved" by my decision appealed it. See U.S. Court of Appeals for the Ninth Circuit, Employment Dispute Resolution Plan 9 (1997) (hereinafter EDR Plan).

The Administrative Office of the United States Courts (AO) complied with my order and submitted Ms. Golinski's form 2809 to the Blue Cross and Blue Shield Service Benefit Plan, Ms. Golinski's health insurance carrier. That's as it should be; the AO is subject to the "supervision and direction" of the Judicial Conference of the United States, 28 U.S.C. § 604(a), and I exercised authority delegated by the Judicial Conference when I ordered relief.[1] After the AO submitted Ms. Golinski's form, I thought this matter had concluded. See 5 C.F.R.

---

[1] This court's EDR plan was adopted at the direction, and with the approval, of the Judicial Conference of the United States, see Judicial Conference of the United States, Model EDR Plan, ch. I, § 1 (hereinafter Model EDR Plan); EDR Plan at 1, as part of the tradition of decentralized administration and local management of the federal courts. Judicial Conference of the United States, Study of Judicial Branch Coverage Pursuant to the Congressional Accountability Act of 1995 2–3 (1996). Judicial officers acting pursuant to our EDR plan have the responsibility and authority "to provide the rights, protections, and remedies" to judicial employees enjoyed by congressional employees, and do so in the name of the Judicial Conference. See id. at 15.

page 3

§ 890.104.

The Executive Branch, acting through the Office of Personnel Management (OPM), thought otherwise.  It directed the insurance carrier not to process Ms. Golinski's form 2809, thwarting the relief I had ordered.  See Letter from Lorraine E. Dettman, Assistant Dir., Ins. Servs. Programs, U.S. Office of Pers. Mgmt., to Nancy E. Ward, Deputy Assistant Dir., Office of Human Res., Admin. Office of U.S. Courts (Feb. 20, 2009) (attached herewith as Exhibit A).  I must now decide what further steps are necessary to protect Ms. Golinski and the integrity of the Judiciary's EDR plans.

**Retrospective Relief**

Ms. Golinski has requested an award under the Back Pay Act.  5 U.S.C. §§ 5595 et seq.  This court's EDR plan provides that relief under the Back Pay Act is available, EDR Plan at 9–10; see Dotson v. Griesa, 398 F.3d 156, 175 (2d Cir. 2005); Blankenship v. McDonald, 176 F.3d 1192, 1195 (9th Cir. 1999), and I must resolve any claim for such relief in the first instance.  EDR Plan at 3.

There's no doubt the Act entitles judicial employees to back pay, 5 U.S.C. § 5596(a)(2), but I am aware of no prior determination as to what showing they must

page 4

make to receive an award.[2]  I conclude they must prove three things: (1) there has

been a "personnel action"; that (2) is "unjustified or unwarranted"; and (3) results

in a "withdrawal or reduction of all or part of [the employee's] pay, allowances, or

differentials."  Id. § 5596(b)(1).

   **1.**  The Back Pay Act defines a personnel action to include "the omission or

failure to take an action to confer a benefit."  Id. § 5596(b)(5).  It also covers "a

decision concerning pay [or] benefits."  Id. § 2302(a)(2)(A)(ix).  Refusing to

provide Ms. Golinski with health insurance for her wife satisfies either definition.

   **2.**  I find OPM's definition of the phrase "unjustified or unwarranted

personnel action" persuasive.  For purposes of this court's EDR plan I therefore

define that phrase to mean:

   [A]n act of commission or an act of omission (i.e., failure to take an
   action or confer a benefit) that an appropriate authority subsequently

---

   [2] I have no controlling precedent on which to rely.  OPM's regulations don't
apply of their own force, 5 U.S.C. § 5596(c), and this claim doesn't arise under the
jurisdiction of the Court of Federal Claims, the Federal Circuit, the Merit System
Protection Board (MSPB) or a similar entity charged with interpreting the Act.
The body with supervisory jurisdiction over this proceeding—the Judicial Council
of the Ninth Circuit—has not, so far as I know, had occasion to interpret the Act.
Nor am I aware of any similar rulings from other circuits' Judicial Councils or the
Judicial Conference of the United States.  My analysis is, however, consistent with
that in a recent order of another EDR tribunal in the Ninth Circuit.  See In re
Levenson, No. 09-80172, slip op. at 20–22 (9th Cir. Nov. 18, 2009).

