MICHAEL F. HERTZ
Deputy Assistant Attorney General
JOSEPH P. RUSSONIELLO
United States Attorney
SUSAN K. RUDY
Assistant Branch Director
CHRISTOPHER R. HALL
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-4778
Facsimile: (202) 616-8470
Email: Christopher.Hall@usdoj.gov

Attorneys for Defendants
the U.S. Office of Personnel Management and John Berry

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| KAREN GOLINSKI )<br><br>                 Plaintiff, )<br><br>      v. )<br><br>THE UNITED STATES OFFICE OF )<br>PERSONNEL MANAGEMENT and )<br>JOHN BERRY, Director of the Office of )<br>Personnel Management, in his official )<br>capacity, )<br><br>                 Defendants. )<br>_____ ) | No. C 4:10-00257-SBA<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:   September 14, 2010<br>Time:  1 p.m.<br>Place:  Courtroom 1, 4th Floor<br>          U.S. Courthouse, 1301 Clay St.<br>          Oakland, California 94612 |

1

**TABLE OF CONTENTS**

2

3  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5  I.   FEHBP and the Plaintiff's Enrollment Effort. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6  II.  The Ninth Circuit Judicial Council and Its EDR Plan. . . . . . . . . . . . . . . . . . . . . . . . 3

7  III. Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

9  I.   Mandamus Is Not Available To Plaintiff Because OPM Is Not Under
     A "Clear Duty To Act.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10

11       A.   The United States Has Not Waived Its Sovereign Immunity
              For The Executive To Be Bound By An Administrative EDR Order. . . . . . . . . . . 8

12       B.   The EDR Panel Is An Administrative, Not A Judicial, Body. . . . . . . . . . . . . . . 10

13       C.   Congress Has Not Vested Administrative EDR Panels
              With Authority To Bind Federal Agencies Outside The Judiciary. . . . . . . . . . . 11

14

15            1.   The Statutory Authorization Of The Merit Systems
                   Protection Board Does Not Empower EDR Panels To
                   Direct Executive Agencies.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

16

17            2.   The Congressional Accountability Act Did Not Vest
                   Administrative EDR Panels With The Authority To Direct
                   Executive Agencies... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18

19            3.   The AOUSC Personnel Act Does Not Empower EDR Panels
                   To Direct Executive Agencies.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

20       D.   Congress Has Vested OPM With The Authority To Interpret
              And Apply The Federal Employees Health Benefits Act. . . . . . . . . . . . . . . . . . 16

21

22       E.   Constitutional Separation Of Powers Principles Do Not Authorize
              EDR Panels To Direct Executive Agencies' Statutorily-Authorized
              Administration Of Federal Programs.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

23

24       F.   OPM Also Cannot Be Bound By The EDR Order Because
              It Was Not A Party To The EDR Proceedings.. . . . . . . . . . . . . . . . . . . . . . . . . 19

25  II.  Mandamus Is Unavailable Because Any Duty By OPM To Comply
     With An Administrative, Intra-Judicial EDR Order Is, At A Minimum,

26   Not Free From Doubt.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

27

*Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint*

28  *Civ. No. 4:10-257-SBA*                                                                        i

III.   Mandamus Is Inappropriate Because Plaintiff Has Adequate,
       Alternative Remedies At Law...................................................... 22

IV.    Even If Mandamus Were Otherwise Appropriate, The Court Should
       Decline To Mandamus OPM Under These Circumstances.. ..................... 23

CONCLUSION. .............................................................................. 25

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

4

Alemite Mfg. Corporation v. Staff,
 42 F.2d 832 (2d Cir. 1930).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

5

Armachuelo v. MSPB,
 337 Fed. Appx. 889, 2009 WL 1971372 (Fed. Cir. July 9, 2009). . . . . . . . . . . . . . . . .  13

6

7

Blankenship v. McDonald,
 176 F.3d 1192 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 12, 14

8

CAB v. Delta Air Lines,
 367 U.S. 316 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

9

10

Chandler v. Judicial Council of the Tenth Circuit,
 398 U.S. 74 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 18

11

In re Cheney,
 406 F.3d 723 (D.C. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

12

13

Clinton v. Jones,
 520 U.S. 681 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

14

Commodities Futures Comm'n v. Schor,
 478 U.S. 833 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

15

16

Consolidated Edison Co. of New York v. Ashcroft,
 286 F.3d 600 (D.C. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

17

Department of the Army v. Blue Fox, Inc.,
 525 U.S. 255 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

18

19

Director, Edward J. Meyer Mem'l Hospital v. Stetz,
 433 F. Supp. 323 (W.D.N.Y. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 17

20

Dotson v. Griesa,
 398 F.3d 156 (2d Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

21

22

Dugan v. Rank,
 372 U.S. 609 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

23

Emergency Disaster Loan Ass'n v. Block,
 653 F.2d 1267 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

24

25

Fed. Mar. Comm'n v. S.C. State Ports Auth.,
 535 U.S. 743 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

26

Federated Dep't Stores, Inc. v. Moitie,
 452 U.S. 394 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

27

28

Forrester v. White,
 484 U.S. 219 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

In re Golinski,
    587 F.3d 901 (9th Cir. EDR Plan 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 5

In re Golinski,
    587 F.3d 956 (9th Cir. EDR Plan 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Hanford v. U.S.,
    63 Fed. Cl. 111 (Fed. Cl. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

Hansberry v. Lee,
    311 U.S. 32 (1940). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

Headwaters Inc. v. U.S. Forest Serv.,
    399 F.3d 1047 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

Heckler v. Ringer,
    466 U.S. 602 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6, 22

Johnson v. Reilly,
    349 F.3d 1149 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

Kerr v. Nat'l Endowment for the Arts,
    726 F.2d 730 (Fed. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Kildare v. Saenz,
    325 F.3d 1078 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21, 22

Kobleur v. Group Hospitalization & Med. Servs.,
    954 F.2d 705 (11th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,
    507 U.S. 163 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Lehman v. Nakshian,
    453 U.S. 156 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9, 11

In re Levenson,
    587 F.3d 925 (9th Cir. EDR Panel 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

Marbury v. Madison,
    5 U.S. (1 Cranch) 137 (1803). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

Martin v. Wilks,
    490 U.S. 755 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

Mistretta v. United States,
    488 U.S. 361 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10, 18

Montana v. United States,
    440 U.S. 147 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

N. Pipeline Constr. Co. v. Marathon Pipe Line Co.,
    458 U.S. 50 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

NTEU v. Campbell,
    589 F.2d 669 (D.C. Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

Nat'l Petroleum Refiners Ass'n v. FTC,
    482 F.2d 672 (D.C. Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

Nat'l Wildlife Fed'n v. United States,
    626 F.2d 917 (D.C. Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

O'Malley v. Woodrough,
    307 U.S. 277 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

Oppenheim v. OPM,
    51 M.S.P.R. 255 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Pit River Home & Agr. Co-op. Ass'n v. United States,
    30 F.3d 1088 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 21

Plaut v. Spendthrift Farm, Inc.,
    514 U.S. 211 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

Riley v. Giguiere,
    631 F. Supp. 2d 1295 (E.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

Roberts v. Dep't of the Army,
    168 F.3d 22 (Fed. Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Rosano v. Dep't of Navy,
    699 F.2d 1315 (Fed. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 17

Sable Comm. of Cal. v. FCC,
    827 F.2d 640 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

Taylor v. Sturgell,
    128 S. Ct. 2161 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

Transitional Learning Cmty. at Galveston v. OPM,
    220 F.3d 427 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

Travelers Indem. Co. v. Bailey,
    129 S. Ct. 2195 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20, 21

United States v. Ferreira,
    54 U.S. (13 How.) 40 (1852). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

United States v. Hatter,
    532 U.S. 557 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

United States v. Mitchell,
    463 U.S. 206 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

West v. Gibson,

1     527 U.S. 212 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

2  Whitehouse v. Illinois Cent. R. Co.,
   349 U.S. 366 (1955). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23
3
4  Wilbur v. United States,
   281 U.S. 206 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

