JAMES R. McGUIRE (CA SBN 189275)
JMcGuire@mofo.com
GREGORY P. DRESSER (CA SBN 136532)
GDresser@mofo.com
RITA F. LIN (CA SBN 236220)
RLin@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

JENNIFER C. PIZER (CA SBN 152327)
JPizer@lambdalegal.org
LAMBDA LEGAL, Western Regional Office
3325 Wilshire Boulevard, Suite 1300
Los Angeles, CA 90010-1729
Telephone: 213.382.7600
Facsimile: 213.351.6050

Attorneys for Plaintiff
KAREN GOLINSKI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| KAREN GOLINSKI,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, and JOHN BERRY, Director of the United States Office of Personnel Management, in his official capacity,<br><br>　　　　　　　Defendants. | Case No.　C 10-0257 SBA<br><br>**OPPOSITION TO DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:　September 14, 2010<br>Time:　1:00 p.m.<br>Place:　Courtroom 1, 4th Floor<br>　　　　U.S. Courthouse<br>　　　　1301 Clay St.<br>　　　　Oakland, California 94612 |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 3

ARGUMENT .................................................................................................................... 6

I.    OPM'S ATTACK ON THE EDR TRIBUNAL'S JURISDICTION FAILS. ................... 6

    A.    OPM Waived Its Challenge to the EDR Tribunal's Jurisdiction. ......................... 6

    B.    Sovereign Immunity Does Not Bar Relief. ........................................................... 8

        1.    OPM Cites No Authority for the Novel Proposition that the Federal Government Is Immune from Ordering Itself to Change Its Policies. ........................................................................... 8

        2.    Ms. Golinski Seeks Only Prospective Injunctive Relief. ........................ 9

        3.    In Any Event, Any Applicable Immunity Has Been Waived. ............... 10

    C.    Even if OPM Could Collaterally Attack the EDR Tribunal's Jurisdiction, Its Attack Would Fail on the Merits. ................................................ 11

        1.    OPM's Argument Would Deny Judicial Employees Who Suffer Discrimination Any Forum Capable of Awarding Full Relief. ................................................................................................ 11

        2.    The Chief Judge Correctly Concluded that the Judiciary Has Authority to Provide Ms. Golinski a Remedy Without Interference from, or Needing the Acquiescence of, the Executive Branch. ................................................................................. 15

        3.    Nowhere Does the Chief Judge's Order Claim Plenary Authority to Review OPM's Administration of the FEHB Plan. ............................................................................................................. 19

II.   NOTHING ELSE BARS GRANT OF MANDAMUS RELIEF ................................... 20

    A.    OPM Misunderstands the Requirement that Its Duty to Comply Be "Free from Doubt." ................................................................................................ 20

    B.    The Stay of Blue Cross's EDR Appeal Is Irrelevant. .......................................... 21

    C.    OPM's Appeal to Separation of Powers Concerns Belies Its Assertion that Such Concerns Are Not Raised in This Case and, in Any Event, Is Inapposite. ................................................................................... 22

CONCLUSION ............................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Baltimore & O. C. T. R. Co. v. United States,*
   583 F.2d 678 (3d Cir. 1978) ............................................................................................. 17

*Barron v. Reich,*
   13 F.3d 1370 (9th Cir. 1994) ........................................................................................... 20

*Bayliss v. Madden,*
   204 F. Supp. 2d 1285 (D. Or. 2001) ............................................................................... 22

*Beeman v. Olson,*
   828 F.2d 620 (9th Cir. 1987) ............................................................................................. 9

*Blankenship v. McDonald,*
   176 F.3d 1192 (9th Cir. 1999) .............................................................................. 3, 11, 13

*Dotson v. Griesa,*
   398 F.3d 156 (2d Cir. 2005) ....................................................................................*passim*

*Dugan v. Rank,*
   372 U.S. 609 (1963) .......................................................................................................... 9

*Ex parte Peterson,*
   253 U.S. 300 (1920) ........................................................................................................ 17

*Exxon Shipping Co. v. U.S. Dep't of Interior,*
   34 F.3d 774 (9th Cir. 1994) ............................................................................................... 8

*Fed. Mar. Comm'n v. S.C. State Ports Auth.,*
   535 U.S. 743 (2002) .......................................................................................................... 8

*Godfrey v. DOT,*
   2010 MSPB LEXIS 991 (M.S.P.B. Feb. 19, 2010) ....................................................... 20

*Golden State Bottling Co. v. NLRB,*
   414 U.S. 168 (1973) ........................................................................................................ 15

*Hanford v. United States,*
   63 Fed. Cl. 111 (Fed. Cl. 2004) ....................................................................................... 8

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ........................................................................................................ 22

*Hilbert v. Dooling,*
   476 F.2d 355 (2d Cir. 1973) ........................................................................................... 16

*In re Certain Complaints Under Investigation by an Investigating Comm.*,
   783 F.2d 1488 (11th Cir. 1986) .................................................................................. 16

*In re Golinski*,
   587 F.3d 901 (9th Cir. 2009) ...................................................................................... 4

*In re Golinski*,
   587 F.3d 956 (9th Cir. 2009) ............................................................................*passim*

*In re Imperial "400" Nat'l, Inc.*,
   481 F.2d 41 (3d Cir. 1973) ......................................................................................... 16

*Lee v. Hughes*,
   145 F.3d 1272 (11th Cir. 1998) .................................................................................. 11

*Leedom v. Kyne*,
   358 U.S. 184 (1958) .................................................................................................... 9

*Massie v. Brown*,
   513 P.2d 1039 (Wash. Ct. App. 1973), *aff'd*, 527 P.2d 476 (Wash. 1974) ............... 15

*Miller v. Clinton County,*
   544 F.3d 542 (3d Cir. 2008) ....................................................................................... 14

*Mowrer v. Rusk*,
   618 P.2d 886 (N.M. 1980) .......................................................................................... 15

*Narenji v. Civiletti*,
   617 F.2d 745 (D.C. Cir. 1979) .................................................................................... 17

*Nat'l Treasury Employees Union v. Nixon*,
   492 F.2d 587 (D.C. Cir. 1974) .................................................................................... 22

*Nat'l Wildlife Fed'n v. United States*,
   626 F.2d 917 (D.C. Cir. 1980) .................................................................................... 22

*Nat'l Petroleum Refiners Ass'n v. FTC*,
   482 F.2d 672 (D.C. Cir. 1973) .................................................................................... 17

*Orsay v. United States DOJ*,
   289 F.3d 1125 (9th Cir. 2002) .................................................................................... 11

*Russillo v. Scarborough*,
   727 F. Supp. 1402 (D.N.M. 1989), *aff'd*, 935 F.2d 1167 (10th Cir. 1991) ............... 14

*Sultan v. Roark*,
   No. 2:09-cv-02158-GEB-EFB,
   2010 U.S. Dist. LEXIS 57750 (E.D. Cal. May 13, 2010) .......................................... 22

*Sunshine Anthracite Coal Co. v. Adkins,*
310 U.S. 381 (1940) ........................................................................................................... 7

*Swan v. Clinton,*
100 F.3d 973 (D.C. Cir. 1996) ......................................................................................... 22

*Travelers Indem. Co. v. Bailey,*
129 S. Ct. 2195 (2009) ....................................................................................................... 7

*United States v. Baker,*
641 F.2d 1311 (9th Cir. 1981) ......................................................................................... 15

*United States v. Hall,*
472 F.2d 261 (5th Cir. 1972) ........................................................................................... 15

*Veit v. Heckler,*
746 F.2d 508 (9th Cir. 1984) ........................................................................................... 11

*Wayman v. Southard,*
23 U.S. 1 (1825) ............................................................................................................... 17

*West v. Gibson,*
527 U.S. 212 (1999) ......................................................................................................... 10


