1   MICHAEL F. HERTZ
    Acting Assistant Attorney General
2   JOSEPH P. RUSSONIELLO
    United States Attorney
3   SUSAN K. RUDY
    Assistant Branch Director
4   CHRISTOPHER R. HALL
    Trial Attorney
5   United States Department of Justice
    Civil Division, Federal Programs Branch
6
    P.O. Box 883
7   Washington, D.C.  20044
    Telephone:  (202) 514-4778
8   Facsimile:  (202) 616-8470
    Email: Christopher.Hall@usdoj.gov
9
    Attorneys for Defendant
10  the U.S. Office of Personnel Management

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14  KAREN GOLINSKI                    )
                                      )   No. C 4:10-00257-JSW
15            Plaintiff,              )
                                      )
16    v.                              )   **DEFENDANTS' SUPPLEMENTAL**
                                      )   **BRIEF IN RESPONSE TO COURT'S**
17  THE UNITED STATES OFFICE OF       )   **ORDER OF OCTOBER 15, 2010**
    PERSONNEL MANAGEMENT and          )
18  JOHN BERRY,                       )   Date:   December 17, 2010
                                      )   Time:   9:30 a.m.
19            Defendants.             )   Place:  Courtroom 11, 19th Floor
                                      )           U.S. Courthouse
20                                    )           450 Golden Gate Ave.
                                      )           San Francisco, CA 94102
21                                    )
    _____
22

23

24

25

26

27

28  *Defendants' Supplemental Brief in Response to Court's Order of October 15, 2010*
    *4:10cv257-JSW*

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Question 1:  Does Plaintiff contend that the conduct of John Berry,
      although ostensibly within his statutory powers, was beyond constitutional
      limits because enforcement of the Defense of Marriage Act ("DOMA") in this
      context is an unconstitutional act?  If so, are Defendants not immune from
      enforcement of Judge Kozinski's order?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Question 2:  Judge Kozinski did not address the constitutionality of DOMA
      in his decisions.  To determine whether the OPM must follow Judge Kozinski's
      orders and cease interference with Plaintiff's acquisition of health benefits for her
      wife, may the Court examine the constitutionality of the underlying act of enforcing
      DOMA?  In other words, can this Court enforce the orders on grounds not explicitly
      articulated by Judge Kozinski?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  Question 3:  If the Court were to address the constitutionality of Section 3
      of DOMA in this case, on what bases do the parties contend that the statute
      is or is not constitutional?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    DOMA Does Not Impinge upon A Fundamental Right or
            A Significant Liberty Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            1.    The Substantive Due Process Standard. . . . . . . . . . . . . . . . . . . . . . . . . . 5

            2.    Plaintiff Has Not Asserted A Liberty Interest Protected
                  by the Constitution.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.    DOMA Does Not Involve A "Suspect" or "Quasi-Suspect" Classification
            Under This Circuit's Binding Precedent.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      C.    DOMA Satisfies Rational Basis Review.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            1.    The Rational Basis Review Standard.. . . . . . . . . . . . . . . . . . . . . . . . . . 10

            2.    Section 3 of DOMA Satisfies Rational Basis Review.. . . . . . . . . . . . . . 11

IV.   Question 4:  Defendants contend that DOMA is "discriminatory."
      (See Opp. Br. to PI at 2:3; see also Statement from Elaine Kaplan, OPM General
      Counsel, Declaration of James R. McGuire, Ex. J at 1.)  The Court directs Defendants
      to address on what grounds they contend DOMA is discriminatory.. . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1

## SUMMARY OF ARGUMENT

2    As to the first and second questions posed by the Court's Order of October 15, 2010,

3    requiring supplemental briefing [Docket No. 76], any contention by Plaintiff that the Defense of

4    Marriage Act ("DOMA") is unconstitutional would not alter the conclusion that the Employee

5    Dispute Resolution ("EDR") Plan order at issue here is not enforceable through mandamus under

6    28 U.S.C. § 1361.  For an order to be enforced through the extraordinary remedy of mandamus, it

7    must at a minimum impose a clear duty to execute a ministerial act, one that does not involve the

8    exercise of judgment.  The order at issue here – entered by the Honorable Alex Kozinski, Chief

9    Judge for the United States Court of Appeals for the Ninth Circuit, not in his Article III capacity

10   but rather in his administrative capacity as an EDR hearing officer – did not impose a ministerial

11   obligation upon the Office of Personnel Management ("OPM") and therefore cannot be enforced

12   through mandamus on its own terms.  And if that order cannot be enforced through mandamus

13   on its own terms, it cannot be enforced on the basis of grounds it did not articulate.

14   As to the third question, DOMA is constitutionally permissible under Ninth Circuit

15   precedent because Congress could reasonably have concluded that DOMA is rationally related to

16   legitimate government interests.  DOMA was enacted in 1996, as the debate regarding same-sex

17   marriage was just beginning in the States.  Under the appropriate standard of review in the Ninth

18   Circuit – rational basis – Congress could reasonably have determined that it was appropriate in

19   1996 to adopt a wait-and-see approach toward what then appeared likely to become a national

20   debate by codifying, solely for purposes of federal law, the definition of marriage then used in all

21   fifty States.  The preservation of this status quo reasonably would have allowed Congress to let

22   the dialogue develop at the State level before revisiting the issue.

23   Finally, as to the fourth question, DOMA differentiates between opposite-sex and same-

24   sex married couples in their access to certain federal benefits.  Although the Administration does

25   not support DOMA as a matter of policy, believes it is discriminatory, and supports its repeal, the

26   fact that the statute differentiates between opposite-sex and same-sex couples does not mean that

27   it is unconstitutional under Ninth Circuit precedent.