> determines, on the basis of substantive or procedural defects, to have
> been unjustified or unwarranted under applicable law, Executive
> order, rule, regulation, or mandatory personnel policy established by
> an agency or through a collective bargaining agreement. Such actions
> include personnel actions and pay actions (alone or in combination).

5 C.F.R. § 550.803. The "agency" here is the United States Court of Appeals for

the Ninth Circuit, 5 U.S.C. § 5596(a)(2); 28 U.S.C. § 610, and I conclude that

denying an employee a benefit based on her sex or sexual orientation violates one

of our "mandatory personnel policies." See EDR Plan at 2.

**3.** I also find OPM's definition of "pay, allowances, and differentials"

persuasive. I therefore determine that the Act covers "pay, leave, and other

monetary employment benefits to which an employee is entitled by statute or

regulation and which are payable by the employing agency to an employee during

periods of Federal employment." 5 C.F.R. § 550.803. The commentary to that

regulation says it includes "benefits received under the Federal employee health

benefits and group life insurance programs," 46 Fed. Reg. 58,271, 58,272 (Dec. 1,

1981), so I conclude spousal health insurance benefits qualify. As Ms. Golinski

has been denied the benefit of insuring her wife, Amy Cunninghis, her "pay,

allowances, [or] differentials" have been "withdraw[n] or reduc[ed]."[3]

---

[3] I also conclude that my prior order qualifies as a "correction of the
(continued...)

**4.** Based on the above, I conclude Ms. Golinski is entitled to an award under the Back Pay Act, and I refer this matter to the Appellate Commissioner to determine its amount. Within 70 days the Commissioner shall forward to me, with copies to the parties, a report and recommendation as to the award I should enter (including attorneys' fees and any other monetary award to which Ms. Golinski may be entitled under the Act).

Because Ms. Golinski has already waited too long for relief, I wish to avoid the need for additional proceedings to determine the amount of her award. I therefore offer the Commissioner the following guidance: Compensatory damages aren't recoverable under this court's EDR plan, EDR Plan at 10, so Ms. Golinski is entitled only to an award equal in amount to the benefits she would have received, but has been denied, under the FEHBP, regardless of whether she's spent more (or less) on insurance in the interim. I determine the relevant measure of those benefits to be the cost of obtaining comparable private insurance for her wife, see 5 U.S.C. § 5596(b)(1)(A)(i), which the Commissioner should calculate on a monthly

-------

[3](...continued)
personnel action," 5 U.S.C. § 5596(b)(1)(A), for purposes of the Back Pay Act. Denying back pay simply because a remedial decree has been frustrated would be inequitable. In any event, I see no reason that back pay cannot be awarded contemporaneously with a corrective action. See Robinson v. Dep't of the Army, 21 M.S.P.R. 270, 272–73 (1984).

basis for the relevant period(s) of time.

## Prospective Relief

An award of back pay only compensates Ms. Golinski for discrimination she's suffered until today. I have no reason to believe that this discrimination will cease without further action on my part, so I also consider whether to grant prospective relief as well. There are three options: (1) again order enrollment of Ms. Golinski's wife in a FEHBP insurance plan without regard to her sex; (2) enter an order prospectively awarding back pay to Ms. Golinski, payable on some regular basis, until she is permitted to enroll her otherwise-eligible spouse for insurance benefits; or (3) do nothing and leave Ms. Golinski with the burden of filing a new complaint every time she would like to purchase health insurance for her wife.