5                     **STATUTES & CONSTITUTIONAL PROVISIONS**

6  AOUSC Personnel Act of 1990, Pub. L. 101-474, 104 Stat. 1097. . . . . . . . . . . . . . . . . . . . . .   14

7  Pub. L. No. 76-299, § 304(1), 53 Stat. 1223, 1223. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

8  1 U.S.C. § 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 5

9  2 U.S.C. § 1302(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

10  5 U.S.C. § 701 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 3, 22

11  5 U.S.C. § 1204. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

12  5 U.S.C. §§ 2105(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

13  5 U.S.C. § 5596. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 23

14  5 U.S.C. § 7701(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

15  5 U.S.C. §§ 8901 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

16  5 U.S.C. § 8903. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 3

17  5 U.S.C. § 8905. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

18  5 U.S.C. § 8912. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 22

19  5 U.S.C. § 8913. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

20  28 U.S.C. § 332(d)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

21  28 U.S.C. § 602 note. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

22  28 U.S.C. § 604(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

23  28 U.S.C. § 1361. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 6, 7

24  U.S. Const. art. III, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

25
                           **REGULATIONS**
26

27  5 C.F.R. §§ 890.101 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

28  5 C.F.R. § 890.102. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

5 C.F.R. § 890.104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22

5 C.F.R.§ 890.107. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

**MISCELLANEOUS**

H.R. Rep. No. 101-770. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Gordon Bermant & Russell R. Wheeler, "Federal Judges and the Judicial Branch: Their
    Independence and Accountability," 46 Mercer L. Rev. 835, 855 (1995). . . . . . . . . . . . . .  12

1

**INTRODUCTION**

2    Plaintiff, a staff attorney for the Ninth Circuit Court of Appeals, seeks to invoke the

3  "extraordinary remedy" of mandamus under 28 U.S.C. § 1361 to compel the United States Office

4  of Personnel Management ("OPM") to instruct her federal government insurance carrier to enroll

5  her same-sex spouse in her family insurance policy under the Federal Employees Health Benefits

6  Program ("FEHBP") despite a preclusion against doing so under the Defense of Marriage Act, 1

7  U.S.C. § 7 ("DOMA").  The basis for plaintiff's mandamus action is a series of orders issued by

8  the Honorable Alex Kozinski, the Chief Judge of the Ninth Circuit – acting not in his judicial

9  capacity but rather in his administrative role as a hearing officer in the Ninth Circuit's Employee

10  Dispute Resolution ("EDR") process – in an administrative complaint brought by plaintiff

11  against the Administrative Office of U.S. Courts ("AOUSC"), to which OPM was not a party.

12  But mandamus is not appropriate – and plaintiff's complaint should thus be dismissed – for

13  several related reasons.

14    Mandamus jurisdiction exists only where a plaintiff possesses a "clear right to relief," a

15  defendant has a "clear duty to act," and no other adequate remedy is available.  Plaintiff cannot

16  satisfy these elements.  For one thing, there is no waiver of sovereign immunity that would allow

17  OPM, as an Executive Branch agency, to be bound by an order of a Judicial Branch EDR panel

18  in this or any other context.  That the orders relied on by plaintiff were issued by Chief Judge

19  Kozinski does not change that fact, as he was exercising administrative authority derived from a

20  source other than his Article III power to resolve cases and controversies within his judicial

21  subject-matter jurisdiction.  A judge acting pursuant to a limited grant of administrative authority

22  to adjudicate grievances within the Judicial Branch cannot bind the other branches of

23  government.  Moreover, OPM could not in any event be bound by Chief Judge Kozinski's orders

24  because it was not a party to the administrative proceeding, and thus cannot be construed to have

25  a clear duty to act for that independent reason.  And finally, even if OPM had any duty to act –

26  which it did not – such a duty was not "clear," and thus cannot support mandamus.

27    Likewise, the third required element for mandamus jurisdiction is absent here because

28  plaintiff possesses several adequate, alternative remedies at law.  First, she has the right to seek

judicial review of OPM's determination regarding FEHBP benefits under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*  Second, like other federal employees, she is also entitled under OPM's regulations to seek reconsideration of AOUSC's initial denial of her request to enroll her spouse in her health plan.  Finally, plaintiff appears to have an  adequate potential remedy before the EDR panel itself – a request for back pay under 5 U.S.C. § 5596 that potentially would compensate her for the out-of-pocket costs of obtaining private health insurance for her spouse.  Not only that, but plaintiff appears to be pursuing that very remedy before the EDR panel, and has in fact previously been awarded back pay to compensate her for such out-of-pocket costs already incurred.  In that respect, it appears questionable at best whether plaintiff even possesses standing to bring this action, other jurisdictional shortcomings aside.

Finally, even if plaintiff satisfied all of the prerequisites for mandamus – which she does not – the Court should decline to mandamus OPM under these circumstances, as doing so would intrude on the shared responsibilities of the coordinate branches.  Such a consequence would be entirely avoidable, as further administrative proceedings could render this case moot entirely if allowed to proceed.

For those reasons, and as explained in detail below, the Court should dismiss plaintiff's Amended Complaint.

## BACKGROUND

### I.     FEHBP and the Plaintiff's Enrollment Effort

The Federal Employees Health Benefits Act of 1959 ("FEHBA"), 5 U.S.C. § 8901 et seq., establishes a comprehensive health insurance program for federal civilian employees, their family members, and others, known as the Federal Employees Health Benefits Program ("FEHBP").  FEHBA confers broad authority on OPM to administer the program and to promulgate regulations necessary to carry out the statute's objectives, including regulations prescribing "the manner and conditions under which an employee is eligible to enroll." 5 U.S.C. § 8913.  FEHBA grants OPM authority to contract with "qualified carriers" offering health insurance plans.  5 U.S.C. §§ 8902, 8903, 8906.  The "employees" who may participate in the FEHBP include employees of the Judiciary.  5 U.S.C. §§  2105(a)(2), 8901(1)(A).

Under FEHBA, an employee may enroll in an OPM-approved insurance plan by submitting a request to her employing agency, for either individual or "self and family" coverage. 5 U.S.C. § 8905(a); 5 C.F.R. § 890.102. The employing agency makes an initial enrollment decision in writing which must inform the employee that she has a right to seek reconsideration from the employing agency within 30 days. 5 C.F.R. § 890.104. The employing agency's decision on a reconsideration request must also be in writing, must state findings and conclusions, and is the agency's final decision. Id. That decision is subject to OPM's corrective authority, however. Id. § 890.103(b). OPM's regulations and the FEHBA provide for judicial review of enrollment decisions after exhaustion of administrative remedies. 5 U.S.C. § 8912; 5 C.F.R. § 890.107. Such judicial review would be under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. The FEHBP regulations apply generally to federal employees, without regard to which branch of government employs them. See generally 5 C.F.R. Part 890.

## II. The Ninth Circuit Judicial Council and Its EDR Plan

A judicial council is established within each federal appellate court to "make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit." 28 U.S.C. § 332(d)(1). The Judicial Council of the Ninth Circuit was created under this authority, "to consider and take required action upon any matter affecting the administration of its own work and that of all federal courts within the circuit . . . ." 9th Cir. Rules, Court Structure & Procedures(D).

In 1998, the Judicial Council of the Ninth Circuit approved an Employee Dispute Resolution ("EDR") plan that grants circuit employees certain substantive rights and sets out a procedure for the enforcement of those rights. See U.S. Court of Appeals for the Ninth Circuit, Employment Dispute Resolution Plan (rev. ed. 2000) ("EDR plan"), Exhibit A to plaintiff's Motion for Preliminary Injunction. The plan prohibits, among other things, "[d]iscrimination against employees based on . . . sex . . . and sexual orientation," and it also incorporates the rights and protections afforded under the Ninth Circuit Equal Employment Opportunity ("EEO") plan.

1    Id. at 2.[1]  In addition, the plan sets forth a detailed administrative process for the resolution of

2    employment disputes involving circuit employees. See id. at 1 ("Claims arising under this Plan or

3    the EEO Plan shall be treated in accordance with the procedures set forth in this Plan.").  After

4    mandatory counseling and mediation, an employee with an unresolved grievance may file a

5    formal written complaint with the chief judge of the relevant court.  Id. at 1, 3, 5-7.  The

6    respondent identified in an EDR complaint must in all cases be "the employing office that would

7    be responsible for redressing, correcting or abating the violations(s) alleged in the complaint."

8    Id.  In the event that the presiding officer finds a violation of a substantive right protected by the

9    plan, he may award "a necessary and appropriate remedy," including, e.g., relief under the Back

10   Pay Act, 5 U.S.C. § 5596.  EDR plan at 9-10.  "A party or individual" dissatisfied with the final

11   decision may petition the Judicial Council of the Ninth Circuit for review. Id. at 9.

12   **III.    Procedural History**

13           Plaintiff Karen Golinski, a staff attorney with the U.S. Court of Appeals for the Ninth

14   Circuit, is enrolled in the FEHBP.  Am. Compl. ¶ 14 & Ex. B at 1.  The plaintiff is married under

15   the laws of California to a spouse who, like plaintiff, is a woman.  Am. Compl. ¶ 17.  On October

16   2, 2008, plaintiff filed a complaint under the Ninth Circuit EDR Plan, seeking relief from the

17   decision of the AOUSC denying enrollment of her spouse in the FEHBP.  Am. Compl. ¶ 19.