STATUTES, REGULATIONS, & LEGISALTYIVE MATERIALS

2 U.S.C.
§ 1302 ............................................................................................................................... 19
§§ 1381-1385 .................................................................................................................... 19

5 U.S.C.
§ 702 ................................................................................................................................. 10
§ 1204(a)(2) ...................................................................................................................... 20
§§ 2104, 2105, 8901, 8902, 8903, and 8913 ..................................................................... 9
§§ 8901-8914 ...................................................................................................................... 5
§ 8912 ............................................................................................................................... 12

28 U.S.C.
§ 332 ........................................................................................................................... 16, 17
§ 332(d)(1) .................................................................................................................. 15, 16
§ 332(e)(2) ........................................................................................................................ 15

5 C.F.R.

§ 250.103 ........................................................................................................... 10
§ 250.301 ........................................................................................................... 10
§ 890.103(b) .................................................................................................. 10, 12
§ 890.104 ............................................................................................................ 12
§ 890.104(a) ....................................................................................................... 12
§ 890.107(a) ....................................................................................................... 10

H.R. Rep. 101-770(I) (1990), *reprinted in* 1990 U.S.C.C.A.N. 1709 ........................................... 19

**OTHER AUTHORITIES**

Bermant & Wheeler, *Federal Judges and the Judicial Branch*,
    46 Mercer L. Rev. 835 (1995) ................................................................................. 18

1

**INTRODUCTION**

2      In November 2008, the Chief Judge of the United States Court of Appeals for the Ninth

3  Circuit held that plaintiff Karen Golinski, an employee of the Ninth Circuit, was suffering from

4  unlawful discrimination in violation of the Ninth Circuit's own Employment Dispute Resolution

5  plan:  specifically, the Chief Judge held that refusing Ms. Golinski's request to enroll her same-

6  sex spouse in her family health insurance plan, which married heterosexual employees may do,

7  violates the Ninth Circuit's express prohibition of discrimination in the terms of employment

8  based on sex and sexual orientation.

9      The Chief Judge ordered enrollment of Ms. Golinski's spouse.  The United States Office

10  of Personnel Management, however, gratuitously intervened in the employment dispute and, as

11  Chief Judge Kozinski stated, "thwarted the relief [he had] ordered" by directing the insurance

12  carrier, Blue Cross and Blue Shield Association, not to process Ms. Golinski's enrollment papers.

13      Finding his exercise of the authority delegated to him by the Judicial Council of the Ninth

14  Circuit obstructed by an executive agency, the Chief Judge, on November 19, 2009, issued a

15  further Order explaining that, pursuant to such authority and the separation of powers doctrine,

16  "the Executive must henceforth respect the Judiciary's interpretation of laws applicable to judicial

17  employees."  The Chief Judge, accordingly, directed the Office of Personnel Management to

18  rescind its directive to the insurance carrier and to refrain from any further interference with

19  Ms. Golinski's enrollment of her spouse.

20      In response to the Chief Judge's detailed analysis of the issues, the Office of Personnel

21  Management opted to ignore the Chief Judge's directive.   The Office of Personnel Management

22  and its director John Berry (collectively, "OPM") declined to avail themselves of the standard

23  remedy of those aggrieved by an adverse court ruling — an appeal — though the availability that

24  remedy to OPM had been expressly underscored in the Chief Judge's Order.  Nor did OPM

25  comply.  Instead, OPM's general counsel announced at a press conference that OPM would not

26  comply with the Chief Judge's duly issued Order because, in the agency's view, the Order "is not

27  binding on OPM."

28

OPM's refusal to cease its interference with the Chief Judge's Order presents a classic case for mandamus relief. The Chief Judge's Order spells out in crisp detail OPM's obligations. Though OPM now seeks to collaterally attack the Chief Judge's jurisdiction over it, those arguments were waived when OPM declined to appeal that Order, as it had every opportunity to do. OPM argues that it was free to ignore the Chief Judge's Order because it was not in "privity" with those representing the federal government, Ms. Golinski's employer, in the proceedings regarding her employment dispute. Binding Supreme Court precedent, however, holds that U.S. government agencies are in privity with other agencies of that same government for purposes of *res judicata*. The correctness of that rule is obvious here. Otherwise, any employment dispute involving a federal employee would require joinder of myriad agencies involved in various aspects of the federal workplace in order to enable a resolution. Surely, OPM does not contend that the U.S. Marshals, for example, need to be joined in every courthouse employment dispute in order to secure their cooperation in permitting reinstated employees to return to work. That cannot be, and is not, the law.

Unable to deny legitimately its obligation to comply with a duly issued order, OPM then announces an even more far-fetched theory: that it has "sovereign immunity" from the Chief Judge's Order. OPM cites no authority for the bizarre notion that the federal government violates sovereign immunity when it orders *itself* to change an employment policy. Moreover, even if sovereign immunity could be extended to that novel context, it does not apply here because Ms. Golinski seeks only prospective injunctive relief requiring compliance with OPM's statutory and constitutional obligations.

Lastly, OPM continues to assert that Ms. Golinski is not entitled to mandamus relief because she has purportedly received "adequate" relief in the form of back pay reimbursing some of her premiums for separate, individual insurance for her spouse. That assertion ignores the Chief Judge's finding that this separate and unequal policy does not cure the discrimination (a finding that OPM did not appeal), and Ms. Golinski's Supplemental Declaration confirming the individual policy's inferior coverage and the failure of back pay to make her financially whole.

In sum, OPM cannot escape the enforcement of a valid, binding order that it declined to appeal. OPM's motion to dismiss should be denied.[1]

## BACKGROUND

Karen Golinski is a staff attorney in the Motions Unit of the Office of Staff Attorneys in the Ninth Circuit Court of Appeals, where she has been employed for eighteen years. (First Am. Compl. ("FAC") ¶ 14 .) On August 21, 2008, Ms. Golinski married Amy Cunninghis, her long-time domestic partner, pursuant to a duly issued California marriage license. (*Id.* ¶ 17.) Ms. Golinski and Ms. Cunninghis remain legally married and have a seven-year-old son. (*Id.* ¶¶ 16-17.)

On September 2, 2008, shortly after the couple's marriage, Ms. Golinski sought to enroll Ms. Cunninghis in her existing family coverage health insurance plan, Blue Cross and Blue Shield Service Benefit Plan ("Blue Cross/Blue Shield"), which she purchases through her employer, and which covers Ms. Golinski and their son. (*Id.* ¶¶ 16, 18.) The Administrative Office of the U.S. Courts ("AO") refused to process her request on the ground that she and her spouse are both women. (*Id.* ¶ 18.)

Ms. Golinski filed a complaint under the Ninth Circuit's Employment Dispute Resolution ("EDR") Plan on October 2, 2008, seeking to redress the discriminatory provision of benefits based solely on her sex and sexual orientation. (*Id.* ¶ 19.) As a federal judicial employee, Ms. Golinski is not permitted to bring suit in court to seek relief for employment discrimination. *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir. 1999); *see also Dotson v. Griesa*, 398 F.3d 156, 176 (2d Cir. 2005). Rather, her sole remedy is to file an EDR complaint. *Blankenship*, 176 F.3d at 1195; *see also Dotson*, 398 F.3d at 176.