28

*Defendants' Supplemental Brief in Response to Court's Order of October 15, 2010*
*4:10cv257-JSW*                                                                    -ii-

1

**INTRODUCTION**

2       Defendants respectfully submit the following supplement brief in response to the Court's

3  Order of October 15, 2010 [Docket No. 76] ("October 15 Order") and to Plaintiff's opening

4  supplemental brief in response to the same Order [Docket No. 81].

5

**DISCUSSION**

6  **I.   Question 1:  Does Plaintiff contend that the conduct of John Berry, although**
       **ostensibly within his statutory powers, was beyond constitutional limits because**
7      **enforcement of the Defense of Marriage Act ("DOMA") in this context is an**
       **unconstitutional act?  If so, are Defendants not immune from enforcement of Judge**
8      **Kozinski's order?**

9       This question encompasses two separate inquiries, the first of which is directed to

10 Plaintiff inasmuch as it asks her to characterize the substance of her contentions in this action.

11 Plaintiff responds that she does believe that "DOMA's enforcement in this context would be

12 unconstitutional," Pl.'s Mem. at 1, although she suggests that the Court "need not [reach the

13 issue of DOMA's constitutionality] in order to enforce Chief Judge Kozinski's orders."  Id.

14      As to the second inquiry, Judge Kozinski's administrative order cannot be enforced

15 against Defendants, irrespective of DOMA's constitutionality.  The only claim Plaintiff has

16 pleaded in her complaint is a request for mandamus under 28 U.S.C. § 1361.  Am. Compl. ¶¶ 27-

17 30.  The common law writ of mandamus, codified in 28 U.S.C. § 1361, is an extraordinary and

18 drastic remedy "intended to provide a remedy for a plaintiff only if he has exhausted all other

19 avenues of relief and only if the defendant owes him a clear nondiscretionary duty."  Heckler v.

20 Ringer, 466 U.S. 602, 616 (1984).  Thus, jurisdiction under 28 U.S.C. § 1361 only "'exists when

21 a plaintiff has a clear right to relief, a defendant has a clear duty to act and no other adequate

22 remedy is available.'"  Pit River Home & Agr. Co-op. Ass'n v. United States, 30 F.3d 1088,

23 1097 (9th Cir. 1994).  The duty alleged must be ministerial rather than discretionary.  Indeed,

24 "such a duty must be 'so plainly prescribed as to be free from doubt and equivalent to a positive

25 command. . . . [W]here the duty is not thus plainly prescribed, but depends on a statute or statutes

26 the construction or application of which is not free from doubt, it is regarded as involving the

27 character of judgment or discretion which cannot be controlled by mandamus.'"  Consol. Edison

28

Co. of New York, Inc. v. Ashcroft, 286 F.3d 600, 605 (D.C. Cir. 2002) (quoting Wilbur v. United States, 281 U.S. 206, 218-19 (1930)).

Thus, the fundamental question at issue in this case as pleaded by Plaintiff is whether Defendants owe Plaintiff a "clear and compelling" duty, one "so plainly described as to be free from doubt and equivalent to a positive command." Consol. Edison Co., 286 F.3d at 605. As explained in Defendants' response to the Court's second question, see Part II, infra, the answer to that question is "no." The order therefore cannot be enforced as to Defendants.[1]

**II.     Question 2:  Judge Kozinski did not address the constitutionality of DOMA in his decisions.  To determine whether the OPM must follow Judge Kozinski's orders and cease interference with Plaintiff's acquisition of health benefits for her wife, may the Court examine the constitutionality of the underlying act of enforcing DOMA?  In other words, can this Court enforce the orders on grounds not explicitly articulated by Judge Kozinski?**

This Court may not enforce Judge Kozinski's administrative orders "on grounds not explicitly articulated by Judge Kozinski," because doing so would contradict the inherent purpose of the Mandamus Act, 28 U.S.C. § 1361, the sole basis for Plaintiff's complaint and the only conceivable basis for subject-matter jurisdiction over her claim.  Plaintiff's Amended Complaint seeks an injunction compelling Defendants "to comply with the Chief Judge's November 19, 2009 Order," Am. Compl., Prayer for Relief ¶ (a), and asserts that "OPM's duty to comply [with such order] requires only the ministerial acts of rescinding its prior guidance and ceasing further interference.  No exercise of OPM's discretion is required." Id. ¶ 29.  An action

---

[1]  To the extent that Plaintiff may suggest that the Larson ultra vires exception to sovereign immunity might apply in this case, any such notion is inapposite.  As this Court noted in its October 15 Order, "[t]he Supreme Court has recognized two exceptions to the principle of sovereign immunity against an officer of a governmental agency in his individual capacity: (1) if the alleged conduct is not within his statutory powers or (2) if the conduct is within those powers, but the exercise of those powers, in the particular case, is constitutionally void." Oct. 15 Order at 1 (citing Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 701-02 (1949) (emphasis added)).  As Plaintiff herself pleads in her Amended Complaint, the live pleading in this matter, Director Berry is sued only in his official capacity.  Am. Compl., Caption.  Thus, this suit is not against Director Berry, but against the United States.  Veterans for Common Sense v. Peake, No. C-07-3758-SC, 2008 WL 686099, *2 (March 13, 2008) (citing Balser v. Dep't of Justice, Office of U.S. Trustee, 327 F.3d 903, 907 (9th Cir. 2003)).  For that reason, the Larson exception to sovereign immunity is not applicable here irrespective of the constitutionality of DOMA.

in mandamus only lies where there is a "clear and compelling" duty to act by a defendant, one "so plainly described as to be free from doubt and equivalent to a positive command." Consol. Edison Co., 286 F.3d at 605. Here, the performance of any alleged duty actually articulated by Judge Kozinski's administrative orders, on grounds specifically delineated by Judge Kozinski, would not be "ministerial" or involve a clear obligation to act on Defendants' part. But just as fundamentally, the performance of any such alleged duty on grounds other than those specifically articulated by Judge Kozinski would be even less ministerial in nature. To the contrary, to infer a duty of performance on unarticulated grounds would by definition require Defendants to exercise judgment, and that in and of itself defeats any suggestion of a viable claim under the Mandamus Act. That fundamental conclusion is not altered by the fact that the alternative basis now posited is a Constitutional one. "Courts should be reluctant to use § 1361 as a viable jurisdictional basis for compelling agency officials to recognize a 'clear duty' to conclude that federal statutes under which they are operating are unconstitutional." Finch v. Weinberger, 407 F. Supp. 34, 39 (N.D. Ga. 1975).