The third option is clearly inappropriate. Forcing an employee to endlessly litigate the same claim would be unjust and wasteful of the court's EDR resources. No doubt to avoid that very result, the EDR plan specifically authorizes an order designed to "prospectively insur[e] compliance" with this court's guarantee of equal employment opportunity. EDR Plan at 9. To do nothing in this case would read that language out of the plan.

I consider the second option inappropriate because it would be a colossal waste of taxpayer money.  Unlike the employee in In re Levenson, Ms. Golinski is already signed up for a family plan to cover the children of the marriage.  Adding her wife's name to the plan would cost the government nothing, see In re Levenson, No. 09-80172, slip op. at 13–14 & n.6, while providing prospective relief in the form of substitute insurance coverage would be expensive.

Also, it might be impossible to find an insurance plan on the private market that provides exactly the same benefits as provided under the FEHBP.  Group plans almost always provide broader coverage than individual plans.  I must consider the hassle and expense of finding such a plan, even if it does exist, as well.  I am also uncertain whether "prospective" back pay would put Ms. Golinski in a position as advantageous as if her wife were covered by premiums that are automatically deducted, pre-tax, from her paycheck.  And, even if those mundane concerns weren't present, there is an inherent inequality in allowing some employees to participate fully in the FEHBP, while giving others a wad of cash to go elsewhere.  Even if the destination is the same, it's still the back of the bus.

The EDR plan provides that I may order a "necessary and appropriate" remedy for workplace discrimination.  EDR Plan at 9.  For the discrimination she's suffered in the past, I can offer Ms. Golinski only money.  The remedy that's

"appropriate" for the future, however, is enrollment of Ms. Golinski's wife into the same program an opposite-sex spouse would enjoy. I see no justification for giving Ms. Golinski a lesser remedy at substantial taxpayer expense when she can have a full remedy at zero cost to the taxpayers.

My authority to order such relief is clear under the language of the EDR plan. Id. at 1, 9–10. However, OPM's actions in this case suggest that further explanation is "necessary." Ordering enrollment is proper and within my jurisdiction because Congress intended this tribunal to be the sole forum for adjudicating complaints of workplace discrimination by employees of the Judiciary. With that responsibility must come power equal to the task.

1. Congress has decided that the Judiciary's EDR tribunals are the only forum where judicial employees may seek redress for unlawful personnel actions. See Dotson, 398 F.3d at 171–76; Blankenship, 176 F.3d at 1195; Lee v. Hughes, 145 F.3d 1272, 1276 (11th Cir. 1998). Our employees can't appeal to the MSPB,[4] they have no Bivens action and they aren't provided remedies by the Civil Service

---

[4] Had my original order come from the MSPB, there would have been no question that it would have had to be obeyed. See 5 U.S.C. § 1204(a)(2); Kerr v. NEA, 726 F.2d 730, 733 (Fed. Cir. 1984). Our EDR tribunals take the place of the MSPB for judicial employees, so it makes sense that Congress gave our EDR tribunals powers coextensive with those of the MSPB.

Reform Act or state law. See, e.g., Dotson, 398 F.3d at 171–76. If a judicial

employee suffers an unjustified personnel action, such as being fired on account of

race, sex or religion, the only remedy possible would come from an EDR tribunal.

Our EDR tribunals must therefore have the authority to grant full relief, including

reinstatement (or other prospective relief) and back pay. If that's not true, judicial

employees who are victims of discrimination would have no remedy at all.

    **2.** OPM's actions implicate an even more fundamental concern: the

autonomy and independence of the Judiciary as a co-equal branch of government.

In effect, OPM has claimed that its interpretations of the rights and benefits of

judicial employees are entitled to supremacy over those of the Judiciary. That's

incorrect, and the Executive must henceforth respect the Judiciary's interpretation

of the laws applicable to judicial employees. Any other result would prevent the

Judiciary from "accomplishing its constitutionally assigned functions," Nixon v.