18   Plaintiff does not allege that she exhausted her administrative remedies under the FEHBA or

19   OPM's implementing regulations, and OPM is not and was never a party to the EDR proceeding.

20           In the AOUSC's view, the FEHBA, 5 U.S.C. §§ 8901-8914, when read in light of

21   DOMA, did not permit OPM to contract with an insurance carrier for a health benefits plan

22   covering an employee's same-sex spouse.  See In re Golinski, 587 F.3d 901, 902 (9th Cir. EDR

23   Plan 2009); see also 5 U.S.C. §§ 8901(5), 8903(1), 8905(a) (providing for enrollment of a

24   "spouse" in a FEHBP family plan).  DOMA provides in pertinent part:

25   _____

26   [1]      The EEO Plan sets forth EEO rules for employees of the Court.  See Blankenship v.
     McDonald, 176 F.3d 1192, 1194 (9th Cir. 1999) (discussing claim under the plan); cf. Dotson v.
27   Griesa, 398 F.3d 156, 172 (2d Cir. 2005) (discussing the Judicial Conference's development of a
28   model EEO plan).

1

2    In determining the meaning of any Act of Congress, or of any ruling, regulation,
     or interpretation of the various administrative bureaus and agencies of the United
3    States, the word "marriage" means only a legal union between one man and one
     woman as husband and wife, and the word "spouse" refers only to a person of the
     opposite sex who is a husband or wife.

4    1 U.S.C. § 7.

5        The Honorable Alex Kozinski, Chief Judge of the U.S. Court of Appeals for the Ninth

6    Circuit, heard the EDR complaint and entered an order requiring the Director of the AOUSC to

7    submit plaintiff's enrollment form to her health insurance carrier.  Am. Compl. ¶ 20; see In re

8    Golinski, 587 F.3d at 902.[2]  The AOUSC complied with that order.  Am. Compl. ¶ 21.  Plaintiff's

9    insurance carriers sought guidance from OPM, which, acting in its statutorily-assigned capacity

10   as the government-wide administrator of the FEHBP, see 5 U.S.C. §§ 8901 et seq., advised the

11   AOUSC and plaintiff's insurance carriers that DOMA, 1 U.S.C. § 7, forecloses enrolling

12   plaintiff's same-sex spouse in the FEHBP.  See Am. Compl. Ex. C (Attachment A, at 1).  This

13   was consistent with OPM's long-standing guidance to federal agencies.  See OPM, Benefits

14   Administration Letter No. 96-111, at 3 (Nov. 15, 1996), available at

15   http://www.opm.gov/retire/pubs/bals/1996/96-111.pdf.  On November 19, 2009, Chief Judge

16   Kozinski entered another order in the EDR proceeding that rejected OPM's position that it was

17   not bound by the earlier order and directed OPM to "rescind its guidance or directive to the

18   [insurance carrier] that [plaintiff's] wife is not eligible to be enrolled as her spouse . . . because of

19   her sex or sexual orientation" and to permit the enrollment.  Am. Compl. Ex. C at 15 ("the

20   November 19, 2009 Order").

21       The November 19, 2009 Order concluded that Ms. Golinski was entitled to, inter alia,

22   prospective relief that would enable her spouse to enroll in her FEHBP plan.  In re Golinski, 587

23   F.3d 956, 960-61 (9th Cir. EDR Plan 2009).  The Order directed OPM not to "advise [the Blue

24   Cross and Blue Shield Association] that providing coverage for Ms. Golinski's wife violates

25   DOMA or any other federal law" and not to "interfere in any way with the delivery of health

26

27   ────────────────

28   [2]    The AOUSC is an administrative body acting "under the supervision and direction of the
     Judicial Conference of the United States."  28 U.S.C. § 604(a).

*Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint*
*Civ. No. 4:10-257-SBA*                                                                        5

1    benefits to Ms. Golinski's wife on the basis of her sex or sexual orientation." <u>Id.</u> at 963-64.

2        On December 17, 2009, the Blue Cross and Blue Shield Association ("BC/BS" or "the

3    Association") filed a petition for review of the November 19, 2009 Order with the Judicial

4    Council of the Ninth Circuit, arguing that "the Judicial Council has no jurisdiction over [the

5    Association] under the EDR Plan" and that, in any event, Chief Judge Kozinski's conclusion that

6    the FEHBA permits enrollment of same-sex spouses was incorrect. <u>See</u> Petition for Review for

7    Blue Cross and Blue Shield Association at 1,9, <u>In re Golinski,</u> No. 09-80173 (9th Cir. EDR Plan

8    December 17, 2009).  On December 22, 2009, Chief Judge Kozinski issued another order in the

9    EDR proceeding, stating that the time for appealing his prior orders had expired; that OPM and

10   the AOUSC had not appealed; and that, accordingly, his orders were "final and preclusive·on all

11   issues decided therein as to [the AOUSC and OPM]."  <u>In re Golinski</u>, No. 09-80173, Docket

12   Entry No. 23, at 1.[3]

13       On January 20, 2010, plaintiff filed her Complaint seeking an order of mandamus

14   requiring OPM to abide by Chief Judge Kozinski's orders under the EDR Plan.  One week later,

15   on January 26, 2010, plaintiff filed a Motion for Preliminary Injunction.  Docket Entry No. 8.

16   Subsequently, plaintiff filed an Amended Complaint in which she requests "the issuance of

17   preliminary and permanent injunctions compelling defendants, and those acting at their direction

18   or on their behalf, to comply with the Chief Judge's [orders]."  Am. Compl. at 6, Prayer for

19   Relief.

20                              **ARGUMENT**

21       "The common law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to

22   provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the

23   defendant owes him a clear nondiscretionary duty."  <u>Heckler v. Ringer</u>, 466 U.S. 602, 616

24

25   [3]      On January 29, plaintiff Golinski and Blue Cross sought and, on February 1, Chief Judge
26   Kozinski granted a stay of the EDR proceedings pending the outcome of this civil action.  <u>In re</u>
     <u>Golinski</u>, No. 09-80173 (9th Cir. EDR Plan), Docket Entry No. 38.

27

28   *Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint*
     *Civ. No. 4:10-257-SBA*                                                                    6

1   (1984).  Therefore, mandamus jurisdiction under 28 U.S.C. § 1361 exists only "when a plaintiff

2   has a clear right to relief, a defendant has a clear duty to act and no other adequate remedy is

3   available."  Pit River Home & Agr. Co-op. Ass'n v. United States, 30 F.3d 1088, 1097 (9th Cir.

4   1994) (internal citations omitted).  The defendant must have a ministerial duty; "such a duty must

5   be 'so plainly prescribed as to be free from doubt and equivalent to a positive command . . . .

6   [W]here the duty is not thus plainly described, but depends on a statute or statutes the

7   construction of which is not free from doubt, it is regarded as involving the character of judgment

8   or discretion which cannot be controlled by mandamus.'"  Consol. Edison Co. of New York v.

9   Ashcroft, 286 F.3d 600, 605 (D.C. Cir. 2002) (quoting Wilbur v. United States, 281 U.S. 206,

10  218-19 (1930)).

11      Plaintiff's failure to establish a "clear duty to act," inter alia, subjects her claim to

12  dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) as well as for

13  failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).  In re.

14  Cheney, 406 F.3d 723, 729 (D.C. Cir. 2005) ("[I]f there is no clear and compelling duty under the

15  statute as interpreted, the district court must dismiss the action [for lack of jurisdiction].").  The

16  Mandamus Act does not itself waive the United States' sovereign immunity.  Wash. Legal

17  Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 901 (D.C. Cir. 1996).  An independent waiver

18  of sovereign immunity is required, and plaintiff's action is therefore jurisdictionally barred,

19  unless the action meets the criteria for the so-called Larson-Dugan exception," which applies

20  when a plaintiff seeks to "force a public official to perform a duty  imposed upon him in his

21  official capacity."  Wash. Legal Found., 89 F.3d at 901.  The D.C. Circuit has recognized that

22  where, as here, the defendants deny that they have the duty that the plaintiff alleges, "the question

23  of jurisdiction merges with the question on the merits."  Id. at 902.