As required under the EDR Plan, Ms. Golinski's complaint was heard by Chief Judge Kozinski. (FAC ¶ 19.) By Orders dated November 24, 2008, and January 13, 2009, Chief Judge Kozinski found that Ms. Golinski had suffered discrimination under the EDR Plan, which

---

[1] In filing its motion to dismiss, OPM ignored this Court's standing order requiring counsel to meet and confer prior to the filing of motions. To avoid unnecessary delay in resolving this case, however, Ms. Golinski does not seek to strike OPM's motion on this basis.

prohibits "[d]iscrimination against employees based on . . . sex . . . and sexual orientation." (FAC Exs. A-B.)  *See also In re Golinski*, 587 F.3d 901, 902 (9th Cir. 2009).  The Chief Judge held that, due to her sex and sexual orientation, Ms. Golinski had been denied health insurance for her spouse that similarly-situated different-sex couples routinely receive.  *Golinski*, 587 F.3d at 902.  Thus, the Chief Judge held, "The availability of health insurance for oneself and for one's family is a valuable benefit of employment, and denial of such a benefit on account of sex and sexual orientation violates the terms of the EEO plan that covers Golinski."  *Id.*  Chief Judge Kozinski then ordered the AO "to submit Karen Golinski's Health Benefits Election form 2809 . . . to the appropriate health insurance carrier.  Any future health benefit forms are also to be processed without regard to the sex of a listed spouse."  *Id.* at 904.

The AO complied with the Chief Judge's January 2009 Order.  OPM, however, sent a letter to the AO and Ms. Golinski's insurance carrier, Blue Cross/Blue Shield, instructing them not to process Ms. Golinski's request.  *In re Golinski*, 587 F.3d 956, 958 (9th Cir. 2009).

The Chief Judge held that OPM's action violated the Ninth Circuit's authority, through the Judicial Conference, to administer its EDR Plan.  *Id.* at 961.  The Chief Judge observed that the EDR tribunal is the *only* forum with the authority to grant full relief to judicial employees, including the authority to award an array of damages, and the authority to bind individuals and entities so as to effectuate those awards.  *Id.*  This is because judicial employees can initiate workplace grievances only to the EDR tribunal:  "they can't appeal to the MSPB [Merit Systems Protection Board], they have no *Bivens* action, and they are not provided remedies by the Civil Service Reform Act or state law."  *Id.*  In other words, constraining an EDR tribunal's authority would leave judicial employees without protections from unlawful workplace discrimination, despite the Ninth Circuit's duly enacted rules to the contrary.

The Chief Judge also held that OPM's action violated the separation of powers doctrine. *Id.* at 961-63.  Like Congress, which, under the Congressional Accountability Act of 1995, has the authority to manage its own personnel and to adjudicate workplace complaints without the interference of any coordinate branch of government, so too, does the Judiciary under that same Act.  *Id.* at 962-63.  (*See also* Dkt. 9 (Declaration of Karen Golinski in Support of Motion for

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. C 10-0257 SBA
sf-2880013

4

1  Preliminary Injunction), Ex. A at p. 1 (The Ninth Circuit EDR Plan was implemented "in

2  accordance with the Judiciary Model Plan adopted by the Judicial Conference of the United

3  States in order to provide rights and protections to Ninth Circuit employees comparable to those

4  provided to legislative branch employees under the Congressional Accountability Act of 1995.")

5  Chief Judge Kozinski held that OPM used the authority granted to it by Congress, which is the

6  authority to contract for health insurance for federal employees, to usurp the Judiciary's role as

7  the ultimate interpreter of federal law, *i.e.*, the definition of "family" under the Federal

8  Employees Health Benefits Act ("FEHBA"). *Golinski*, 587 F.3d at 962 & n.5; *see also* 5 U.S.C.

9  §§ 8901-8914. Permitting OPM to countermand the Chief Judge's Orders in this context, the

10  Chief Judge held, would be tantamount to permitting it to exercise "dominance over logistics to

11  destroy [the Judiciary's] autonomy" to interpret the laws governing judicial employees. *Golinski*,

12  587 F.3d at 962.

13       The Chief Judge granted Ms. Golinski two forms of relief: back pay, which is not at issue

14  here, and prospective relief. As to prospective relief, the Chief Judge considered three options

15  (1) again order enrollment of Ms. Golinski's spouse, (2) prospectively award back pay, or (3) do

16  nothing. *Id.* at 960. The Chief Judge quickly eliminated the third option as unjust. *Id.*

17       As to the second option, the Chief Judge found that the prospective award of back pay

18  would not adequately remedy the discriminatory harm Ms. Golinski would continue to suffer. *Id.*

19  "[I]t might be impossible to find an insurance plan on the private market that provides exactly the

20  same benefits as provided under the FEHBP." *Id.* Moreover, the Chief Judge underscored,

21  "[e]ven if the destination is the same," there is "inherent inequality in allowing some employees

22  to participate fully in the FEHBP, while giving others a wad of cash to go elsewhere." *Id.*

23       Finally, the Chief Judge noted that, at a practical level, awarding prospective back pay

24  would be more expensive for the government than ordering enrollment of Ms. Golinski's spouse

25  in the federal health plan. Ms. Golinski is already enrolled in a "self and family" health benefits

26  plan which currently covers herself and her son. While prospectively awarding back pay would

27  cost the government thousands of dollars so that Ms. Golinski could purchase inferior private

28

1   health care for her spouse, enrolling Ms. Golinski's spouse under the federal health plan would

2   cost neither Ms. Golinski nor the government anything.  *Id.*

3        Chief Judge Kozinski concluded by ordering, among other things, that OPM:

4   •   [R]escind its guidance or directive to the Blue Cross and Blue Shield
        Service Benefit Plan and any other plan that Ms. Golinski's wife is not

5       eligible to be enrolled as her spouse under the terms of the Federal
        Employees Health Benefits Program because of her sex or sexual

6       orientation, and that the plans would violate their contracts with OPM
        by enrolling Ms. Golinski's wife as a beneficiary.

7
8   •   [C]ease at once its interference with the jurisdiction of this tribunal.
        Specifically, OPM shall *not* advise Ms. Golinski's health plan, the

9       Blue Cross and Blue Shield Service Benefit Plan, that providing
        coverage for Ms. Golinski's wife violates DOMA or any other federal

10      law.  Nor shall OPM interfere in any way with the delivery of health
        benefits to Ms. Golinski's wife on the basis of her sex or sexual

11      orientation.

12  *Id.* at 963-64 (emphasis in original).  The Chief Judge ordered the Clerk of the Court to serve the

13  Order on OPM and invited OPM to "appeal so much of this order as concerns it using the

14  procedures outlined in the [EDR] plan."  *Id.* at 964.

15       OPM did not appeal the November 2009 Order.  (FAC ¶ 25.)  Nor did it comply with the

16  Order.  Instead, it issued a press release stating that it will not comply, and has no obligation to

17  comply, because the Order "is not binding on OPM, as it was issued in [the Chief Judge's]

18  administrative capacity, and not as a judge in a court case."  (FAC Ex. E).

19       On December 22, 2009, the Chief Judge issued his most recent Order explaining that, as

20  OPM did not appeal, the Chief Judge's prior orders were final and preclusive.  (*Id.*, Ex. D.)  In

21  that Order, the Chief Judge invited Ms. Golinski to "take what further action she deems fit"

22  against OPM.  (*Id.*)  Accordingly, in January 2010, Ms. Golinski brought an action in this Court

23  seeking a writ of mandamus to compel OPM to comply with the Chief Judge's Order, and filed a

24  motion seeking a preliminary injunction, which is pending before this Court.

25                                **ARGUMENT**

26  **I.   OPM'S ATTACK ON THE EDR TRIBUNAL'S JURISDICTION FAILS.**

27       **A.   OPM Waived Its Challenge to the EDR Tribunal's Jurisdiction.**

28       OPM devotes much of its motion to arguments that it waived when it declined to appeal

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT          6
Case No. C 10-0257 SBA
sf-2880013

1    Chief Judge Kozinski's November 2009 Order.  OPM asserts it may collaterally attack the

2    jurisdiction of the EDR tribunal because OPM was not a party to proceedings between

3    Ms. Golinski and her employing office.  (Memorandum in Support of Defendants' Motion to

4    Dismiss Plaintiffs' First Amended Complaint ("Mem.") at 19:8-21:6.)  The Supreme Court,

5    however, has held otherwise.