In any event, Plaintiff had the option of bringing a constitutional challenge to DOMA much as other plaintiffs have done, see, e.g., Gill v. OPM, 699 F. Supp. 2d 374, 393 (D. Mass. 2010), but instead has chosen to bring an internal administrative grievance followed by a suit under the Mandamus Act seeking to enforce her administrative determination against OPM in this Court. Accordingly, for that reason as well, analysis of Plaintiff's legal claims should be limited to the grounds that Plaintiff articulated in her complaint.[2] As explained previously, Plaintiff must establish one of two alternative propositions to even suggest the existence of any right to relief or duty to act, much less a "clear" right or a "clear" and "ministerial" duty: (1) that

---

[2]  It is axiomatic that the well-pleaded allegations of a plaintiff's complaint dictate what claims are before the Court. Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984). It is equally axiomatic that "a complaint may not be amended by the briefs in opposition to a motion to dismiss." Arbitraje Case de Cambio v. U.S. Postal Service, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (quoting Coleman v. Pension Benefit Guar. Corp., 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000)); see also Car Carriers, 745 F.2d at 1107 (same). Thus, a plaintiff may not use her briefs in an effort to "amend" or add to the claims actually asserted in her complaint. See Calvetti v. Antcliff, 346 F. Supp. 2d 92, 107 (D.D.C. 2004).

1   Judge Kozinski was acting with Article III force rather than in a purely administrative capacity

2   when he issued the Employee Dispute Resolution ("EDR") orders in question; or (2) that there is

3   a specific grant of authority to the federal courts to establish an internal administrative dispute

4   resolution process that can direct OPM's administration of the Federal Employees Health

5   Benefits Program ("FEHBP") under the Federal Employees Health Benefits Act of 1959

6   ("FEHBA").  As to the first issue, Plaintiff has failed to dispute that Judge Kozinski was acting

7   in a purely administrative capacity.  Left to rely only upon the second proposition, Plaintiff has

8   likewise failed to establish the existence of any grant of authority to the federal courts that would

9   allow an EDR panel to issue binding directives to OPM in the latter's statutorily delegated

10  administration of the FEHBP.  Conspicuously, Plaintiff has never argued that there is a specific

11  grant of such authority.  Rather, she has only contended that there is a non-specific but broad

12  grant of authority that would allow an EDR panel to bind OPM and that the issuance of such

13  directives falls within the "inherent" power of the Judiciary.  Plaintiff is wrong on both counts,

14  and her mandamus claim fails as it is pleaded.

15          Finally, before turning to Question 3, Defendants should respond to one suggestion

16  implicit in this question as it was phrased by the Court.  The Court suggests that part of its

17  determination involves "whether the OPM must . . . cease interference with Plaintiff's acquisition

18  of health benefits for her wife."  Oct. 15 Order at 2.  Defendants respectfully submit that OPM

19  has not "interfered" in Plaintiff's efforts to obtain health benefits for her wife, contrary to the

20  same suggestion made in repeated fashion by Plaintiff. [3]  As Defendants have explained

21  elsewhere, the authority to administer the FEHBP has been statutorily conferred upon OPM

22  under the FEHBA; that authority encompasses all Federal employees, including those of the

23  Judicial Branch.  See Transitional Learning Cmty. at Galveston v. OPM, 220 F.3d 427, 429 (5th

24  Cir. 2000); Kobleur v. Group Hospitalization & Med. Servs., 954 F.2d 705, 709 (11th Cir. 1992).

25

26  [3]  In similar fashion, Judge Kozinski's November 19, 2009 EDR order purported to instruct OPM
    not to "interfere" with the EDR panel's jurisdiction or with the provision of FEHBP benefits to

27  Plaintiff's wife, inter alia.  In re Golinski, 587 F.3d 956, 963-64 (9th Cir. EDR Panel 2009).
    Defendants respectfully but strongly disagree with Judge Kozinski's characterization of the

28  relationship between the EDR panel and OPM for the same reasons set forth in the text herein.

1  In particular, the FEHBA authorizes OPM to negotiate and contract with private insurance

2  carriers to offer health benefits plans to federal employees – including judicial employees – and

3  other eligible individuals, see 5 U.S.C. §§ 2104, 2105, 8901, 8902(a), 8903, and to "prescribe

4  regulations necessary to carry out" the Act, id. § 8913(a), including with respect to plan

5  enrollment, id. § 8913(b).  Thus, it is not correct to characterize OPM's conduct as "interference"

6  here.