Adm'r of Gen. Servs., 433 U.S. 425, 443 (1977), by seriously undermining our

autonomy over personnel matters. "While it may be convenient to have the

personnel system of [the Judiciary] covered by the personnel management network

of the executive branch, it is contrary to the doctrine of separation of powers."

H.R. Rep. 101-770(I), at 6 (1990), reprinted in 1990 U.S.C.C.A.N. 1709, 1710.

OPM has a duty to take care that the laws be faithfully executed, but it may not disregard a coordinate branch's construction of the laws that apply to its employees. No less than the other branches of government, the Judiciary is dependent on people to carry out its mission. Barring us from determining, within reasonable bounds, the rights and duties of our personnel under the laws providing for their employment would make us a "handmaiden of the Executive." United States v. Smith, 899 F.2d 564, 569 (6th Cir. 1990). The power both to interpret and execute a law is the power to control those governed by it. Cf. The Federalist No. 47 (James Madison).

Concern about such a fate is particularly acute for the Judicial Branch. We rely on Congress to fund and the Executive to carry out many aspects of our day-to-day operations. GSA manages the buildings where we work, Treasury cuts our checks, U.S. Marshals provide our security and OPM administers our employee benefits programs. But if the theory of separate powers means anything, it's that the Executive cannot use its dominance over logistics to destroy our autonomy. Would we permit OPM to interpret a statute so as to require us to racially discriminate in what we pay our employees? Could the U.S. Marshals refuse to our protect courthouses because they disagree with our decisions? May the Treasury refuse to cut paychecks to judicial employees it believes are not suitable

for their positions?

That those rights are not in question here is irrelevant. The power the Executive has arrogated to itself in this case would be enough to sustain those actions as well. Nor is it any answer that OPM could set out a plausible interpretation of the law to support its actions in this case.[5] Some branch must have the final say on a law's meaning. At least as to laws governing judicial employees, that is entirely our duty and our province. We would not be a co-equal branch of government otherwise.

History reveals that Congress intended the Judiciary to have, like Congress itself, the authority to manage its own personnel and adjudicate workplace complaints.[6] Until the Congressional Accountability Act of 1995 (CAA), none of

_____

[5] In fact, the more a law the Executive administers is open to interpretation, the greater the separation-of-powers concerns. It is only because OPM has broad power to administer a grant of somewhat nebulous authority to contract for health insurance that the question I confront today arises: As between the Executive and the Judiciary, whose interpretation of the law should control for judicial employees? If Congress had spoken clearly on the scope of FEHBP coverage, there would be nothing to interpret and therefore no potential for conflicting interpretations.

[6] Take, for example, the Administrative Office of the United States Courts Personnel Act of 1990, Pub. L. 101-474, 104 Stat. 1097. The accompanying report by the House noted that the AO was, at the time of the act, "to a large extent . . . subject to the control of the executive branch in personnel matters." H.R. Rep. 101-770(I), at 6 (1990), reprinted in 1990 U.S.C.C.A.N. 1709, 1710. In contrast,

(continued...)

the major workplace protection laws applied to congressional employees; Congress

worried that applying those laws to itself would grant the Executive too much

power over its affairs.  <u>See generally</u> Harold H. Bruff, <u>That the Laws Shall Bind

Equally On All: Congressional and Executive Roles in Applying Laws to

Congress,</u> 48 Ark. L. Rev. 105, 120 (1994).  The CAA solved this problem by

creating a special legislative branch agency called the Office of Compliance.  <u>Id.</u> at

158.  That office, rather than the Executive, enforces the workplace protection laws

that the CAA extended to Congress.

"Congress initially considered extending the [CAA's] coverage to

employees of the judicial branch but, mindful of the importance of judicial

autonomy, ultimately decided against such action."  <u>Dotson,</u> 398 F.3d at 173.