24      Here, as explained below, there is no independent waiver of sovereign immunity, and

25  defendants do not have any "clear duty to act."  Thus, Plaintiff's complaint should be dismissed

26  pursuant to both Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

27

28  *Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint*
    *Civ. No. 4:10-257-SBA*                                                                    7

1

2

**I.     Mandamus Is Not Available To Plaintiff Because OPM Is Not Under A "Clear Duty To Act."**

3

4

The premise of plaintiff's claim for mandamus is her assertion that OPM has a "ministerial" "dut[y]" to comply with the EDR order.  Am. Compl. ¶ 29.  In her reply in support

5

of her motion for preliminary injunction, plaintiff elaborated upon this asserted premise,

6

suggesting that OPM's alleged failure to comply with the EDR order constitutes "interference"

7

with the EDR process itself, and arguing that "the Judiciary" "must be able to demand the

8

Executive's . . . non-interference" through mandamus.  Pl. Mem. 6-7.  That suggestion is

9

incorrect both factually and logically.  Factually, OPM cannot be accurately characterized as

10

"interfering" with the administration of a federal program – FEHBP – it is statutorily charged

11

with administering as to all federal employees, including those of the Judicial Branch.  See Part

I.D, infra.  And as a matter of logic, OPM cannot be accused of "interference" with the EDR

12

process based entirely on purported non-compliance as to an order with which the agency has no

13

obligation to comply, much less the sort of "clear duty" required for mandamus to be available.

14

15

Contrary to plaintiff's suggestion, there has been no express waiver of the federal

16

government's sovereign immunity that would require OPM to comply with an order issued by the

EDR Panel – an administrative rather than judicial body.  And even if there had been, OPM

17

would not be bound by the particular order here because it was not a party to the administrative

18

proceeding in which the order was issued.  Because the EDR Order does not impose any binding

19

duty on OPM or the Executive, plaintiff's mandamus claim must fail.

20

21

**A.     The United States Has Not Waived Its Sovereign Immunity For The Executive To Be Bound By An Administrative EDR Order.**

22

Even in the context of actual litigation pursuant to Article III, it is "axiomatic that the

23

United States may not be sued without its consent and that the existence of consent is a

24

prerequisite for jurisdiction."  United States v. Mitchell, 463 U.S. 206, 212 & n.9 (1983)

25

(citation omitted).  This applies no less to an administrative tribunal than to the federal courts.[4]

26

---

27

[4]     See, e.g., Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 760 (2002) ("if the

28

Framers thought it an impermissible affront to a State's dignity to be required to answer the complaints of private parties in federal courts, we cannot imagine that they would have found it

1   The United States plainly has not expressly consented to be bound by orders under the Ninth

2   Circuit's EDR process, and the EDR Order identifies no applicable waiver of sovereign

3   immunity.  A waiver to suit in an Article III court would not apply to the EDR panel.  See West

4   v. Gibson, 527 U.S. 212, 226 (1999) ("It is settled law that a waiver of sovereign immunity in

5   one forum does not effect a waiver in other forums.").  To the extent the EDR Order seeks to

6   imply such a waiver via analogies to the Congressional Authorization Act or other statutes, see In

7   re Golinski, 587 F.3d at 961-63 & nn.4, 6, this is not sufficient – the government's consent to be

8   sued or bound by a judgment must be "'unequivocally expressed' in . . . statutory text" and

9   strictly construed in favor of the government.  Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255,

10  261 (1999) (citation omitted).[5]

11

12
_____

13  acceptable to compel a State to do exactly the same thing before [an] administrative tribunal
    . . ."); Hanford v. U.S., 63 Fed. Cl. 111, (Fed. Cl. 2004) ("plaintiff has failed to establish that [the
14  United States] has expressly consented to be sued in plaintiff's state administrative tribunal;
    accordingly, plaintiff's 'Administrative Judgment' is without effect and his claim for 'judgment
15  by estoppel' must fail.").  In her Preliminary Injunction reply, plaintiff suggests that these cases
    are inapposite because they do not address what she calls the "unusual notion" that the federal
16  government "has sovereign immunity against federal administrative orders issued to itself."  Pl.
    Mem. 3.  Plaintiff is incorrect.  As explained in the text immediately supra and infra, it is well-
17  established that "a waiver of sovereign immunity in one forum" – an Article III court – "does not
    effect a waiver in other forums."  West v. Gibson, 527 U.S. 212, 226 (1999).  That goes hand-in-
18  hand with the equally fundamental principle that "limitations and conditions upon which the
    Government consents to be sued must be strictly observed and exceptions thereto are not to be
19  implied."  Lehman v. Nakshian, 453 U.S. 156, 161 (1981).  Plaintiff points to nothing here that
    would plausibly suggest that these principles do not apply in this context.  Her suggestion that
20  they constitute an "unusual notion" is thus without any basis.

21

22  [5]      Plaintiff's Amended Complaint alleges that "sovereign immunity does not apply to this
    action against" the Director of OPM because his actions were "beyond the scope of his statutory
23  and constitutional authority."  Am. Compl. ¶ 13.  Her preliminary injunction reply reiterates that
    assertion.  Pl. Mem. 4.  The EDR Orders were directed against OPM, however.  Regardless of
24  that fact, though, this exception to sovereign immunity does not apply where, as here, plaintiff
    seeks to compel the government itself to act, even if the complaint is nominally addressed to a
25  government official.  Dugan v. Rank, 372 U.S. 609, 620 (1963).  It also does not apply where
    Congress has vested OPM with the authority to administer the FEHBP under FEHBA as to all
26  federal employees and, thus, the Director of OPM was "exercising the powers delegated to him
    by the sovereign."  Id. at 622.  See Part I.D, infra.
27

28

1

**B.    The EDR Panel Is An Administrative, Not A Judicial, Body.**

2

In resolving "cases" and "controversies," it is the federal courts' "duty . . . to say what the

3

law is." Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803). Accordingly, there is no

4

dispute that a federal judge deciding a case or controversy pursuant to his or her judicial power

5

under Article III may issue binding directives to agencies of the United States. But this power

6

does not extend beyond cases and controversies, and not every act by one who is a federal

7

judicial officer is a judicial act taken in exercise of such Article III powers. See Mistretta v.

8

United States, 488 U.S. 361, 404 (1989) (power wielded by judges serving on U.S. Sentencing

9

Commission "is not judicial power; it is administrative power derived from the enabling

10

legislation"). Thus, a judge's "[a]dministrative decisions, even though they may be essential to

11

the very functioning of the courts," are not "judicial acts." Forrester v. White, 484 U.S. 219, 228

12

(1988). Indeed, a judge exercising administrative authority *cannot* simultaneously exercise his or

13

her judicial power. See Mistretta, 488 U.S. at 404 (the constitution "does not forbid judges to

14

wear two hats" but it does "forbid[] them to wear both hats at the same time"). Accordingly, the

15

Judiciary's administrative bodies, such as the circuit judicial councils, "some of which [entities]

16

are comprised of judges, . . . do not exercise judicial power in the constitutional sense of deciding

17

cases and controversies, but they share the common purpose of providing [through administration

18

and rulemaking] for the fair and efficient fulfillment of responsibilities that are properly the

19

province of the Judiciary." Mistretta, 488 U.S. at 388. See Chandler v. Judicial Council of the

20

Tenth Circuit, 398 U.S. 74, 86 n.7 (1970).

21

Chief Judge Kozinski's authority in his administrative capacity under the Ninth Circuit's

22

EDR process is therefore "not judicial . . . in the sense in which judicial power is granted by the

23

Constitution to the courts of the United States." United States v. Ferreira, 54 U.S. (13 How.) 40,

24

47-48 (1852). He was not exercising Article III authority to resolve a case or controversy when,

25

in Ms. Golinski's EDR proceeding, he ordered OPM to rescind its guidance to BC/BS. And as

26

an EDR hearing officer he was not vested with the authority to bind an Executive agency (let

27

alone one that was not before him).

28

### C.   Congress Has Not Vested Administrative EDR Panels With Authority To Bind Federal Agencies Outside The Judiciary.

The question to be answered here is not merely what an administrative EDR Panel "thinks it should do but what Congress has said it can do." CAB v. Delta Air Lines, 367 U.S. 316, 322 (1961). Chief Judge Kozinski wrote that the November 19, 2009 EDR Order "is proper and within my jurisdiction because Congress intended this [EDR] tribunal to be the sole forum for adjudicating complaints of workplace discrimination by employees of the Judiciary. With that responsibility must come power equal to the task." In re Golinski, 587 F.3d at 961. Defendants respectfully but strongly disagree that this was Congress's intent, and this Court should find that it was not.