6         In *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381 (1940), Sunshine, a coal mining

7    company, filed suit against the National Bituminous Coal Commission, an agency under the

8    Department of the Interior.  *Id.* at 388.  Sunshine sought to avoid a tax because its coal was not

9    bituminous.  *Id.* at 390.  After the Commission determined that the coal was bituminous,

10   Sunshine sued the Collector of Internal Revenue to enjoin the collection of the tax.  *Id.* at 391.

11   The Court held that Sunshine's suit was barred by *res judicata*.  The Court found that the

12   Commission was in privity with the Collector of Internal Revenue because "*[t]here is privity*

13   *between officers of the same government* so that a judgment in a suit between a party and a

14   representative of the United States is *res judicata* in relitigation of the same issue between that

15   party and another officer of the government."  *Id.* at 402-03 (emphasis added).

16        Just as in *Sunshine*, the federal government had already participated, as Ms. Golinski's

17   employer, in the prior proceeding before the EDR tribunal.  (Mem. at 19:13-15 (describing the

18   AO as a respondent in the EDR proceedings).)  OPM is therefore bound by the tribunal's decision

19   because OPM is in privity with officers and agencies of the same United States government.  (*See*

20   *id.* at 20:9-12 (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).  The

21   Chief Judge's November Order already analyzed the very issue that OPM raises here:  whether

22   the EDR tribunal has the power to require OPM to stop interfering with EDR orders.  Having

23   declined to appeal that order, OPM waived its challenge to it.[2]

24

25
_____

26   [2] OPM argues collateral attacks are permitted on orders "plainly beyond" a tribunal's
     jurisdiction.  (Mem. at 21 n.13.)  Such attacks are permitted only in "rare," "exceptional
27   circumstances," like a bankruptcy court deciding a custody issue.  *Travelers Indem. Co. v. Bailey*,
     129 S. Ct. 2195, 2206 n.6 (2009).  OPM identifies no such circumstances here, where the EDR
28   tribunal resolved an employment claim using remedies authorized under the EDR plan.

### B.  Sovereign Immunity Does Not Bar Relief.

Although OPM concedes it is not immune from suit before this Court, OPM says sovereign immunity shields it from orders of the EDR tribunal.  (Mem. at 8:20-9:10.)  That argument fails for multiple reasons.

#### 1.  OPM Cites No Authority for the Novel Proposition that the Federal Government Is Immune from Ordering Itself to Change Its Policies.

Nowhere does OPM explain how sovereign immunity could conceivably bar the federal government from ordering its *own* agency to change an employment policy in an administrative hearing.  None of the cases on which OPM relies involved the federal government ordering *itself* to do something.  (*Id.* at 8 n.4.)  *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002), holds that *states* can assert sovereign immunity before a *federal* administrative tribunal.  And *Hanford v. United States*, 63 Fed. Cl. 111 (Fed. Cl. 2004), holds that the *federal* government can assert sovereign immunity when haled into a *state* administrative tribunal.  Neither case supports the unusual notion that the federal government has sovereign immunity against federal administrative orders issued to itself.  *Cf. Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778-79 (9th Cir. 1994) (citation omitted) ("[L]imitations on a state court's subpoena and contempt powers stem from the sovereign immunity of the United States and from the Supremacy Clause.  Such limitations do not apply when a *federal* court exercises its subpoena power against federal officials.").

Despite OPM's inability to cite a single case so demonstrating, OPM insists that it is "well-established" that the federal government is immune from administrative orders issued to itself.  (Mem. at 8 n.4.)  OPM rests its hopes on case law stating that a waiver of sovereign immunity in one forum does not effect a waiver in other forums.  (*Id.*)  That proposition, though, is irrelevant.  OPM cites no authority for the proposition that sovereign immunity applies *in the first place* when the federal government requires itself to change an employment policy in an administrative hearing.  Accordingly, the application or non-application of waiver principles is beside the point.

1

### 2.    Ms. Golinski Seeks Only Prospective Injunctive Relief.

2    Even if this Court were to take the novel step of finding the federal government immune

3    from ordering itself to change its policies, it is well-established that sovereign immunity does not

4    prevent the issuance of prospective injunctive relief against a federal official where "the official

5    has exceeded his statutory or constitutional authority." *Beeman v. Olson*, 828 F.2d 620, 621 (9th

6    Cir. 1987); *see also Leedom v. Kyne*, 358 U.S. 184, 188 (1958).[3]   Here, Ms. Golinski has sued

7    John Berry, Director of OPM, to enjoin him from interfering with the EDR tribunal's order.

8    OPM protests that the EDR tribunal's order was technically directed at OPM, not

9    Mr. Berry.  (Mem. at 9 n.5.)  That makes no sense.  Ms. Golinski seeks an order from this Court

10   enjoining Mr. Berry based on obligations imposed on *him* by the EDR tribunal's order.  To avoid

11   Ms. Golinski's claim, Mr. Berry must show either that (a) the EDR tribunal's order requires

12   nothing of him, or (b) he is immune from the obligations imposed by that order.  Mr. Berry does

13   not even attempt to argue the former.  Instead, he argues that he is immune from the EDR

14   tribunal's order because he was acting within his authority.  (*Id.*)  That is incorrect.

15   Here, Mr. Berry exceeded his constitutional authority by refusing to cease OPM's

16   interference with the EDR tribunal's orders, thus violating the separation of powers.  That refusal

17   also exceeded Mr. Berry's statutory authority.  OPM contends that Mr. Berry has broad power to

18   "administer" the federal health plan as to all employees under 5 U.S.C. §§ 2104, 2105, 8901,

19   8902, 8903, and 8913.  (Mem. at 9 n.5, 16:17-22.)  But, as OPM concedes, those statutes give

20   Mr. Berry authority only to (a) "contract" with insurers for health benefits and (b) "prescribe

21   regulations" regarding health benefits.  (*Id.* at 16:17-22.)  Mr. Berry's acts of interference here

22   fall under neither of those categories.

23   To the extent that OPM also suggests that Mr. Berry was exercising his "corrective"

24   authority, that assertion fails as well.  OPM states that, although the Ninth Circuit may make

25

26   [3] OPM suggests, without explanation, that this rule does not apply where "plaintiff seeks
     to compel the government itself to act."  (Mem. at 9 n.5.)  That is incorrect.  The sole case on

27   which OPM relies expressly holds that sovereign immunity does not apply to "action by officers
     beyond their statutory powers" or "constitutionally void" conduct.  *Dugan v. Rank*, 372 U.S. 609,
     621-22 (1963).

28

1   initial health benefits enrollment decisions, those decisions are "subject to OPM's corrective

2   authority," citing 5 C.F.R. § 890.103(b).  (*Id.* at 3:7-8.)  But that section only says that "OPM

3   may order correction of an *administrative* error."  5 C.F.R. § 890.103(b) (emphasis added).

4   Ultimate responsibility for enrollment remains with Ms. Golinski's employing office, the Ninth

5   Circuit.  "A suit to compel enrollment . . . must be brought against the employing office that made

6   the enrollment decision," not against OPM.  5 C.F.R. § 890.107(a).  Indeed, any corrective

7   authority held by OPM is strictly limited to "correcting" the actions of executive agencies only.

8   5 C.F.R. § 250.103 ("If OPM finds that an agency has taken an action contrary to a law, rule,

9   regulation, or standard that OPM administers, OPM may require the agency to take corrective

10  action."); *see also* 5 C.F.R. § 250.301 ("In this part — Agency means an executive agency").

11  OPM cites no basis for its purported authority to "correct" actions of the Judiciary's EDR

12  tribunal.