7  **III.   Question 3:  If the Court were to address the constitutionality of Section 3 of DOMA**
   **in this case, on what bases do the parties contend that the statute is or is not**
8  **constitutional?**

9      If the Court were to address its constitutionality, Section 3 of DOMA is constitutionally

10 permissible under Ninth Circuit precedent because Congress could reasonably have concluded

11 that DOMA is rationally related to legitimate government interests.  Although Plaintiff does not

12 challenge the constitutionality of DOMA in her complaint, her opening brief submitted in

13 response to the Court's request for supplemental briefing suggests that DOMA would violate her

14 rights under the Due Process and Equal Protection clauses "[i]f [it] were to be applied to

15 eliminate [her] eligibility to add her spouse to her family coverage health insurance plan, a

16 benefit that her federal employer provides to heterosexual married employees . . . simply because

17 [her] spouse is a person of the same sex."  Pl.'s Mem. at 5.  As discussed below, that argument is

18 incorrect under existing Ninth Circuit precedent.

19 **A.   DOMA Does Not Impinge upon A Fundamental Right or A Significant**
   **Liberty Interest.**
20

21    **1.   The Substantive Due Process Standard.**

      The Due Process Clause "provides heightened protection against government interference
22
   with certain fundamental rights and liberty interests," including "the rights to marry, to have
23
   children, to direct the education and upbringing of one's children, to marital privacy, to use
24
   contraception, to bodily integrity, and to abortion."  Washington v. Glucksberg, 521 U.S. 702,
25
   720 (1997) (citations omitted).  The Supreme Court has cautioned against expanding these rights
26
   "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-
27
   ended."  Collins v. Harker Heights, 503 U.S. 115, 125 (1992).  As the Court explained:
28

> By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court.

Glucksberg, 521 U.S. at 720 (citations and internal quotation marks omitted).

Substantive due process analysis has "two primary features." Id. at 720. First, the Due Process Clause only protects "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Id. at 720-21 (quotation marks and citations omitted). Courts examine the nation's history, legal traditions, and practices, analyzing the common law, statutes, and regulations to determine whether an asserted right is such a right. See id. at 710-17; Fields v. Palmdale Sch. Dist., 427 F.3d 1197, 1204-07 (9th Cir. 2005); Mullins v. Oregon, 57 F.3d 789, 794 (9th Cir. 1995). Second, the Supreme Court has required "a careful description of the asserted fundamental liberty interest," Glucksberg, 521 U.S. at 722, or "a narrow definition of the interest at stake," Raich v. Gonzalez, 500 F.3d 850, 862-63 (9th Cir. 2007). "[T]he right must be carefully stated and narrowly identified before the ensuing analysis can proceed." Id. at 864.[4]

---

[4]  For example, in Washington v. Glucksberg, a case challenging Washington's ban on assisted suicide, the Supreme Court refused to characterize the interest at stake as the "right to die" or "the right to choose a humane, dignified death"; instead, the Court narrowly phrased the question as "whether the 'liberty' specially protected by the Due Process Clause includes a right to commit suicide which itself includes a right to assistance in doing so." 521 U.S. at 722-23. Similarly, in Reno v. Flores, a case involving juvenile aliens challenging regulations governing their detention on due process grounds, the Court rejected several asserted fundamental rights, such as the right of "freedom from physical restraint" and the "right of a child to be released from all other custody into the custody of its parents, legal guardian, or even close relatives." 507 U.S. 292, 302 (1993). Instead, the Court narrowly characterized the right as "the right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution." Id.; see also Raich, 500 F.3d at 864 (rejecting plaintiff's characterization of an asserted fundamental right to "mak[e] life-shaping medical decisions that are necessary to preserve the integrity of her body, avoid

## 2. PLAINTIFF HAS NOT ASSERTED A LIBERTY INTEREST PROTECTED BY THE CONSTITUTION.

Against this standard, Plaintiff's opening supplemental brief does not assert a fundamental right or liberty interest protected by the Due Process Clause. Plaintiff argues that DOMA's "preclusion of equal benefits, in both purpose and effect, penalizes the most sacrosanct and enduring embodiment of [her] relationship with her long-time life partner, their marriage, and as such impinges on the liberty interests identified in Lawrence [v. Texas, 539 U.S. 558 (2003)]." Pl.'s Mem. at 13. This description, however, fails to narrowly and accurately define the right that Plaintiff seeks to vindicate, which is the right to enroll her spouse in her FEHBP health insurance plan. But there is no fundamental right to the enrollment of a spouse in such a federally provided insurance plan. As the Supreme Court has said, the Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196 (1989).

Plaintiffs' description of this asserted right does not transform it into a fundamental right. First, DOMA does not burden Plaintiff's "fundamental liberty and privacy interests in marital and familial relationships" because it neither prohibits same-sex couples from marrying or forming domestic partnerships nor prohibits States from acknowledging same-sex marriages. Second, the asserted harm of inability to enroll her spouse in Plaintiff's FEHBP health insurance plan bears no direct relationship to her rights to marry, to remain together with her wife as a married couple, or to marital privacy. See Califano v. Jobst, 434 U.S. 47, 54 (1977) (loss of federal social security benefits upon marriage does not "interfere with the individual's freedom to make a decision as important as marriage"); Druker v. Comm'r, 697 F.2d 46, 50 (2d Cir. 1982)

intolerable physical pain, and preserve her life" where the "centerpiece" of the plaintiff's claim is "the right to use marijuana . . .").

1    (same for "marriage penalty" in federal tax code; "[t]he adverse effect of the 'marriage penalty' .

2    . . like the effect of the termination of social security benefits in Jobst is merely 'indirect'").

3            Whatever incidental economic burden Plaintiff experiences as part of a married couple,

4    that burden is not an infringement upon any fundamental right.  The Supreme Court has held "in

5    several contexts that a legislature's decision not to subsidize the exercise of a fundamental right

6    does not infringe the right."  Regan v. Taxation with Representation of Wash., 461 U.S. 540, 549

7    (1983) (denial of tax exemption to organizations engaged in lobbying does not violate First

8    Amendment); see also Lyng v. Auto. Workers, 485 U.S. 360, 368 (1988) (denial of food stamps

9    to households with striking workers does not infringe strikers' right of association, even though

10   denying such benefits makes it harder for strikers to maintain themselves and their families).