Instead, it asked us to report on our efforts to adopt the CAA's standards

_____

[6](...continued)
"[t]he United States courts, which [the AO] serves, . . . are mostly free of such
Executive Branch supervision."  <u>Id.</u>  In order to correct that asymmetry, Congress
determined that the "authority granted under such law to the Equal Employment
Opportunity Commission (EEOC), the Office of Personnel Management (OPM),
the Merit System Protection Board (MSPB), or any other agency in the executive
branch, shall be exercised by the Administrative Office."  <u>Id.</u> at 1712.  No mention
of such a power for the courts was necessary.  Our authority, part statutory and part
inherent, to control matters that touch on the operation of the courts was
recognized long before those agencies existed.  <u>See, e.g.,</u> <u>Young</u> v. <u>United States
ex rel. Vuitton et Fils S.A.,</u> 481 U.S. 787, 793 (1987); <u>Ex Parte Hennen,</u> 38 U.S.
(13 Pet.) 230, 261–62 (1839).

voluntarily. 2 U.S.C. § 1434. The Judicial Conference of the United States

submitted that report in 1996, telling Congress: "The judicial branch is committed

to providing the general protections of the CAA laws in a manner that preserves

judicial independence and the decentralized administration of the federal courts."

Study of Judicial Branch Coverage, supra note 1, at 2. As part of that commitment,

the Judicial Conference reported that it was developing "a plan to provide the

rights, protections, and remedies similar to those provided in the CAA." Id. at 15.

That plan became the Model EDR Plan, supra note 1, under which this court

adopted, and the Judicial Council of the Ninth Circuit approved, the EDR plan that

controls these proceedings.

Congress took no further action, so it must have been satisfied with the

Judiciary's efforts. OPM's actions in this case have undermined the balance

Congress struck in the CAA, and have done so in a way that threatens the

independence of Congress's Office of Compliance as much as that of our EDR

tribunals. I don't believe Congress intended to grant OPM that authority. Instead,

I hold the CAA's reporting provision recognized the Judiciary's inherent authority

to resolve workplace complaints without interference by the Executive. I therefore

conclude that an EDR tribunal's reasonable interpretation of a law applied to

judicial employees must displace, for purposes of those employees, any contrary

interpretation by an agency or officer of the Executive.

I have determined that, even as limited by DOMA, the FEHBP permits

judicial employees to provide health insurance coverage to their same-sex spouses.

See In re Golinski, 2009 WL 222284 at *1–3.  This court's non-discrimination plan

requires that Ms. Golinski be afforded that benefit.  EDR Plan at 2.  OPM had, and

has, no authority to conclude otherwise.

### Order

I order as follows:

(1)     This matter is referred to the Appellate Commissioner for a hearing on
Ms. Golinski's claim under the Back Pay Act.  Within 70 days he shall submit a
report and recommendations on the factual issues listed above.  See p. 6 supra.

(2)     Within 30 days, the Administrative Office of the United States Courts
shall re-submit Ms. Golinski's Health Benefits Election form 2809 to her
designated insurer, the Blue Cross and Blue Shield Service Benefit Plan.  The AO
shall process any future benefit forms without regard to the sex of the listed
spouse.  See pp. 8–9 supra.

(3)     Within 30 days, the Office of Personnel Management shall rescind its
guidance or directive to the Blue Cross and Blue Shield Service Benefit Plan and
any other plan that Ms. Golinski's wife is not eligible to be enrolled as her spouse
under the terms of the Federal Employees Health Benefits Program because of her
sex or sexual orientation, or that the plans would violate their contracts with OPM
by enrolling Ms. Golinski's wife as a beneficiary.  See pp. 3, 9–15 supra.

(4)     The Office of Personnel Management shall cease at once its
interference with the jurisdiction of this tribunal.  Specifically, OPM shall not
advise Ms. Golinski's health plan, the Blue Cross and Blue Shield Service Benefit

Plan, that providing coverage for Ms. Golinski's wife violates DOMA or any other federal law. Nor shall OPM interfere in any way with the delivery of health benefits to Ms. Golinski's wife on the basis of her sex or sexual orientation. <u>See</u> pp. 3, 9–15 <u>supra</u>.