In her preliminary injunction reply brief, plaintiff appears to concede that there is no specific Congressional grant of authority to the EDR Panel that would explicitly bind Executive Branch agencies, including OPM. See Pl. Mem. 8. Nonetheless, plaintiff argues that OPM must be bound by the EDR Order anyway because Congress had no need to delegate specific authority by virtue of its grant of "broad" authority to each judicial council in 28 U.S.C. § 332(d)(1) to "make all necessary and appropriate orders" for the administration of justice "within its circuit." See id. In plaintiff's view, the only limitation upon this authority is an inability for the Ninth Circuit Judicial Council to issue orders as to the administration of justice in other circuits. See id. Plaintiff is incorrect.

In determining whether Congress has delegated certain authority to an administrative actor, the delegation must be either "explicit" or "fairly . . . implied" by a statute. Ry. Labor Executives' Ass'n v. Nat'l Mediation Bd., 29 F.3d 655, 666 n.6 (D.C. Cir. 1994) (en banc). Moreover, contrary to plaintiff's suggestion, any such delegation must be specific: "The extent of [an entity's administrative] powers can be decided only by considering the powers Congress specifically granted it in light of the statutory language and background." Nat'l Petroleum Refiners Ass'n v. FTC, 482 F.2d 672, 674 (D.C. Cir. 1973). Likewise, as noted in Part I.A, supra, "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Lehman, 453 U.S. at 161.

1    As the history of this Circuit's EDR Plan demonstrates, Congress has not vested it with

2    the authority to issue binding directives on entities outside the Judiciary.[6]  The EDR Plan was

3    developed without any express statutory authorization, and its issuance followed a long history of

4    Executive Branch administrative support for the Judiciary.[7]  See Dotson v. Griesa, 398 F.3d 156,

5    169-76 (2d Cir. 2005); Blankenship v. McDonald, 176 F.3d 1192, 1195 (9th Cir. 1999)

6    ("Congress has given judicial employees certain employment benefits and remedies, such as back

7    pay, severance pay, family and medical leave, and health and retirement benefits. Congress has

8    withheld other benefits and remedies, such as review of adverse personnel decisions. This

9    demonstrates that the lack of more complete remedies was not inadvertent.").  It was only in

10   1980 that the Judicial Conference developed a model EEO plan and required federal courts to

11   adopt EEO plans of their own.  See Dotson, 398 F.3d at 172. As set forth below, the

12   administrative, intra-Judiciary EDR plans established thereafter were not vested with any

13   authority, statutory or otherwise, to bind the Executive.[8]

---

[6]    Title 28 U.S.C. § 332 empowers the judicial council of each circuit to "make all
necessary and appropriate orders for the effective and expeditious administration of justice *within
its circuit.*"  28 U.S.C. § 332(d)(l) (emphasis added).

[7]    "Those who established the system of separation of powers, including an independent
judiciary, were content to allow judges and their clerks to rely on executive branch support."
Gordon Bermant & Russell R. Wheeler, "Federal Judges and the Judicial Branch: Their
Independence and Accountability," 46 MERCER L. REV. 835, 855 (1995).  Indeed, the
Department of Justice provided administrative support for the Judiciary until Congress created
the AOUSC in 1939.  See id. at 854-55; see also Pub. L. No. 76-299, § 304(1), 53 Stat. 1223,
1223.

[8]    By arguing that Congress has not statutorily vested administrative EDR panels with
authority to bind Executive agencies, OPM does not take any position as to whether such
legislation would accord with separation of powers or otherwise be constitutionally permissible.

1.      **The Statutory Authorization Of The Merit Systems Protection Board Does Not Empower EDR Panels To Direct Executive Agencies.**

Chief Judge Kozinski wrote that had the January 13, 2009 EDR Order "come from the [Merit Systems Protection Board ("MSPB")], there would have been no question that it would have had to be obeyed," and that because "EDR tribunals take the place of the MSPB for judicial employees, . . . it makes sense that Congress gave our EDR tribunals powers coextensive with those of the MSPB." In re Golinski, 587 F.3d at 961 n.4 (citing 5 U.S.C. § 1204(a)(2)). Defendants respectfully submit that these statements are not well-founded because the MSPB is not empowered to do what the EDR Order seeks to do here and, regardless, Congress has not granted intra-judiciary EDR panels the same authority to bind executive agencies as the MSPB.

The MSPB's jurisdiction is restricted to actions made "appealable to the Board under any law, rule, or regulation," 5 U.S.C. § 7701(a), and there is no such legal authorization for appeal to the MSPB of OPM enrollment decisions. See 5 C.F.R. § 1201.3; Roberts v. Dep't of the Army, 168 F.3d 22, 23-24 (Fed. Cir. 1999) (MSPB's authority "is limited to those matters over which it has been given jurisdiction by some statute or regulation."). Indeed, the MSPB itself has held that OPM's "decisions concerning its administration of health benefits are not reviewable by the [MSPB]." Oppenheim v. OPM, 51 M.S.P.R. 255, 257 (1991). See also Rosano v. Dep't of Navy, 699 F.2d 1315, 1318-20 (Fed. Cir. 1983) (MSPB lacks jurisdiction to review a challenge to OPM's decision approving or not approving a health plan); Armachuelo v. MSPB, 337 Fed. Appx. 889, 2009 WL 1971372 (Fed. Cir. July 9, 2009) (unpublished) ("OPM determinations concerning health plan enrollment are final and not reviewable by the Board.").

Even if the MSPB could review OPM's FEHBP coverage decisions, the Executive Branch's MSPB and an EDR hearing officer within the Judicial Branch do not have "coextensive" statutory authority over Executive Branch agencies. Contra In re Golinski, 587 F.3d at 961 n.4. Congress granted the MSPB "special power" to compel agencies within its jurisdiction in proceedings before the Board to comply with its orders and decisions. Kerr v. Nat'l Endowment for the Arts, 726 F.2d 730, 732 (Fed. Cir. 1984); see 5 U.S.C. § 1204(a)(2). By contrast, there is no equivalent provision authorizing the establishment of judicial EDR

1   processes that can do the same.  See, e.g., Leatherman v. Tarrant County Narcotics Intelligence

2   and Coordination Unit, 507 U.S. 163, 168 (1993) ("*Expressio unius est exclusio alterius*.").

3        Thus, the EDR process provides "administrative review *within the judiciary*."  Dotson,

4   398 F.3d at 176 (emphasis added).  It is more akin to an intra-agency equal employment

5   opportunity adjudication process than a separate tribunal empowered by Congress to bind federal

6   agencies.  Indeed, the EDR Plan itself lists "remedies available to successful complainants," and

7   those remedies are all actions that may be taken solely by and within the Judicial Branch such as

8   reinstatement, promotion, and modification of the judiciary's records on the employee.  See

9   Ninth Circuit EDR Plan at 9-10.  FEHBP remedies that require action by entities outside the

10  Judiciary are available under OPM's FEHBP regulations and the APA.

11          **2.    The Congressional Accountability Act Did Not Vest Administrative
                    EDR Panels With The Authority To Direct Executive Agencies.**

12       In 1995, Congress extended to congressional (but not judicial) employees the protections

13  of various workplace laws applicable to other public- and private-sector employees when it

14  enacted the Congressional Accountability Act ("CAA").  See 2 U.S.C. § 1302(a).  The CAA

15  vests enforcement authority in an Office of Compliance established within the legislative branch.

16  Id. § 1381.  Under the statute, congressional employees with cognizable grievances must

17  complete counseling and mediation, after which they may either file a civil action in federal

18  district court, or initiate proceedings with the Office of Compliance and then seek judicial review

19  of that Office's decisions.  See id. §§ 1401-1408.  Congress considered bringing judicial

20  employees within the ambit of the CAA, but chose not to do so.  See Dotson, 398 F.3d at 173.

21  The Judicial Conference did not seek similar legislation, but in 1997 it issued a model EDR plan.

22  See id., 398 F.3d at 175.  The Ninth Circuit's EDR plan was adopted in accord with that model.

23  See Ninth Circuit EDR Plan at 1.  Congress did not enact any legislation providing for

24  administrative or judicial review of adverse employment decisions involving judicial employees.

25  Dotson, 398 F.3d at 175; cf. Blankenship, 176 F.3d at 1195 ("the lack of more complete

26  remedies [for judicial employees] was not inadvertent.").