### 3.     In Any Event, Any Applicable Immunity Has Been Waived.

14          Even if sovereign immunity applied, any such immunity has been waived.  As explained

15  in Section I.C.2.a., *infra*, Congress granted the judicial council, which created the EDR tribunal,

16  broad authority to make "necessary and appropriate" orders regarding the administration of

17  justice, without limiting the binding effect of those orders.  That broad statutory authorization

18  waives any purported "immunity" against those orders.[4]

19

20

21

22

---

23          [4] In addition, as OPM does not dispute, the United States has waived immunity to
    Golinski's suit under 5 U.S.C. § 702.  Relying on *West v. Gibson*, 527 U.S. 212, 226 (1999),
24  OPM argues that such a waiver would not extend to Ms. Golinski's EDR claim.  (Mem. at 9:3-5.)
    But OPM relies on the *dissent*.  (*Id.* (quoting *West*, 527 U.S. at 226 (Kennedy, J., dissenting)).)
25  The majority held that the waiver of immunity in court *did* waive immunity before the
    administrative agency.  *West*, 527 U.S. at 222.  The majority noted, in dicta, that "ordinary
26  sovereign immunity presumptions [requiring a clear statement of waiver] may not apply" because
    "the [agency's] preliminary consideration, by lowering the costs of resolving disputes, does not
27  threaten, but helps to protect, the public fisc."  *Id.*  The same logic applies here.  The EDR
    tribunal protects the public fisc by providing faster, cheaper dispute resolution without the threat
28  of damages.

**C.     Even if OPM Could Collaterally Attack the EDR Tribunal's Jurisdiction, Its Attack Would Fail on the Merits.**

  **1.     OPM's Argument Would Deny Judicial Employees Who Suffer Discrimination Any Forum Capable of Awarding Full Relief.**

    **a.     The EDR Process Is the Sole Available Avenue of Relief for Judicial Employees Like Ms. Golinski.**

OPM repeatedly insists that Ms. Golinski has other avenues to redress the discrimination that she continues to suffer.  (Mem. at 22:3-23:16.)  That is incorrect.

Where, as here, a judicial branch employee seeks to challenge a discriminatory personnel action, the EDR process is the sole available avenue of relief.  The Civil Service Reform Act ("CSRA") lays out "comprehensive remedial provisions" for federal employees seeking to challenge employment actions. *Blankenship*, 176 F.3d at 1195.  "[T]he comprehensive nature of the procedures and remedies provided by the CSRA indicates a clear congressional intent to permit federal court review as provided in the CSRA or not at all." *Veit v. Heckler*, 746 F.2d 508, 511 (9th Cir. 1984).  For judicial employees, the CSRA bars ***all*** resort to the courts for employment actions.  Congress made a "conscious and rational choice" to "exclude judicial branch employees" from suing in court concerning employment matters. *Dotson v. Griesa*, 398 F.3d at 176.  Instead, judicial employees' sole remedy is "the judiciary's own comprehensive review procedures for adverse employment actions" — the EDR process. *Id.*  Thus, federal courts, including the Ninth Circuit, have refused to hear *all* employment actions by judicial employees. *See Blankenship*, 176 F.3d at 1195 (CSRA barred any suit by a court reporter alleging wrongful termination); *Dotson*, 398 F.3d at 163-82 (same for probation officer); *Lee v. Hughes*, 145 F.3d 1272, 1275 (11th Cir. 1998) (same).

OPM asserts that Ms. Golinski could nonetheless bring her discrimination claim under the Administrative Procedures Act ("APA") or the Federal Employee Health Benefits Act ("FEHBA").  (Mem. at 22:8-23:9.)  The Ninth Circuit has expressly rejected the proposition that federal employees may circumvent the unique review procedures applicable to their employment claims by bring discrimination lawsuits under the APA or other federal statutes. *See Veit*, 746 F.2d at 511 (dismissing federal employee's APA suit because "federal courts have no power

1    to review federal personnel decisions and procedures unless such review is expressly authorized

2    by Congress in the CSRA").  Federal employees may not "bypass the CSRA's exhaustive,

3    remedial scheme" by bringing complaints about "prohibited personnel practices" under other

4    statutes.  *Orsay v. United States DOJ*, 289 F.3d 1125, 1130 (9th Cir. 2002) (dismissing federal

5    employee's Privacy Act claim).

6         OPM suggests that Ms. Golinski could have simply avoided characterizing her claim as a

7    discrimination claim, and instead pursued her claim under "the FEHBA provisions of the CSRA,"

8    citing 5 U.S.C. § 8912.  (Mem. at 23:5-9.)  That, though, would not solve the problem.  Section

9    8912 provides: "The district courts of the United States have original jurisdiction . . . of a civil

10   action or claim against the United States *founded on this chapter* [i.e., the FEHBA]."  5 U.S.C.

11   § 8912 (emphasis added).  Ms. Golinski's claim was not "founded on" that chapter of the U.S.

12   Code.  Rather, it was founded on the Ninth Circuit's anti-discrimination policy as stated in the

13   EDR Plan, which prohibits discrimination based on sex and sexual orientation.  OPM offers no

14   explanation of how Ms. Golinski could bring a claim under the FEHBA to enforce the anti-

15   discrimination provisions of the Ninth Circuit's EDR Plan.

16        Although OPM cites two FEHBA regulations as providing for "administrative . . . review"

17   of Ms. Golinski's claim,  5 C.F.R. §§ 890.103(b) and 890.104 (Mem. at 22:9-14.), neither of

18   those provisions is applicable to Ms. Golinski's situation.  Section 103(b) provides that "OPM

19   may order correction of an administrative error upon a showing satisfactory to OPM that it would

20   be against equity and good conscience not to do so."  5 C.F.R. § 890.103(b).  OPM's interference

21   with Ms. Golinski's enrollment of her spouse in her health plan is demonstrably not an

22   "administrative error."  As OPM itself concedes, its decision to instruct her insurer not to process

23   her enrollment papers was quite deliberate.  (Mem. at 5:8-15.)  Further, Section 104 provides that

24   "an individual may request an agency or retirement system to reconsider an initial decision of its

25   employing office denying coverage."  5 C.F.R. § 890.104(a).  But here, Ms. Golinski's employing

26   office *did not* deny coverage.  Simply put, neither regulation applies.

27        Unable to show that Ms. Golinski has any other avenue to vindicate her claim, OPM

28   asserts that the EDR process that is supposedly powerless to award her the relief sought is

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT         12
Case No. C 10-0257 SBA
sf-2880013

nonetheless "adequate" because it permits the award of back pay. (Mem. at 23:10-16.) That argument ignores the Chief Judge's express finding that back pay is "inadequate" to address the discrimination faced by Ms. Golinski because:

> [1] all of the private plans identified as potentially comparable are inferior to the BC/BS plan [in which Ms. Golinski is enrolled as a federal employee];
>
> [2] back pay may have adverse tax consequences that can't be remedied;
>
> [3] it's a burdensome hassle for Ms. Golinski, one that a person without her tenacity might find stigmatizing; and
>
> [4] it relegates her to a de facto separate, and therefore inherently unequal, benefits system based on her sex and sexual orientation.

(Dkt. 40 (Request for Judicial Notice in Support of Plaintiff's Motion for Preliminary Injunction), Ex. D, at p. 3 (citation omitted).)[5] OPM did not challenge that finding, despite being invited to do so. (*Id.* at p. 1.) Nor does OPM's motion even attempt to address any of those inadequacies.

In the end, OPM cannot escape the logical consequence of its extreme litigation position: that Ms. Golinski, as an employee of the federal judiciary, is required to submit her discrimination claim to an EDR tribunal that would be, by OPM's argument, powerless to award her a remedy.[6] OPM's misguided hodge-podge of arguments gives no reason at all why settled law should be ignored in order to reach such an illogical and unjust result.