11           At issue is the potential, incidental burden on Plaintiff's economic life as part of a

12   couple.[5]  Viewed as such, DOMA is presumptively constitutional.  As the Court of Appeals has

13   held, "legislative Acts adjusting the burdens and benefits of economic life come to the Court with

14   a presumption of constitutionality."  Ileto v. Glock, Inc., 565 F.3d 1126, 1138-39 (9th Cir. 2009)

15   _____

16   [5]  In that regard, this case differs significantly from Witt v. Dep't of the Air Force, 527 U.S. 806

17   (9th Cir. 2008), a case in which the plaintiff challenged the application of the military's "Don't
     Ask, Don't Tell" policy to her.  There, the Court of Appeals held that the policy was subject to

18   heightened scrutiny as applied to the plaintiff in that case.  Specifically, the Court found that the
     plaintiff's specific factual allegations, which were accepted as true for purposes of the motion to

19   dismiss, implicated the liberty interest in engaging in intimate personal relationships free from
     undue government interference, as described by the Supreme Court in Lawrence, 539 U.S. 558.

20   The plaintiff allegedly shared a home with her same-sex partner about 250 miles away from the
     military base; never had any sexual relations while on duty or on the base; and never told any

21   member of the military that she was a lesbian; moreover, her partner never served as a member or
     a civilian employee of the armed services.  Witt, 527 F.3d at 809-10.  Apparently based on an

22   anonymous tip, the military initiated an investigation into the plaintiff's sexual orientation.  Id. at

23   810; Witt, 444 F. Supp. 2d 1138, 1141 (W.D. Wash. 2006).  A military board found that the
     plaintiff had engaged in homosexual conduct and recommended that she be honorably

24   discharged.  Witt, 527 F.3d at 810.  Here, in contrast, there is no similar governmental intrusion

25   into Plaintiff's personal and private life.  Plaintiff's asserted interest in enrolling her wife in her
     FEHBP insurance plan is not the type of "autonomy of the person" that the Ninth Circuit held

26   was entitled to heightened scrutiny in Witt.

27

28   _Defendants' Supplemental Brief in Response to Court's Order of October 15, 2010_
     _4:10cv257-JSW_                                                                          8

1   (quoting <u>Usery v. Turner Elkhorn Mining Co.</u>, 428 U.S. 1, 15 (1976)).  "Barring irrational or

2   arbitrary conduct, Congress can adjust the incidents of our economic lives as it sees fit."  <u>Lyon v.</u>

3   <u>Agusta S.P.A.</u>, 252 F.3d 1078, 1086 (9th Cir. 2001).  As discussed in Part III.C.2, <u>infra</u>, DOMA

4   is not irrational.

5   **B.    DOMA DOES NOT INVOLVE A "SUSPECT" OR "QUASI-SUSPECT" CLASSIFICATION
        UNDER THIS CIRCUIT'S BINDING PRECEDENT.**

6       The Ninth Circuit has concluded that sexual orientation does not constitute a suspect

7   classification under the Fifth Amendment, and that holding is binding on this Court.  In <u>High</u>

8   <u>Tech Gays v. Defense Industrial Security Clearance Office</u>, 895 F.2d 563 (9th Cir. 1990), a case

9   challenging the military's policy of conducting expanded investigation into backgrounds of all

10  gay and lesbian applicants for security clearance, the Court of Appeals held that gays and

11  lesbians do not constitute a 'suspect" or "quasi-suspect" class.  <u>Id.</u> at 573-74.  The holding of

12  <u>High Tech Gays</u> was followed by <u>Philips v. Perry</u>, 106 F.3d 1420, 1425 (9th Cir. 1997), an equal

13  protection case in which the Court applied rational basis review to review the military's "Don't

14  Ask, Don't Tell" policy.  Recently in <u>Witt</u>, the Court of Appeals noted that these cases are "not

15  disturbed by <u>Lawrence</u>, which declined to address equal protection," 527 F.3d at 821, and

16  affirmed the dismissal of the plaintiff's equal protection challenge to "Don't Ask, Don't Tell."

17  Accordingly, binding circuit precedent requires only a rational basis review in examining

18  Plaintiffs' equal protection claim.[6]

19

20

21

22  [6]  Despite this precedent, Plaintiff argues that heightened scrutiny should apply, Pl.'s Mem. at 6-
    14, and attempts to bypass <u>High Tech Gays</u> by suggesting that it "is no longer good law" in the

23  wake of <u>Lawrence</u>.  <u>Id.</u> at 7 n.4.  The Ninth Circuit has already rejected that suggestion.  As
    pointed out in the text, <u>supra</u>, the Ninth Circuit in <u>Witt</u> noted that <u>High Tech Gays</u> and

24  subsequent circuit decisions applying rational basis scrutiny in the equal protection context are
    "not disturbed" by <u>Lawrence</u>, "which declined to address equal protection."  <u>Witt</u>, 527 F.3d at

25  821.  Although <u>Witt</u> applied heightened scrutiny to an as-applied due process challenge to the
    military's Don't Ask Don't Tell policy, it explicitly adhered to prior circuit precedent applying

26  rational basis review to equal protection challenges to the policy.  <u>Id.</u>

27

28  *Defendants' Supplemental Brief in Response to Court's Order of October 15, 2010*
    *4:10cv257-JSW*                                                                        9

**C.     DOMA SATISFIES RATIONAL BASIS REVIEW.**

     **1.     THE RATIONAL BASIS REVIEW STANDARD.**

Application of the rational basis standard to Section 3 of DOMA compels the conclusion that it is constitutional.  A statute involving neither fundamental rights nor suspect classifications is "accorded a strong presumption of validity" and must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Heller v. Doe, 509 U.S. 312, 319-20 (1993) (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993).  The burden is on the plaintiff "to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." Id. at 320-21 (quotation marks and internal citations omitted).  The government "has no obligation to produce evidence to sustain the rationality of a statutory classification," and "[a] legislative choice may be based on rational speculation unsupported by evidence or empirical data." Id.; accord Shaw v. Or. Pub. Employees' Ret. Bd., 887 F.2d 947, 948-49 (9th Cir. 1989) ("A court may even hypothesize the motivations of the . . . legislature to find a legitimate objective promoted by the provision under attack.") (citation and internal quotation marks omitted).  Thus, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." Beach Commc'ns, 508 U.S. at 313.