(5)   The Blue Cross and Blue Shield Service Benefit Plan shall enroll Ms. Golinski's wife within 30 days of receipt of the appropriate forms from the Administrative Office of the United States Courts, without regard to her sex or sexual orientation.

I authorize Ms. Golinski to take appropriate action to secure compliance

with this order, such as by petition for enforcement or mandamus. I trust, however,

that such action will not be necessary.

<u>November 19, 2009</u>
Date

Alex Kozinski
Chief Judge

The Clerk shall send this order to the Administrative Office of the United

States Courts and serve the order and a copy of our EDR plan on the Office of

Personnel Management and the Blue Cross and Blue Shield Service Benefit Plan in

the manner described by Fed. R. Civ. P. 4(h), (i). If OPM or Blue Cross wishes, it

may appeal so much of this order as concerns it using the procedures outlined in

the plan. <u>See</u> <u>EDR Plan</u> at 9; <u>Dep't of Agric., Food and Nutrition Servs.</u> v. <u>FLRA</u>,

879 F.2d 655, 658–59 (9th Cir. 1989), <u>vacated in part on other grounds</u>, 895 F.2d

page 17

1239 (9th Cir. 1990).  Any other individual or party aggrieved by this proceeding

may similarly appeal.

page 18

## Counsel

Argued by Rita F. Lin, Morrison & Foerster LLP, San Francisco, CA, who was joined on the briefs by James R. McGuire, Morrison & Foerster LLP, San Francisco, CA, for Karen Golinski.

EXHIBIT A



Human Resources
Products and Services
Division

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

FEB 2 0 2009

Ms. Nancy E. Ward
Deputy Assistant Director
Office of Human Resources
Administrative Office of the United States Courts
Washington, D.C. 20544

Dear Ms. Ward:

We have recently been contacted by officials of the Kaiser Foundation Health Plan and the Blue Cross and Blue Shield Service Benefit Plan regarding enrollment forms, and Orders from the U.S. Court of Appeals for the Ninth Circuit, submitted by your office. The intent of the enrollment forms was to provide health benefits coverage for the same-sex spouses of Mr. Brad Levenson and Ms. Karen Golinski.

As you are aware, Title 5, chapter 89 of the United States Code governs the Federal Employees Health Benefits (FEHB) Program. It provides for coverage of the employee and members of the employee's family. Members of the family are defined in the law, and include only certain unmarried dependent children and the spouse of the eligible employee or annuitant. P.L. 104-199, the Defense of Marriage Act (DOMA) requires an agency when interpreting an Act of Congress, to define the word "spouse" as a person of the opposite sex who is a husband or a wife. OPM issued guidance to agencies regarding the definitions of "marriage" and "spouse" in Benefits Administration Letter 96-111, dated November 15, 1996. This Letter is available on the OPM web site at http://www.opm.gov/retire/pubs/bals and remains in effect. Officials of agencies participating in the Federal benefits programs administered by OPM must follow the guidance provided in the Letters.

Because of the provisions of the FEHB law, as further defined by DOMA, Plans in the FEHBP may not provide coverage for domestic partners, or legally married partners of the same sex, even though recognized by state law.

Ms. Nancy E. Ward                                                                    2

We have advised Kaiser Foundation Health and the Blue Cross and Blue Shield
Service Benefit Plans that they may not accept the enrollment forms submitted by
your agency to provide coverage that is not allowed under Federal law.

If you have any questions, you may reach me at (202) 606-4762.


                                               Sincerely,

                                               *Lorraine E. Dettman*

                                               Lorraine E. Dettman
                                               Assistant Director
                                               Insurance Services Programs


cc: Kaiser Foundation Health Plan
     Blue Cross and Blue Shield Service Benefit Plan