27

28

*Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint*
*Civ. No. 4:10-257-SBA*                                                                    14

### 3. The AOUSC Personnel Act Does Not Empower EDR Panels To Direct Executive Agencies.

The November 19, 2009 Order also suggests that the AOUSC Personnel Act of 1990, Pub. L. 101-474, 104 Stat. 1097, which transferred control over the AOUSC's personnel matters from the Executive Branch to a personnel system within the AOUSC, may constitute implicit congressional recognition of the Judiciary's authority to exercise the same powers as the MSPB. See In re Golinski, 587 F.3d at 962 n.6. But that Act does not authorize EDR Panels to issue binding directives to agencies outside the Judicial Branch such as OPM.

By its terms, the AOUSC Personnel Act solely addresses personnel matters within the AOUSC and thus does not even speak to such matters within the federal courts generally. Section 3(g) of the AOUSC Personnel Act, 104 Stat. 1099, empowers the AOUSC to exercise, *with respect to employees or applicants for employment in the AOUSC,* "any authority granted" to the MSPB under "any law prohibiting" certain enumerated forms of "discrimination in Federal employment." 28 U.S.C. § 602 note. This provision does not even apply to Judiciary employees outside AOUSC such as plaintiff. Even if it did, the MSPB does not have the authority or jurisdiction to issue directives to OPM concerning OPM's administration of FEHBP.

In any event, the November 19, 2009 Order is clear that the directives to OPM are for the purpose of enforcing the nondiscrimination protections set forth in the Ninth Circuit's own internal EDR and EEO plans, not any federal anti-discrimination statute. See In re Golinski, 587 F.3d at 963. But the AOUSC Act speaks in terms of empowering the AOUSC to exercise the authorities granted the MSPB under laws prohibiting federal employment discrimination. Even if the Ninth Circuit EDR plan qualified as such a law, it grants no power to the MSPB.

Moreover, the AOUSC Personnel Act contains no language expressly conferring on the AOUSC the authority to issue directives to OPM in its administration of the FEHBP, and none may be fairly implied. Indeed, legislative history makes clear that the Act affects neither the entitlement of the AOUSC's employees to health benefits under the FEHBP nor OPM's responsibility for hearing those employees' administrative appeals of its decisions under the FEHBA. See H.R. Rep. No. 101-770, pt. 1, at 6 (1990), reprinted in 1990 U.S.C.C.A.N. 1709,

1   1710 ("Being subject to the retirement and insurance plans administered by [OPM], employees of

2   the AO[USC] will continue to appeal adverse rulings on these matters to the OPM").

3          Based on the foregoing, it is plain that the EDR process is one for "administrative review

4   within the judiciary." Dotson, 398 F.3d at 176.  It is not specifically authorized by any statute,

5   and Congress has never waived the Executive's sovereign immunity in those administrative

6   review proceedings.[9]

7          **D.    Congress Has Vested OPM With The Authority To Interpret And Apply The**
          **Federal Employees Health Benefits Act.**

8

9          Unlike administrative EDR Panels within the Judiciary, Congress has conferred on OPM

10  the authority to administer the FEHBP under FEHBA.  And insofar as plaintiff asserts that this

11  authority does not extend to the FEHBA's application to judicial employees, as she did in her

12  motion for preliminary injunction, see Pl. Mem. 12, she is mistaken.  The FEHBA specifically

13  entrusts OPM with administering the FEHBP as to all federal employees.  See Transitional

14  Learning Cmty. at Galveston v. OPM, 220 F.3d 427, 429 (5th Cir. 2000) (in case involving

15  benefits for retired district judge, stating "[u]nder FEHBA, the OPM is delegated the authority to

16  promulgate regulations and to negotiate and contract with qualifying private insurance carriers to

17  offer health benefit plans to federal employees."); Kobleur v. Group Hospitalization & Med.

18  Servs., 954 F.2d 705, 709 (11th Cir. 1992).  In particular, the FEHBA authorizes OPM to

19  negotiate and contract with private insurance carriers to offer health benefits plans to federal

20  employees – including judicial employees – and other eligible individuals, see 5 U.S.C. §§ 2104,

21  2105, 8901, 8902(a), 8903, and to "prescribe regulations necessary to carry out" the Act, id. §

22  8913(a), including with respect to plan enrollment, id. § 8913(b).[10]

23  _____

24  [9]      Nor, as one of the EDR Orders suggests, has Congress somehow acquiesced in the
    assertion of such power by administrative EDR panels because Congress has not acted to abolish

25  the panels.  See November 19, 2009 Order at 14.  The EDR Orders here appear to be wholly
    without precedent, and Congress can hardly have acquiesced to an assertion of power that has

26  never before been made.

27  [10]     Plaintiff cited Director, Edward J. Meyer Mem'l Hospital v. Stetz, 433 F. Supp. 323, 325
    (W.D.N.Y. 1977), in her motion for preliminary injunction for the proposition that the "scope of

28  OPM's authority is 'solely to contract with qualified carriers, to make information regarding the

1    OPM's authority is not unreviewable.  The APA affords a cause of action for claims

2    against OPM arising out of its administration of the FEHBP, and the FEHBA specifically

3    provides that jurisdiction to review claims challenging OPM's administration of the FEHBP lies

4    in the U.S. district courts and the U.S. Court of Federal Claims, which have concurrent

5    jurisdiction "of a civil action or claim against the United States founded on [the Act]."  Id. §

6    8912.  See NTEU v. Campbell, 589 F.2d 669, 674 (D.C. Cir. 1978).  There is, however, no

7    provision of the FEHBA expressly granting *any* administrative entity a role in reviewing any

8    actions taken by OPM in administering the FEHBP.  Cf. Rosano, 699 F.2d at 1319 (employing

9    agency "had no power to change" "FEHB[P] options[] determined by OPM"); In re Levenson,

10   587 F.3d 925, 934 (9th Cir. EDR Panel 2009) (Reinhardt, J.) (observing that FEHBA vests

11   authority to enter into health insurance contracts for federal employees "in a single executive

12   agency, OPM" and that it would be inappropriate to issue an order directing the Office of the

13   Federal Public Defender ("FPD") "to enter into separate contracts [for its employees] with

14   private insurers" because "[n]o statute or regulation authorizes the FPD to enter into [such

15   contracts] or to bind the United States to any such contract").

16   **E.    Constitutional Separation Of Powers Principles Do Not Authorize EDR
17          Panels To Direct Executive Agencies' Statutorily-Authorized Administration
              Of Federal Programs.**

18       Plaintiff has argued in support of her motion for preliminary injunction that OPM's

19   actions with respect to enrollment of her spouse "undermined the co-equal status of another

20   branch of government, the independence of the Judiciary, and the Courts' power to interpret the

21   laws of the United States," in violation of constitutional separation of powers principles.  Pl.

22   Mem. 12.  That argument is incorrect.  Because of its statutory grant of power, OPM's

23   _____

24   plans available to eligible employees, and to make a continuing study of the administration and
     operation of this program.'"  See Pl. PI Mem. 12, quoting id.  That citation is unavailing here.

25   Stetz deals not with OPM but the former Civil Service Commission, and it speaks not to that
     Commission's "authority" but to its "role."  Stetz, 433 F. Supp. at 325.  It also states that the

26   Commission had the "authority" to issue regulations carrying out the mandate of the FEHBA.  Id.

27   In any event, the case held merely the Commission was not "authorized to act as an insurer of its
     employees" and that a suit concerning a benefits dispute was properly brought against the

28   insurance carrier, not the Commission.  Id.

1   administrative determinations concerning the FEHBP take precedence over another

2   administrative actor, such as an EDR panel.  This says nothing about the courts' undisputed

3   *judicial power* to say what the law is in a case or controversy.

4           Moreover, there is nothing impermissible about the benefits received by judicial branch

5   employees being to some extent dependent on executive branch administrative interpretation of

6   the laws.  The Supreme Court has squarely rejected "the notion that the three Branches must be

7   entirely separate and distinct."  Mistretta, 488 U.S. at 380.  Separation of powers thus does not

8   require a "hermetic division among the Branches."  Id. at 381.  "[E]ven quite burdensome

9   interactions" "between the Judicial Branch and the Executive" do not "necessarily rise to the

10  level of [unconstitutionality]."  Clinton v. Jones, 520 U.S. 681, 702 (1997).