---

[5] The Supplemental Declaration of Karen Golinski further confirms the accuracy of each of these points, including that the best individual plan Ms. Golinski can obtain for her spouse still has coverage inferior to the family plan available through Ms. Golinski's employer, that the reimbursement of premiums provided by her back pay awards is lessened significantly by income taxation, that the process of pursuing nondiscriminatory employment benefits remains highly stressful for her and her family, and that the frustration and hurt of being treated as unequal in her role as a court employee causes Ms. Golinski ongoing distress. (*See* Dkt. 57, Ex. A, at ¶¶ 8-9.)

[6] That result would leave federal judicial employees without basic workplace protections. For example, if OPM had a practice of providing insurance for federal employees' spouses only if their marriages occurred in a religious ceremony, a federal judicial employee's sole recourse to remedy such discrimination would be to bring an EDR complaint. No *Bivens* action would be available under *Blankenship*, and no FEHBA action would be available, as the complaint would not be based on any provision of the FEHBA. Yet, by OPM's logic, the EDR tribunal would be powerless to order that insurance be provided to judicial employees married in non-religious ceremonies.

1

        **b.**    **To Remedy Violations Found in the EDR Process, the Judiciary Must Be Able to Demand the Executive's Cooperation and Non-Interference.**

2

3        OPM's position appears to be that the Executive is free not only to ignore the orders of the

4  EDR tribunal, but also to interfere actively (as OPM has done here) with those orders.  (Mem. at

5  11:1-12:13.)  That makes no sense.  Virtually every remedy afforded under the EDR Plan requires

6  some degree of Executive cooperation or non-interference.  To award back pay, the EDR tribunal

7  relies on the Treasury Department to issue the check.  To reinstate an employee, the tribunal

8  relies on OPM to re-enroll the employee in a health plan, on the Treasury to start paying the

9  employee again, and on the U.S. Marshals to let the employee back into the courthouse.

10        OPM's reasoning would leave the Judiciary unable to order even the most basic remedies

11  for unlawful personnel actions without Executive approval and voluntary cooperation.  OPM

12  insists that such a result would not undermine the separation of powers because there would be no

13  interference with the "core *judicial* function of judging cases or controversies."  (*Id.* at 18:24-19:7

14  (emphasis in original).)  That argument draws a false distinction between the judicial function and

15  the people carrying out those functions.  As the Chief Judge observed, "No less than the other

16  branches of government, the Judiciary is dependent on people to carry out its mission."  *Golinski*,

17  587 F.3d at 961.  "While it may be convenient to have the personnel system of [the Judiciary]

18  covered by the personnel management network of the executive branch, it is contrary to the

19  doctrine of separation of powers."  *Id.* (quoting H.R. Rep. 101-770(I), at 6 (1990), *reprinted in*

20  1990 U.S.C.C.A.N. 1709, 1710.).

21        Case law has repeatedly recognized that the Judiciary's power to oversee and manage

22  court personnel is crucial to judicial independence.  "The authority to supervise and to discharge

23  court appointed employees is . . . essential to the maintenance of an independent judiciary."

24  *Miller v. Clinton County,* 544 F.3d 542, 553 n.9 (3d Cir. 2008) (holding that collective bargaining

25  agreement could not require "just cause" to discharge court employees, because such a provision

26  would infringe on the courts' power to oversee judicial personnel); *see also Russillo v.*

27  *Scarborough*, 727 F. Supp. 1402, 1408 (D.N.M. 1989) (citation omitted) ("The regulation of

28  court employees' conduct is essential for the judiciary to carry out its constitutional

mandate . . . ."), *aff'd*, 935 F.2d 1167 (10th Cir. 1991).  "The power to control the personnel and functions of the court . . . is the power to coerce the judiciary into compliance with the wishes and whims of the executive."  *Mowrer v. Rusk*, 618 P.2d 886, 893 (N.M. 1980) (employment terms of state court employees could not be determined by city's employee merit system); *see also Massie v. Brown*, 513 P.2d 1039 (Wash. Ct. App. 1973) (allowing city commission to discipline and fire state court employees would be a violation of judicial independence and the separation of powers), *aff'd*, 527 P.2d 476 (Wash. 1974).

OPM then protests that the Judiciary cannot require the Executive's non-interference because the Executive is not a "party" to EDR proceedings.  (Mem. at 19:8-21:6.)  As explained above, Ms. Golinski's employer, the federal government, *was* a party, and OPM, as part of that same federal government, is bound by the result.  (*See* Section I.A, *supra*.)  Moreover, it is well-established that those who interfere with enforcement of an administrative order may be enjoined, even if such persons were not "parties" to the proceeding in which the order issued.  *See Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 180 (1973) (court may enforce NLRB order by enjoining non-parties to the NLRB proceedings); *United States v. Baker*, 641 F.2d 1311, 1314 (9th Cir. 1981); *United States v. Hall*, 472 F.2d 261, 265 (5th Cir. 1972).  Without the basic ability to require non-interference with their orders, EDR tribunals would be robbed of their "ability to design appropriate remedies and make their remedial orders effective."  *Hall*, 472 F.2d at 266.  The Judiciary would be powerless to order relief unless the Executive concurred.   OPM's creative arguments notwithstanding, such is not our system.

> **2.   The Chief Judge Correctly Concluded that the Judiciary Has Authority to Provide Ms. Golinski a Remedy Without Interference from, or Needing the Acquiescence of, the Executive Branch.**

It would make no sense for judicial employees' sole recourse to be a procedure that, according to OPM, would be powerless to grant full relief.  Fortunately, that is not the law.

> **a.   The EDR Tribunal Has Broad Statutory Authority to Enter Orders "Necessary and Appropriate" for the Administration of Justice.**

OPM insists that the EDR tribunal lacks any statutory authority to enter orders that bind entities outside the Judiciary.  (Mem. at 12:1-2.)  In fact, Congress had granted broad statutory

1   authority to the judicial councils that created the EDR tribunals, without limiting that authority in

2   any way to orders issued to judicial employees. "Each judicial council shall make all necessary

3   and appropriate orders for the effective and expeditious administration of justice within its

4   circuit." 28 U.S.C. § 332(d)(1). This delegation specifically includes "[a]dministering the

5   personnel system of the court of appeals of the circuit," a duty which may be "delegated to the

6   circuit executive." 28 U.S.C. § 332(e)(2). Nothing in that broad delegation states that the orders

7   of the judicial council may not bind those outside the Judiciary.

8          OPM suggests that this broad delegation is limited to issuing orders to judicial employees

9   because the statute refers to the "administration of justice *within its circuit*." (Mem. at 12 n.6.)

10  That indicates only that the Ninth Circuit Judicial Council cannot make orders regarding the

11  administration of justice in other circuits. "Within its circuit" modifies the phrase "administration

12  of justice," not "orders." *See In re Imperial "400" Nat'l, Inc.*, 481 F.2d 41, 51-53 (3d Cir. 1973)

13  (section 332 avoids "centraliz[ing]" power by creating judicial councils in each circuit).[7]

14         Case law has repeatedly confirmed that section 332(d) permits the judicial council to

15  make orders that bind persons not part of the Judiciary. For example, *Hilbert v. Dooling*,

16  476 F.2d 355 (2d Cir. 1973), held that section 332(d) authorized the judicial council to create

17  court rules requiring federal prosecutors to be ready for trial within a certain time and permitting

18  dismissal if they were not. *Id.* at 360. In finding that the judicial council could so bind the

19  executive branch, the court noted that the delegation in section 332 was "as broad as it could

20  possibly be." *Id.* Similarly, in *In re Certain Complaints Under Investigation by an Investigating

21  Committee*, 783 F.2d 1488 (11th Cir. 1986), the court held that the judicial council's subpoena

22  powers, which are part of the council's authority conferred under section 332(d)(1), extended to

23  former employees who no longer worked for the Judiciary. *Id.* at 1491, 1499.