Importantly, the Supreme Court has cautioned that rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices," and "courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends." Heller, 509 U.S. at 319-21.  Rationales that are merely "plausible" or "arguable" are sufficient to "immuniz[e] the congressional choice from constitutional challenge," even where the assumptions underlying these rationales "may be erroneous." Beach Commc'ns, 508 U.S. at 320 (citations and quotation marks omitted).  "[J]udicial review is at an end once the court identifies a plausible basis on which the legislature may have relied." Fitzgerald v. Racing Ass'n of C. Iowa, 539 U.S. 103, 108-09 (2003).

2.     SECTION 3 OF DOMA SATISFIES RATIONAL BASIS REVIEW.

DOMA withstands review under this "highly deferential" standard.  Kahawaiolaa v. Norton, 386 F.3d 1271, 1279 (9th Cir. 2004).  DOMA was enacted in 1996, as the debate regarding same-sex marriage was just beginning in the States.  Congress anticipated that complicated questions would arise from such debates.  Indeed, at the time of DOMA's enactment, there were 1,049 federal statutory provisions classified in the United States Code in which benefits, rights, and privileges were contingent on marital status or in which marital status was a factor.[7]  DOMA "anticipate[d] these complicated questions by laying down clear rules to guide their resolution," while "preserv[ing] each State's ability to decide the underlying policy issue however it chooses."  H.R. Rep. No. 104-664, at 2; reprinted in 1996 U.S.C.C.A.N. at 2906.  It codified, for purposes of federal law, the definition of marriage then used in all fifty States as "a legal union between one man and one woman as husband and wife," 1 U.S.C. § 7, and allows each State to retain or alter that definition as it sees fit, see 28 U.S.C. § 1738C.  Thus, while States have continued to examine and debate the subject, DOMA (1) maintained the status quo as to the definition of marriage for purposes of federal programs and benefits; and (2) recognized the right of any State to allow gays and lesbians to marry while permitting other States to adhere to their understandings of the institution of marriage.[8]

---

[7]  See Letter from the U.S. General Accounting Office to Bill Frist, Senate Majority Leader, Regarding Defense of Marriage Act: Update to Prior Report, GAO-04-0353R (Jan. 23, 2004) (http://www.gao.gov/new.items/d04353r.pdf).

[8]  The government does not rely on certain purported interests in the legislative history of DOMA, such as interests in "responsible procreation and child-rearing."  This Administration disagrees with the assertions that (1) the government's interest in "responsible procreation" justifies limiting marriage to a union between one man and one woman, and (2) that the government has an interest in promoting the raising of children by both of their biological parents.  See H.R. Rep. No. 104-664, at 12-13.  Indeed, since the enactment of DOMA, many leading medical, psychological, and social welfare organizations have issued policies opposing restrictions on lesbian and gay parenting upon concluding, based on numerous studies, that children raised by gay and lesbian parents are as likely to be well-adjusted as children raised by heterosexual parents.  See American Academy of Pediatrics, http://aappolicy.aappublications.

*Defendants' Supplemental Brief in Response to Court's Order of October 15, 2010*
*4:10cv257-JSW*                                                                              11

1      Under the circumstances, Congress reasonably could have decided to adopt a wait-and-

2  see approach.  At the time of DOMA's enactment, no State had actually permitted gay and

3  lesbian couples to marry.  Today, five States and the District of Columbia have statutes or court

4  decisions that guarantee gay and lesbian couples the right to marry.[9]  In addition, New York and

5  Maryland recognize same-sex marriages performed under the laws of other jurisdictions,

6  although neither State issues marriage licenses to same-sex couples.[10]  On the other hand, twenty-

7  nine States have amended their constitutions limiting marriage to opposite-sex couples, and

8  twelve more States have enacted statutes to the same effect.  In any given State, the law may

9  change.  The States' legislative and constitutional activities in the years since DOMA's

10 _____

11 org/cgi/content/full/pediatrics;109/2/339 (February 2002 policy statement); American
   Psychological Association, http://www.apa.org/pi/lgbc/policy/parents.html (July 2004 policy
12 statement); American Academy of Child and Adolescent Psychiatry, http://www.aacap.org/cs
   /root/policy_statements/gay_lesbian_transgender_and_bisexual_parents_policy_statement (June
13 1999 policy statement); American Medical Association, http://www.ama-assn.org/ama/pub/about
   -ama/our-people/member-groups-sections/glbt-advisory-committee/ama-policy-regarding-sexual-
14 orientation.shtml (AMA Policy Regarding Sexual Orientation); Child Welfare League of
   America, http://www.cwla.org/programs/culture/glbtqposition.htm (Position Statement on
15 Parenting of Children by Lesbian, Gay, and Bisexual Adults).  Furthermore, in Lawrence, Justice
   Scalia acknowledged in his dissent that encouraging procreation would not be a rational basis for
16 limiting marriage to opposite-sex couples under the reasoning of the majority opinion – which, of
   course, is the prevailing law – because "the sterile and the elderly are allowed to marry."  539
17 U.S. at 605 (Scalia, J., dissenting).  Thus, the Administration does not believe that DOMA may
   be justified by interests in "responsible procreation" or "child-rearing."
18
        Accordingly, this Court need not address these arguments notwithstanding Plaintiff's
19 efforts to preemptively refute them.  See Pl.'s Mem. at 17-22.