11          Of course, "'the separation-of-powers doctrine requires that a branch not impair another

12  in the performance of its constitutional duties,'" id. at 701 (quoting Loving v. United States, 517

13  U.S. 748, 757 (1996)), and in considering alleged encroachments upon the Judiciary, the

14  Supreme Court specifically has identified the danger of another branch "'impermissibly

15  threaten[ing] the institutional integrity of the Judicial Branch,'" Mistretta, 488 U.S. at 383

16  (quoting Commodity Futures Comm'n v. Schor, 478 U.S. 833, 851 (1986)).  The coordinate

17  branches therefore may not interfere with the "total and absolute independence of judges *in*

18  *deciding cases* or in any phase of the decisional function."  Chandler, 398 U.S. at 84 (emphasis

19  added).  Congress may not "vest review of the decisions of Article III courts in officials of the

20  Executive Branch" or "command[] the federal courts to reopen final judgments."  Plaut v.

21  Spendthrift Farm, Inc., 514 U.S. 211, 218-19 (1995).  And Congress may not "authorize the

22  adjudication of Article III business in a non-Article III tribunal" in a way that "impermissibly

23  threatens the institutional integrity of the Judicial Branch."  Schor, 478 U.S. at 851.[11]

24          Intrusions that transgress separation of powers are therefore those that go to the core

25

26  [11]     Specific constitutional provisions help to preserve judicial independence: the good
    Behavior Clause "guarantees that Art. III judges shall enjoy life tenure, subject only to removal
27  by impeachment," and the Compensation Clause "guarantees Art. III judges a fixed and
    irreducible compensation for their services."  N. Pipeline Constr. Co. v. Marathon Pipe Line Co.,
28  458 U.S. 50, 59 (1982) (plurality opinion); see also U.S. Const. art. III, § 1.

*judicial* function of judging cases or controversies pursuant to Article III.  But here, OPM's *administrative* interpretation and enforcement of generally applicable, statutory limitations on enrollment in the FEHBP as to judicial employees does not touch upon the judicial decision-making process or any related activities at the core of federal judicial power.  Indeed, even judges themselves are not exempt from generally applicable laws that directly affect their compensation.  See United States v. Hatter, 532 U.S. 557, 571 (2001) (judges subject to income taxes); O'Malley v. Woodrough, 307 U.S. 277, 282 (1939) (same).

### F.     OPM Also Cannot Be Bound By The EDR Order Because It Was Not A Party To The EDR Proceedings.

It is a well-established "'principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'"  Martin v. Wilks, 490 U.S. 755, 761 (1989) (quoting Hansberry v. Lee, 311 U.S. 32, 40 (1940)).  Here, plaintiff brought her administrative complaint against the AOUSC, an office within the Judicial Branch.  OPM, by contrast, was not a party to that proceeding.  For that reason alone, OPM cannot be bound by the EDR Order.

In her preliminary injunction reply brief, plaintiff argued that the EDR Order is *res judicata* as to OPM despite OPM not having been a party to her proceeding against the AOUSC.  Pl. Mem. 2-3.  But plaintiff has identified no precedent for such an assertion of administrative authority.  As a threshold matter, even if OPM had properly been a party to the EDR proceeding, the EDR Order could not be *res judicata* because it was not the result of the kind of "actual litigation" that could lead to claim or issue preclusion, especially since this intra-judicial proceeding could not bind the Executive Branch.

Moreover, while Chief Judge Kozinski, in his administrative capacity, invited OPM to appeal his ruling, it was under no obligation to appeal an order by which it is not bound and from a proceeding to which it was not a party.  Moreover, the EDR Plan by its own terms applies within the Judiciary, not to Executive agencies.  See EDR Plan at 1.  In any event, notice and an invitation to participate are not enough to bind a party to a federal court judgment, let alone a

non-judicial, administrative order.  "Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree."  Martin, 490 U.S. at 765.

Nor is it the case, as Chief Judge Kozinski stated and plaintiff alleges, that the EDR Orders are "final and preclusive" as to OPM because it "could have, but did not appeal" those administrative orders.  In re Golinski, No. 09-80173 (9th Cir. EDR Panel December 22, 2009), cited in Pl. Mem. 9.  Chief Judge Kozinski cited Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398-402 & n.4 (1981), and Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195 (2009) (upon which plaintiff also relies, see Pl. Mem. at 9), but those cases are inapposite.  As the Supreme Court held in Federated Dep't Stores, "[a] final judgment on the merits of an action precludes *the parties or their privies* from relitigating issues that were or could have been raised in that action."  452 U.S. at 398 (emphasis added).  As noted above, OPM was not a party to the EDR proceeding between Ms. Golinski and the AOUSC, nor can it be said to be in privity with those parties.[12]  Similarly, Travelers Indem. Co. v. Bailey relied on the unexceptional, general

---

[12]   "'Privity' . . . is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.'"  Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1052-53 (9th Cir. 2005) ((citation omitted)).  "[P]arallel legal interests alone, identical or otherwise, are not sufficient to establish privity." Id. at 1054.  It is axiomatic that "no court can make a decree which will bind any one but a party; a court of equity is as much so limited as a court of law; it cannot lawfully enjoin the world at large, no matter how broadly it words its decree."  Alemite Mfg. Corporation v. Staff, 42 F.2d 832, 832-33 (2d Cir. 1930) (Hand, J.).  The Supreme Court has identified six exceptions to the general "rule against nonparty preclusion," none of which apply here.  See Taylor v. Sturgell, 128 S. Ct. 2161, 2172-73 (2008).  For example, there is no suggestion that OPM "assume[d] control over" AOUSC's participation in the administrative EDR process.  See Montana v. United States, 440 U.S. 147, 154 (1979).  AOUSC is an entity within the Judiciary, not the Executive, and not subject to "control" by OPM.  Nor could AOUSC have adequately represented OPM's interests in the EDR proceeding because their interests were different.  E.g., AOUSC could not represent OPM as to the questions now at issue in this litigation -- whether an EDR Panel can bind an Executive agency at all -- because AOUSC, of course unlike OPM, is subject to the supervision of the Judicial Conference.  Likewise, AOUSC does not share OPM's statutory mandate to administer the FEHBP across all federal agencies, or OPM's related interest that such administration be consistent.  Compare Taylor, 128 S.Ct. at 2172-73 (relationships that give rise to adequate representation of a non-party include "properly conducted class actions and suits brought by trustees, guardians, and other fiduciaries" (internal citations omitted)); id. at

---

1  proposition that "[e]ven subject-matter jurisdiction . . . may not be attacked collaterally." 129 S.

2  Ct at 2205 (quoting <u>Kontrick v. Ryan</u>, 540 U.S. 443, 455 n.9 (2004)).  But this general principle

3  applies only to the parties to the original proceeding "or those in privity with them."  <u>Id.</u>  And,

4  critically, it is beside the point here:  the Supreme Court recognized in <u>Travelers</u> that "a collateral

5  attack on subject-matter jurisdiction is permissible 'where the issue is the waiver of [sovereign]

6  immunity.'"  <u>Id.</u> n.6 (in a parenthetical, citation omitted).[13]

7  **II.    Mandamus Is Unavailable Because Any Duty By OPM To Comply With An
       Administrative, Intra-Judicial EDR Order Is, At A Minimum, Not Free From**

8  **Doubt.**

9       Mandamus is "an extraordinary remedy" available only where "the official's duty is

10 nondiscretionary" and "ministerial," <u>Kildare v. Saenz</u>, 325 F.3d 1078, 1085 (9th Cir. 2003)

11 (citation omitted), and "so plainly prescribed as to be free from doubt and equivalent to a positive

12 command."  <u>Emergency Disaster Loan Ass'n v. Block</u>, 653 F.2d 1267, 1271 (9th Cir. 1981).

13 Where "the duty is not thus plainly prescribed but depends upon a statute or statutes the

14 construction or application of which is not free from doubt, it is regarded as involving the

15 character of judgment or discretion which cannot be controlled by mandamus."  <u>Id.</u>

16      As the foregoing demonstrates, a judgment that an administrative EDR hearing officer

17 within the Judiciary is empowered to bind the Executive without regard to sovereign immunity,

18 and in a proceeding to which the Executive was not a party, is, at a minimum, "not free from

19

20 2176 ("A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a
   minimum: (1) the interests of the nonparty and her representative are aligned; and (2) either the

21 party understood herself to be acting in a representative capacity or the original court took care to
   protect the interests of the nonparty." (internal citations omitted)); <u>Riley v. Giguiere</u>, 631 F.

22 Supp. 2d 1295, 1307 (E.D. Cal. 2009) (same, following <u>Taylor</u>).

23 [13]      Moreover, the preclusion of a "collateral" attack on jurisdiction presupposes that the
   original order in question was not "'plainly beyond'" the original tribunal's authority.  <u>Travelers</u>,

24 129 S. Ct. at 2205 n.6 (quoting RESTATEMENT (2D) OF JUDGMENTS § 12, p. 115 (1980)).  <u>Cf. id.</u>

25 ("This is not a situation, for example, in which a bankruptcy court decided to conduct a criminal
   trial, or to resolve a custody dispute, matters 'so plainly beyond the court's jurisdiction' that a

26 different result might be called for.").  For this reason alone, plaintiff's reliance on the doctrine of

27 *res judicata* is misplaced.  Without a waiver of sovereign immunity, as defendants have
   demonstrated, the decision reached could not bind an Executive branch agency, and thus could

28 not possibly provide a preclusive *res judicata* effect.