24

25  _____

26  [7] Section 332(d)(2) provides that "[a]ll judicial officers and employees of the circuit shall promptly carry into effect all orders of the judicial council." 28 U.S.C. § 332(d)(2). But it is no surprise that Congress granted the judicial council additional powers over those within the Judiciary — the most frequent targets of judicial council orders. Nothing in that section, however, removes the council's broad powers to make binding orders on other persons.

27

28

1    In the face of this broad statutory grant, OPM is left to argue that a broad authorization is

2    somehow less adequate than a narrow one.  OPM contends that Congress had to issue a further,

3    narrower grant of authority allowing the EDR tribunals to order those outside the Judiciary to

4    cease interference with court personnel decisions.  (Mem. at 11:19-28.)  That is flatly wrong.

5    Courts have repeatedly held that, where Congress delegates broad authority to an entity, there is

6    no need to identify a more specific delegation of power for acts already encompassed within that

7    broad authorization.  *See Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C. Cir. 1979) (In light of "the

8    broad authority conferred upon the Attorney General by the Immigration and Nationality Act,"

9    "[t]he statute need not specifically authorize each and every action taken by the Attorney General,

10   so long as his action is reasonably related to the duties imposed upon him."); *Baltimore & O. C.*

11   *T. R. Co. v. United States*, 583 F.2d 678, 683 (3d Cir. 1978) ("While the language of [the statute]

12   does not specifically authorize remittance to car owners, it is equally clear that the statute does

13   not prohibit such an arrangement.  [The contrary reading proposed by plaintiffs would] tend to

14   restrict what appears to be the rather broad authorization granted to the ICC.").  Nothing in

15   *National Petroleum Refiners Ass'n v. FTC*, 482 F.2d 672 (D.C. Cir. 1973), on which OPM relies,

16   undercuts that basic precept.  That case simply holds that, in evaluating the scope of an entity's

17   administrative authority, courts look to the "words of the statute" — that is, the "specific"

18   language of the authorization.  *Id.* at 674.  Here, the language of the statute, 28 U.S.C. § 332,

19   specifically authorizes the judicial council, on whose behalf the EDR tribunal acts, to issue orders

20   to administer the courts' personnel system.  OPM points to no statutory language limiting the

21   effect of those orders.

22          **b.      The Judiciary Also Has Inherent Power to Govern Its Affairs
                       Without Interference from Other Branches.**

23

24          "Every Court has, like every other public political body, the power necessary and proper

25   to provide for the orderly conduct of its business."  *Wayman v. Southard*, 23 U.S. 1 (1825).  That

26   includes the inherent power to manage the Judiciary's personnel free from Executive interference.

27   "Courts have . . . inherent power to provide themselves with appropriate instruments required for

28   the performance of their duties."  *Ex parte Peterson*, 253 U.S. 300, 312 (1920) (citation omitted).

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT          17
Case No. C 10-0257 SBA
sf-2880013

1   The Judiciary's management of its internal operations is a "necessary" component of judicial

2   independence.  As the Judicial Conference observed in its report to Congress, "From the

3   beginning of the federal court system, the hallmarks of judicial branch governance have been

4   local court management and individual judge autonomy."  *Dotson*, 398 F.3d at 175 (quoting Jud.

5   Conf., Study of Judicial Branch Coverage Pursuant to the CAA, at 4 (Dec. 1996)).  For this

6   reason, the "judiciary's internal governance system is a *necessary corollary* to judicial

7   independence."  *Id.* (emphasis added).

8       OPM makes much of the "long history" of Executive administrative support for the

9   courts.  (Mem. at 12:1-13.)  But the courts have an even longer history of autonomy over

10  personnel issues.  In 1789, Congress gave courts the authority to appoint their own clerks,

11  recognizing the Judiciary's need to control matters affecting its employees to perform the core

12  judicial function of judging cases or controversies.  Bermant & Wheeler, *Federal Judges and the*

13  *Judicial Branch*, 46 Mercer L. Rev. 835, 853 & n.88 (1995) (citing Act of Sept. 24, 1789, ch. 20,

14  §§ 2, 4, 1 Stat. 73, 76).  That the Judiciary has enlisted the Executive's help in carrying out some

15  of the logistics of employment does not undermine the Judiciary's ultimate authority over such

16  matters.

17              **c.      Congress Has Repeatedly Acknowledged the Judiciary's**
                          **Inherent and Statutory Power in This Regard.**
18

19      OPM's suggestion that Congress needed to make a more specific delegation of authority

20  to the judicial councils is particularly puzzling in light of Congress's repeated recognition that the

21  Judiciary *already* had the power to remedy unlawful personnel actions without interference from

22  other branches.

23      For example, the Administrative Office of the United States Courts Personnel Act of 1990

24  ("AOUSC Act"), Pub. L. 101-474, 104 Stat. 1097, sought to "bring AOUSC employees in line

25  with the remainder of judicial branch personnel" by subjecting AOUSC employees to the same

26  workplace complaint procedures as judicial branch personnel.  *Dotson*, 398 F.3d at 171.  In

27  enacting the AOUSC Act, Congress acknowledged that the Judiciary *already* had power to

28  address personnel actions concerning its employees without interference from the Executive:

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT          18
Case No. C 10-0257 SBA
sf-2880013

1

> The Administrative Office is, to a large extent, currently subject to the control of the executive branch in personnel matters. ***The United States courts, which it serves, however, are mostly free of such Executive Branch supervision.*** The purpose of [this Act] is to authorize the establishment of an independent, self-contained personnel management system within the Administrative Office which is free from executive branch controls and more similar to that of the rest of the judicial branch.

H.R. Rep. 101-770(I), at 6 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1709, 1710 (emphasis added).

Even more tellingly, Congress provided that the AOUSC would be able to exercise all powers granted to OPM and other executive agencies in remedying discrimination claims by AOUSC employees. The House Report explains:

> [The AOUSC Act] forbids discrimination in employment at the Administrative Office. Additionally, the legislation ensures that any authority granted under such law to the Equal Employment Opportunity Commission (EEOC), the Office of Personnel Management (OPM), the Merit Systems Protection Board (MSPB), or any other agency in the executive branch shall be exercised by the Administrative Office.

*Id.*, 1990 U.S.C.C.A.N. at 1712. Such authority, apparently, was necessary to give the AOUSC the same powers ***already*** exercised by the rest of the Judiciary.

Similarly, in enacting the Congressional Accountability Act of 1995 ("CAA"), 2 U.S.C. § 1302, Congress acknowledged the judicial branch's existing power over workplace claims. The CAA created an independent legislative office to review legislative employees' claims free from Executive interference. 2 U.S.C. §§ 1381-1385. "Congress initially considered extending the statute's coverage to employees of the judicial branch but, *mindful of the importance of judicial autonomy*, ultimately decided against such action." *Dotson*, 398 F.3d at 173 (emphasis added).

OPM spends significant portions of its motion to dismiss arguing that the AOUSC Act and CAA did not confer any powers upon the EDR tribunal. (Mem. at 14:11-16:6.) But that is precisely the point. Congress recognized that the Judiciary already had power to remedy unlawful personnel actions on its own.

### 3. Nowhere Does the Chief Judge's Order Claim Plenary Authority to Review OPM's Administration of the FEHB Plan.

OPM suggests the EDR tribunal overstepped its authority by "reviewing" OPM's

1  administration of the FEHB Plan.  (Mem. at 16:7-17:15.)  OPM further notes that the Merit

2  Systems Protection Board ("MSPB"), on which the EDR tribunal is modeled, "lacks jurisdiction

3  to review" challenges to OPM's administration of health benefits.  (Mem. at 13:1-14:10.)