20 
   [9]  Those States are New Hampshire, Vermont, Iowa, Connecticut, and Massachusetts.  See Good-
21 ridge v. Dep't of Pub. Health, 798 N.E.2d 941 (Mass. 2003); HB 436, An Act Relative to Civil
   Marriage & Civil Unions, 2009 N.H. Laws ch. 59; S. 115, An Act to Protect Religious Freedom
22 & Recognize Equality in Civil Marriage, 2009 Vt. Acts & Resolves no. 3; Varnum v. Brien, 763
   N.W.2d 862 (Iowa 2009); Kerrigan v. Comm'r of Pub. Health, 957 A.2d 407 (Conn. 2008); D.C.
23 Code § 46-401.

24 
   [10]  See Martinez v. County of Monroe, 50 A.D.3d 189 (N.Y. App. Div. 2008); Maryland Attorney
25 General opinion, 95 Op. Att'y (Feb 23, 2010) (http://www.oag.state.md.us/Opinions/
   2010/95oag3.pdf ).
26 

27 

28 Defendants' Supplemental Brief in Response to Court's Order of October 15, 2010
   4:10cv257-JSW                                                                          12

1    enactment demonstrate that same-sex marriage is an evolving social issue.  Recognizing that the

2    debate over this issue was upcoming in the States, Congress reasonably could have determined

3    that it was in the federal government's interest to preserve consistency in the definition of

4    marriage with respect to the distribution of federal benefits and administration of federal

5    programs by codifying the definition in use at the time in all fifty States and maintaining the

6    status quo pending further evolution of the States' deliberations on the issue.

7         To be sure, the enactment of DOMA altered the federal government's prior practice of

8    generally accepting marriages recognized by state law.[11]  Plaintiff attempts to make much of this,

9    arguing that rather than preserving the status quo, DOMA "drastically altered" it by shifting away

10   from the federal government's traditional deference to state law definitions of marriage.  Pl.'s

11   Mem. at 24 (citing Gill, 699 F. Supp. 2d at 393).  That suggestion is logically unsound.  At the

12   time Congress acted, all States were in full accord in recognizing only opposite-sex marriages,

13   and the fact that Congress chose to maintain that status quo in response to a new and evolving

14   social issue – rather than the competing status quo of deference to state definitions of marriage –

15   does not make its legislative choice irrational or arbitrary.  To the contrary, it was the sole option

16   between the two that would allow Congress to maintain a wait-and-see approach in the face of

17   evolving state approaches to same-sex marriages, thereby avoiding the need to immediately deal

18   with the potentially significant and unpredictable impact on federal law that a State's recognition

19   of same-sex marriage could have.  At the time of DOMA's passage, more than one thousand

20   federal statutory benefits, rights, and privileges depended on marital status as a factor.  In light of

21   this potential impact and recognizing that States were on the verge of considering a significant

22   change regarding access to marriage, Congress reasonably could have decided that it was in the

23   government's interest to maintain consistency and uniformity in distributing federal benefits and

24   _____

25   [11]  Not all federal laws adopt state law definition of marriage.  See, e.g., Taing v. Napolitano, 567
     F.3d 19, 21 (1st Cir. 2009) (plaintiff remained a "spouse" and "immediate relative" under the
26   Immigration and Naturalization Act, even if her marriage actually ceased under state law upon
     the death of her spouse).

27

28   *Defendants' Supplemental Brief in Response to Court's Order of October 15, 2010*
     *4:10cv257-JSW*                                                                          13

1    administering federal programs.  Congress may later decide to allocate federal benefits with

2    recognition of same-sex marriages or domestic partners, as this Administration believes it should.

3    Cf. Beach Commc'ns, 508 U.S. at 316 ("[R]eform may take one step at a time, addressing itself

4    to the phase of the problem which seems most acute to the legislative mind.") (citation and

5    quotation marks omitted); accord Butler v. Apfel, 144 F.3d 622, 625 (9th Cir. 1998) (same).[12]

6         Plaintiff's suggestion that the preservation of the status quo to allow an incremental

7    approach to addressing contentious social issues is not a government interest in and of itself is

8    similarly incorrect.  Pl.'s Mem. at 24.  As the Supreme Court has emphasized, legislatures may

9    "refin[e] their preferred approach as circumstances change and as they develop a more-nuanced

10   understanding of how best to proceed." Massachusetts v. EPA, 549 U.S. 497, 524 (2007); see

11   also SEC v. Chenery Corp., 332 U.S. 194, 202 (1947) ("Some principles must await their own

12   development, while others must be adjusted to meet particular, unforeseeable situations.").

13   Rational basis review recognizes that the legislature is entitled to respond to new social issues

14   one step at a time and to adjust national policy incrementally.  Even if the approach is deemed

15   "unwise, improvident, or out of harmony with a particular school of thought," Lee Optical v.

16   Williamson, 348 U.S. 483, 488 (1955), that is not a basis for overturning DOMA, for the

17   Constitution does not authorize the judiciary to "sit as a superlegislature to judge the wisdom or

18   desirability of legislative policy determinations made in areas that neither affect fundamental

19   rights nor proceed along suspect lines." Merrifield v. Lockyer, 547 F.3d 978, 989 (9th Cir. 2008)

20   (quoting New Orleans v. Dukes, 427 U.S. 297, 303 (1976)).