1   doubt." See id.  For that reason, even if this Court were to conclude that plaintiff's legal position

2   is on balance correct, mandamus is not an available or appropriate remedy.

3   **III.   Mandamus Is Inappropriate Because Plaintiff Has Adequate, Alternative Remedies
        At Law.**

4

5       Mandamus is appropriate only where "no other adequate remedy is available."' Pit River

6   Home and Agr. Co-op. Ass'n, 30 F.3d at 1097.  Because other "review could correct the

7   individual errors alleged" by Ms. Golinski, "there is an adequate alternative remedy" and

8   mandamus jurisdiction is precluded.  Kildare, 325 F.3d at 1085.

9       First, plaintiff has the right to seek judicial review of OPM's actions under the APA, 5

10  U.S.C. § 701 et seq., and Congress has expressly provided for federal court jurisdiction over such

11  a claim concerning the FEHBP.  5 U.S.C. § 8912.  OPM's regulations also entitled plaintiff to

12  seek reconsideration of AOUSC's initial denial of her spouse's enrollment.  5 C.F.R. § 890.104;

13  see also id. § 890.103(b) (employing agency's final decision is subject to OPM's corrective

14  authority).  These administrative remedies apply to judicial employees no less than other federal

15  employees.  See generally 5 C.F.R. Part 890.[14]

16      Thus, plaintiff's remedies under the APA and FEHBA provide an adequate and

17  appropriate avenue for resolving plaintiff's complaints.  Contrary to plaintiff's assertion in

18  support of her motion for preliminary injunction that "no other remedy is available" to her, Pl.

19  Mem. 8, it is the APA and the FEHBA process, not the EDR process, that affords remedies for

20  complaints concerning FEHBP.  This is true for judicial employees no less than other federal

21  employees.  As noted above, the EDR process is intra-judiciary, and EDR panels are not

22  authorized to bind Executive agencies.  The Ninth Circuit EDR Plan itself implicitly recognizes

23  this: the plan lists "remedies available to successful complainants," and those remedies are all

24  _____

25  [14]     OPM does not concede, of course, that such a suit would have merit or that it would be
    properly brought at this time.  Even if plaintiff's relief under the APA and the FEHBA scheme is
26  foreclosed, however, it is nonetheless an "adequate" remedy that forecloses mandamus
    jurisdiction.  See Heckler v. Ringer, 466 U.S. 602, 620 (1984) (denying mandamus relief where
27  claimant could take an administrative appeal even though success on that appeal was foreclosed
    by Secretary's formal ruling on the issue); Sable Comm. of Cal. v. FCC, 827 F.2d 640, 642 (9th
28  Cir. 1987).

1    actions such as reinstatement, promotion, and modification of the judiciary's records on the

2    employee, that may be taken solely by and within the Judicial Branch.  See Ninth Circuit EDR

3    Plan at 9-10.  Conversely, the FEHBA and OPM's implementing regulations provide for

4    administrative and judicial review of claims by federal employees concerning FEHBP enrollment

5    and benefits.  See 5 U.S.C. § 8912; 5 C.F.R. §§ 890.101 et seq.  In her preliminary injunction

6    reply, plaintiff remains fixated on the *prohibited personnel practice provisions* of the CSRA,

7    highlighting that she is accorded no review for such claims in the MSPB and claiming she

8    therefore cannot bring a FEHBA action under the APA.  This emphasis simply misses the point

9    by ignoring the *FEHBA provisions* of the CSRA.

10           Plaintiff apparently also has available, and is pursuing, an adequate remedy before the

11   EDR panel.  The EDR Plan provides for relief under the Back Pay Act, 5 U.S.C. § 5596. Ninth

12   Circuit EDR Plan at 9-10.  In fact, plaintiff was awarded back pay to compensate her for the cost

13   of obtaining private health insurance for her spouse.  In re Golinski, Docket Entry No. 32

14   (awarding $6,272 in back pay to Ms. Golinski).  It is not clear, and plaintiff does not explain,

15   why she cannot seek relief for future costs incurred.  Whatever the appropriateness of such relief,

16   it is available and therefore precludes mandamus.[15]

17   **IV.    Even If Mandamus Were Otherwise Appropriate, The Court Should Decline To
             Mandamus OPM Under These Circumstances.**

18           Even if plaintiff satisfied all of the prerequisites to mandamus (which she does not),

19   whether to grant the petition would remain within the Court's discretion.  See Whitehouse v.

20   Illinois Cent. R. Co., 349 U.S. 366, 373 (1955) ( "mandamus is itself governed by equitable

21   considerations and is to be granted only in the exercise of sound discretion"); Johnson v. Reilly,

22

---

23   [15]      What is more, plaintiff's receipt of back pay from the AOUSC to compensate her for her
24   previous out-of-pocket expenses suggests that she lacks standing to pursue this action.  To
     possess standing to bring suit in federal court, a plaintiff must demonstrate that she has suffered
25   "concrete and particularized" injury that is: (1) actual or imminent, (2) caused by or fairly
     traceable to an act plaintiffs challenge in the instant litigation, and (3) redressable  by the court.
26   See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  At a minimum, plaintiff would
     have difficulty satisfying the redressability element of standing, as her past out-of-pocket
27   expenses have already been redressed by the AOUSC; presumably, there is no reason why she
     cannot seek the same relief for future costs incurred.
28

*Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint*
*Civ. No. 4:10-257-SBA*                                                                              23

1  349 F.3d 1149, 1154 (9th Cir. 2003).  Courts are properly "reluctant to afford discretionary relief

2  when to do so would intrude on the responsibilities including the shared responsibilities of the

3  coordinate branches."  Nat'l Wildlife Fed'n v. United States, 626 F.2d 917, 924 (D.C. Cir. 1980).

4  Cf. Nat'l Treasury Employees Union v. Nixon, 492 F.2d 587, 616 (D.C. Cir. 1974) (declining to

5  mandamus the President, but instead issuing a declaratory judgment, "in order to show the

6  utmost respect to the office of the Presidency and to avoid, if at all possible, . . . any clash

7  between the judicial and executive branches of the Government.").

8      Moreover, a drastic and extraordinary order of mandamus is also inappropriate where, as

9  here, ongoing administrative proceedings could moot plaintiff's claims.  Non-party Blue Cross

10  Association, arguing that it is not bound by orders of the EDR Panel, has appealed to the Judicial

11  Council of the Ninth Circuit Chief Judge Kozinski's EDR order that Blue Cross enroll plaintiff.

12  See In re Golinski, No. 09-80173 (9th Cir. EDR Panel) (Docket Entry No. 12).  That process

13  could, of course, render this case moot should the administrative appeal result in a ruling that

14  Chief Judge Kozinski erroneously read and applied the relevant statutes and policies, or that he

15  exceeded the EDR Panel's authority by issuing orders to non-parties outside the judiciary.  To

16  date, plaintiff has avoided any such review of the EDR Orders – on January 29, 2010, the

17  plaintiff and Blue Cross sought and, on February 1, 2010, Chief Judge Kozinski granted a stay of

18  the EDR proceedings pending the outcome of this civil action.  Id. Docket Entry No. 38.

19  Nonetheless, this Court should not invoke the discretionary and extraordinary remedy of

20  mandamus against the Executive Branch based on an administrative order when the underlying

21  administrative process has not been exhausted.

22

23

24

25

26

27

28

*Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint*
*Civ. No. 4:10-257-SBA*                                                                                                          24

1

**CONCLUSION**

2  For the foregoing reasons, the Court should dismiss plaintiff's First Amended Complaint.

3  Dated: May 10, 2010                    Respectfully Submitted,

4                                         MICHAEL F. HERTZ
                                          Deputy Assistant Attorney General
5
                                          JOSEPH P. RUSSONIELLO
6                                         United States Attorney

7                                         SUSAN K. RUDY
                                          Assistant Branch Director
8
                                           */s/ Christopher R. Hall*
9                                         CHRISTOPHER R. HALL
                                          D.C. Bar No. 468827
10                                        Trial Attorney
                                          U.S. Department of Justice
11                                        Civil Division, Federal Programs Branch
                                          P.O. Box 883
12                                        Washington, D.C. 20044

13                                        Attorneys for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28