4      Nowhere does the Chief Judge find the EDR tribunal has plenary authority to "review"

5  OPM's administration of the FEHB Plan.  Rather, where an EDR tribunal grants a remedy to a

6  judicial employee, the Executive may not interfere with that remedy, even if it disagrees with it.

7  *Golinski*, 587 F.3d at 963.  That is the same authority possessed by MSPB.  MSPB does not have

8  plenary power to review OPM's administration of health benefits, such as its approval of a health

9  plan. (Mem. at 13:10-21.)  However, MSPB does have jurisdiction to order that an employee

10 subject to a prohibited personnel practice be reinstated and provided with health benefits.  *See,*

11 *e.g.*, *Godfrey v. DOT*, 2010 MSPB LEXIS 991, at *5 (M.S.P.B. Feb. 19, 2010) (adjudicating

12 claim that government "unjustly cancelled [employee's] federal health insurance and sought the

13 premiums owed" in discriminating against her); 5 U.S.C. § 1204(a)(2) ("The [MSPB] shall . . .

14 order any Federal agency . . . to comply with any order . . . and enforce compliance with any such

15 order.").[8]

16 **II.    NOTHING ELSE BARS GRANT OF MANDAMUS RELIEF.**

17      **A.    OPM Misunderstands the Requirement that Its Duty to Comply Be "Free
             from Doubt."**

18

19      OPM claims that mandamus is inappropriate because, whether an "EDR hearing

20 officer . . . is empowered to bind the Executive" is "not free from doubt."  (Mem. at 21:16-22:2.)

21 OPM misunderstands that requirement.  A court may issue a writ of mandamus when "the

22 defendant official's duty to act is ministerial, and 'so plainly prescribed as to be free from

23 doubt.'"  *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994).  The test is whether OPM's duty is

24 sufficiently plainly prescribed as to be ministerial in nature — not whether a reasonable person

25 could disagree with the Chief Judge's Order.  Here, the Chief Judge's Order is quite clear in

---

26      [8] OPM makes much of the fact that "there is no equivalent provision authorizing the
    establishment of judicial EDR processes" that can order compliance by executive agencies.
27   (Mem. at 13:22-14:10.)  But that is not surprising.  There is no need for such authorization
    because Congress recognized that the judiciary *already* had that power.  (*See supra*.)

28

1   prescribing OPM's obligations:  that is, to "rescind its guidance or directive to the Blue Cross and

2   Blue Shield Service Benefit Plan" and to "cease at once its interference with the jurisdiction of

3   [the EDR] tribunal."  *Golinski*, 587 F.3d at 963.  OPM points to no ambiguity or room for

4   discretion in the prescription enumerated in the Chief Judge's Order.

5           **B.      The Stay of Blue Cross's EDR Appeal Is Irrelevant.**

6           In an odd twist, OPM urges the Court to exercise its discretion to decline mandamus relief

7   in order to defer to the very EDR proceedings that OPM claims are illegitimate and otherwise

8   refused to participate in.  According to OPM, mandamus is inappropriate due to a pending appeal

9   from the EDR Orders filed by the Blue Cross and Blue Shield Association ("BCBSA").  (Mem. at

10  24:8-21.)  OPM complains that Ms. Golinski has "avoided . . . review of the EDR Orders" by

11  stipulating with BCBSA to stay that appeal.  (*Id.* at 24:15-17.)  As such, OPM concludes, this

12  Court should deny plaintiff relief until *she* exhausts administrative remedies.  OPM is wrong.

13          First, Ms. Golinski has exhausted her administrative remedies as to OPM.  Indeed, it is

14  OPM's refusal to recognize or participate in those proceedings that has forced this litigation.

15  Questions related to OPM's duties, having been waived, are not at issue in the BCBSA appeal.

16  But even if they were, OPM's position is disingenuous.  OPM has made it clear that it will simply

17  disobey any *adverse* order coming out of the EDR proceeding.  It nonetheless asks this Court to

18  permit it to wait and see if a ruling favorable to its position issues so it can take advantage of it.

19  OPM should not be permitted to play "heads I win, tails you lose" with those proceedings.

20          Second, OPM misrepresents the rationale for the stay.  The BCBSA appeal argues, in part,

21  that "BCBSA is contractually obligated to abide by OPM's directives on enrollment."  (Dkt. 40

22  (Request for Judicial Notice in Support of Plaintiff's Motion for Preliminary Injunction), Ex. A,

23  at p. 6.)  BCBSA asserts that OPM's refusal to obey the Chief Judge's orders places BCBSA

24  between a rock and a hard place — OPM is telling it to do one thing, while the EDR orders

25  demand another.  The stay was granted to allow this Court to resolve whether OPM must obey the

26  EDR order to stop interfering with the remedy for the discrimination suffered by Ms. Golinski.

27          Finally, the Judicial Council of the Ninth Circuit has agreed — by way of an order

28  granting the parties' request — that this case should proceed first.  (*Id.*, Ex. C.)  The Court should

1   decline OPM's request to issue a contrary Order.

2       **C.      OPM's Appeal to Separation of Powers Concerns Belies Its Assertion that
            Such Concerns Are Not Raised in This Case and, in Any Event, Is Inapposite.**

3

4           OPM concludes its brief by asserting that this Court should refuse to enforce the Chief

5   Judge's order via mandamus because of the need to respect the separation of powers.  (Mem. at

6   24:1-7.)  That argument belies OPM's repeated and vehement insistence that this case does not

7   raise separation of powers concerns.  (Mem. at 17:16-19:7.)

8           In any event, the cases on which OPM relies counsel against issuing a writ of mandamus

9   against the *President* himself.  (*See* Mem. at 24:1-7 (relying on *Nat'l Wildlife Fed'n v. United*

10  *States*, 626 F.2d 917, 928 (D.C. Cir. 1980) (seeking writ of mandamus concerning President's

11  disclosures regarding budget), and *Nat'l Treasury Employees Union v. Nixon*, 492 F.2d 587, 616

12  (D.C. Cir. 1974) (seeking writ of mandamus against President directly)).)  Those same concerns

13  do not apply where, as here, mandamus is sought to compel a subordinate executive officer or

14  agency to comply with the law.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 811 n.17 (1982) ("Suits

15  against other officials — including Presidential aides — generally do not invoke separation-of-

16  powers considerations to the same extent as suits against the President himself."); *Swan v.*

17  *Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996) ("In most cases, any conflict between the desire to

18  avoid confronting the elected head of a coequal branch of government and to ensure the rule of

19  law can be successfully bypassed, because the injury at issue can be rectified by injunctive relief

20  against subordinate officials.").  Courts routinely issue writs of mandamus compelling agencies to

21  comply with the law without implicating separation of powers concerns.  *See, e.g.*, *Sultan v.*

22  *Roark*, No. 2:09-cv-02158-GEB-EFB, 2010 U.S. Dist. LEXIS 57750 (E.D. Cal. May 13, 2010)

23  (claim for mandamus relief was properly stated against United States Citizenship and

24  Immigration Services); *Bayliss v. Madden*, 204 F. Supp. 2d 1285, 1289 (D. Or. 2001) (claim for

25  mandamus relief was properly stated against administrative law judge in the Social Security

26  Administration).  OPM offers no explanation why this case should be any different.

27

28

1

**CONCLUSION**

2

For the foregoing reasons, OPM's motion to dismiss should be denied.

3

Dated:   August 24, 2010

MORRISON & FOERSTER LLP
LAMBDA LEGAL

4

5

6

By:    /s/ Rita F. Lin
Rita F. Lin

7

8

Attorneys for Plaintiff
KAREN GOLINSKI

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28