21        Thus, contrary to Plaintiff's contention, the preservation of the status quo at the federal

22   level – namely, the definition of marriage that was uniform among all fifty States in the year of

23   DOMA's passage – constitutes a legitimate government "end" insofar as it allows Congress the

24   _____

25   [12]  Indeed, bills currently pending in the House and Senate would provide various types of federal
     benefits for the same-sex domestic partners of current federal employees.  See S. 1102, 111th
26   Cong. (2009); H.R. 2517, 111th Cong. (2009).  The President has called on Congress to pass this
     legislation.

27

28   *Defendants' Supplemental Brief in Response to Court's Order of October 15, 2010*
     *4:10cv257-JSW*                                                                          14

ability to wait to see how the national debate over same-sex marriage is to be resolved.  It is a
"legitimate government interest" to "preserv[e] . . . the status quo" while long-term options are
being evaluated.  Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1245 (11th Cir.
2003); see also Teigen v. Renfrow, 511 F.3d 1072 (10th Cir. 2007).

At the same time, DOMA allows the preservation of uniformity regarding federal
benefits, which is likewise a legitimate congressional goal.  See, e.g., U.S. Const. art. I, § 8
(assigning Congress task of "collect[ing] taxes . . . to . . . provide for the . . . general Welfare"
and establishing "uniform Rules of Naturalization, and uniform Laws on the subject of
Bankruptcies").  As this Circuit has noted, achieving "uniformity within" a sphere of federal
regulation is a "legitimate interest[]."  In re Cardelucci, 285 F.3d 1231, 1236 (9th Cir. 2002).  For
example, in the realm of state spousal inheritance laws that vary depending on whether a state
adopts community property or common-law rules, Congress has a "valid and rational basis for"
creating its own set of distinct rules to "equaliz[e] the income tax burden between community
property and common law property states." Richards v. United States, 683 F.2d 1219, 1225 &
n.17 (9th Cir. 1981).

Accordingly, should this Court reach the issue, it should uphold the constitutionality of
DOMA.

**IV.     Question 4:  Defendants contend that DOMA is "discriminatory."  (See Opp. Br. to
PI at 2:3; see also Statement from Elaine Kaplan, OPM General Counsel,
Declaration of James R. McGuire, Ex. J at 1.)  The Court directs Defendants to
address on what grounds they contend DOMA is discriminatory.**

As the President has stated previously (and as Defendants noted in their opposition to
Plaintiff's motion for preliminary injunction), this Administration does not support DOMA as a
matter of policy, believes it is discriminatory, and supports its repeal.[13]  Under DOMA, same-sex

---

[13]  Consistent with the rule of law, however, the Department of Justice has long followed the
practice of defending federal statutes as long as reasonable arguments can be made in support of
their constitutionality, even if the Department disagrees with a particular statute as a matter of
policy, as it does here.

1   couples married under the laws of states that permit same-sex marriage are not eligible for certain

2   federal benefits for which opposite-sex couples are eligible.  In that respect, DOMA treats

3   opposite-sex and same-sex couples differently in their access to such benefits.  Although the

4   Administration believes that this type of discrimination is unfair and unwise, the fact that DOMA

5   differentiates between opposite-sex and same-sex couples does not mean that it is

6   unconstitutional under Ninth Circuit precedent, as explained in Part III, supra.[14]

7                                        **CONCLUSION**

8          For the reasons set forth in Defendants' motion to dismiss and supporting memoranda,

9   the Court should dismiss Plaintiff's claim for Mandamus.  Moreover, for the reasons set forth

10  herein in response to the Court's October 15 Order, Defendants respectfully submit that the Court

11  should not look beyond the sole claim alleged in Plaintiff's Amended Complaint and enforce

12  Judge Kozinski's administrative EDR orders on grounds different than those actually articulated

13  in the orders.

14

15

16

17

18

19  _____

20  [14]  Indeed, in recognition of this differential treatment, the President recently issued a
    memorandum requiring all executive departments and agencies to take steps, consistent with

21  existing law, to extend benefits to the same-sex domestic partners of federal employees, and
    where applicable, to the children of same-sex domestic partners of federal employees.  See

22  Presidential Memorandum, Extension of Benefits to Same-Sex Domestic Partners of Federal
    Employees (June 20, 2010).  OPM was directed to, among other things, clarify that for purposes

23  of employee assistance programs, same-sex domestic partners and their children qualify as
    "family members."  In addition, pursuant to a prior Presidential Memorandum Regarding Federal

24  Benefits and Non-discrimination (June 17, 2009), OPM recently issued final regulations
    expanding the definition of "qualified relatives" to include same-sex domestic partners of eligible

25  federal employees in the federal long-term care insurance program.  75 Fed. Reg. 30267 (June 1,
    2010) (to be codified at 5 C.F.R. pt. 875.)

26

27

28  *Defendants' Supplemental Brief in Response to Court's Order of October 15, 2010*
    *4:10cv257-JSW*                                                              16

1   Dated: November 19, 2010                    Respectfully Submitted,

2                                               MICHAEL F. HERTZ
                                                Acting Assistant Attorney General
3
                                                JOSEPH P. RUSSONIELLO
4                                               United States Attorney

5                                               SUSAN K. RUDY
                                                Assistant Branch Director
6
                                                 */s/ Christopher R. Hall*
7                                               CHRISTOPHER R. HALL
                                                D.C. Bar No. 468827
8                                               Trial Attorney
                                                U.S. Department of Justice
9                                               Civil Division, Federal Programs Branch
                                                P.O. Box 883
10                                              Washington, D.C. 20044
                                                (202) 514-4778 (telephone)
11                                              (202) 616-8470 (fax)

12                                              Attorneys for Defendants

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28