1 PAUL D. CLEMENT, ESQ. (DC Bar 433215)
  pclement@bancroftpllc.com
2 H. CHRISTOPHER BARTOLOMUCCI, ESQ. (DC Bar 453423)
  cbartolomucci@bancroftpllc.com
3 CONOR B. DUGAN. ESQ. (MI Bar P66901)
  cdugan@bancroftpllc.com
4
  BANCROFT PLLC
5 1919 M Street, NW, Suite 470
  Washington, DC 20036
6 202-234-0090 (phone); 202-234-2806 (fax)

7 OF COUNSEL:
  KERRY W. KIRCHER, GENERAL COUNSEL (DC Bar 386816)
8 Kerry.Kircher@mail.house.gov
  JOHN D. FILAMOR, SR. ASS'T COUNSEL (DC Bar 476240)
9 John.Filamor@mail.house.gov
  CHRISTINE DAVENPORT, SR. ASS'T COUNSEL (NJ Bar)
10 Christine.Davenport@mail.house.gov
  KATHERINE E. MCCARRON, ASS'T COUNSEL (DC Bar 486335)
11 Katherine.McCarron@mail.house.gov
  WILLIAM PITTARD, ASS'T COUNSEL (DC Bar 482949)
12 William.Pittard@mail.house.gov
  KIRSTEN W. KONAR, ASS'T COUNSEL (DC Bar 979176)
13 Kirsten.Konar@mail.house.gov

14 OFFICE OF GENERAL COUNSEL
  U.S. House of Representatives
15 219 Cannon House Office Building
  Washington, DC 20515
16 202-225-9700 (phone); 202-226-1360 (fax)

17 Counsel for Proposed Intervenor The Bipartisan Legal
  Advisory Group of the U.S. House of Representatives
18

## UNITED STATES DISTRICT COURT
19
## NORTHERN DISTRICT OF CALIFORNIA

20              )
  KAREN GOLINSKI,        ) Case No. 3:10-cv-0257-JSW
21              ) Hearing: June 17, 2011, 9:00 am
         Plaintiff,  )
22              ) **REPLY OF THE BIPARTISAN**
       vs.      ) **LEGAL ADVISORY GROUP OF**
23

REPLY OF THE BIPARTISAN LEGAL ADVISORY GROUP OF THE U.S. HOUSE OF REPRESENTATIVES TO DEFENDANTS'
RESPONSE TO MOTION TO INTERVENE FOR A LIMITED PURPOSE
Case No. 3:10-cv-00257-JSW

| | | |
|---|---|---|
| 1 | | **THE U.S. HOUSE OF** |
| | UNITED STATES OFFICE OF PERSONNEL | ) **REPRESENTATIVES TO** |
| 2 | MANAGEMENT, *et al.*, | ) **DEFENDANTS' RESPONSE** |
| | | ) **TO MOTION TO INTERVENE** |
| 3 | Defendants. | ) **FOR A LIMITED PURPOSE** |
| | | ) |
| 4 | | |

5     As the Court is aware, the Attorney General announced on February 23, 2011, that the

6  Department of Justice ("Department") would cease defending—including in this case—the

7  constitutionality of Section III of the Defense of Marriage Act, 1 U.S.C. § 7 ("DOMA"), against

8  claims that DOMA violates the equal protection component of the Due Process Clause of the

9  Fifth Amendment.  *See* Order to Show Cause at 1 (Feb. 23, 2011) (Doc. 94) (taking judicial

10  notice of Attorney General's announcement).  In so announcing, the Attorney General expressly

11  articulated his intent to "provid[e] Congress a full and fair opportunity to participate in the

12  litigation in [the] cases [at issue]."  Letter from Eric H. Holder, Jr., Att'y Gen., to Hon. John A.

13  Boehner, Speaker, U.S. House of Representatives at 5-6 (Feb. 23, 2011) ("Holder Letter"),

14  *available on-line at* http://www.justice.gov/opa/pr/2011/February/11-ag-223.html.

15     On March 9, the Bipartisan Legal Advisory Group of the U.S. House of Representatives

16  ("House") determined to defend the statute and, taking the Attorney General at his word, moved

17  to intervene as a defendant in this case because that is the only way for the House "fully and

18  fairly" to participate in this litigation.  *See* Notice of Mot. and Mot. of . . . House . . . to Intervene

19  for a Limited Purpose (May 4, 2011) ("Motion to Intervene") (Doc. 103).

20     On May 24, the Department responded.  *See* Def.'s Resp. to the Mot. to Intervene for a

21  Limited Purpose (May 24, 2011) ("DOJ Resp.") (Doc. 112).  Notwithstanding its continued

22  professions of non-opposition—"the United States does not oppose [the House's] Motion to

23

1   Intervene," *id*. at 1—the Department now seeks effectively to reduce the House to the status of

2   *amicus curiae* by questioning the House's standing to intervene, *id*. at 2, by limiting the House to

3   "present[ing] arguments," *id*. at 1, and by asserting a right to act as gatekeeper for the House's

4   efforts to defend a validly enacted statute that the Department itself refuses to defend, *id*. at 3.

5       The Court should reject the Department's attempts to prevent the House from

6   participating in this case as a party defendant to defend DOMA when no other party has any

7   interest in doing so.  The Department is inappropriately attempting to control the manner in

8   which the House defends DOMA, and is impliedly asserting the authority, unilaterally, to

9   preclude judicial determination of the constitutionality of legislation.  Where, as here, the

10  Department refuses to carry out its constitutional responsibility to defend a duly enacted federal

11  statute, Congress is empowered to intervene, without restriction, to defend the statute in order to

12  enable the Judiciary, *and not the Executive*, to make the ultimate determination, in an adversary

13  setting, of the statute's constitutionality:  "We have long held that Congress is the proper party to

14  defend the validity of a statute when an agency of government, as a defendant charged with

15  enforcing the statute, agrees with plaintiffs that the statute is inapplicable or unconstitutional."

16  *INS v. Chadha*, 462 U.S. 919, 940 (1983) (citing *Cheng Fan Kwok v. INS*, 392 U.S. 206, 210 n.9

17  (1968); *United States v. Lovett*, 328 U.S. 303 (1946)).

18                          *     *     *

19       1.  <u>The House Has Standing</u>.  The Department's response begins with the misplaced

20  premise that the House lacks standing to be a party in this litigation.  *See* DOJ Resp. at 2

21  ("Congress's interest in the constitutional validity of a law does not confer standing to enter an

22  action as a party any more than citizens with a generalized grievance would have standing to do

23

so.").  As an initial matter, this argument is beside the point.  As many courts have recognized, so long as the Office of Personnel Management ("OPM") and John Berry, Director of OPM (collectively, "Defendants") remain parties to this action—and they will remain parties, regardless of the role the Department chooses to play or not play in the litigation, until they are dismissed or the case concludes, neither of which has occurred—the House need not demonstrate any standing whatsoever.  *See, e.g.*, *San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc) (Article III standing not required for defendant intervention where ongoing case or controversy); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 190 (2d Cir. 1978) ("The question of standing in the federal courts is to be considered in the framework of Article III which restricts judicial power to cases and controversies.  The existence of a case or controversy having been established as between the [existing parties], there was no need to impose the standing requirement upon the proposed intervenor [defendant].") (quotation marks, citations, and brackets omitted); *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998) (same); *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994) (same).

While the Ninth Circuit "has not definitively ruled on the issue" of independent intervenor standing, *Prete v. Bradbury*, 438 F.3d 949, 956 n.8 (9th Cir. 2006), it has strongly suggested that it "does not require independent Article III standing for intervenors."  *Id.* (citing *Yniguez v. Arizona*, 939 F.2d 727 (9th Cir. 1991), *vacated on other grounds sub nom. Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)).

As a result, neither of the cases cited by the Department is apposite.  *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 482-83 (1982), stands only for the unremarkable proposition that status as a U.S. citizen and/or

1    taxpayer does not alone confer standing to challenge government action (or inaction).  And in

2    *Newdow v. U.S. Congress*, 313 F.3d 495 (9th Cir. 2002), the Ninth Circuit denied the Senate's

3    request to intervene in an Establishment Clause case that challenged, among other things, a

4    federal statute inserting the words "under God" into the Pledge of Allegiance, where (i) the

5    Senate sought to intervene pursuant to a statute (2 U.S.C. § 288e(a)) that specifically limited

6    Senate intervention to cases "in which the powers and responsibilities of Congress under the

7    Constitution . . . are placed in issue" and required that the Senate's Article III standing be shown

8    to exist; and (ii) most importantly, the Department actively was defending the constitutionality of

9    the statute in the litigation (so that the question of independent intervenor standing did not arise).

10   In so holding, the Ninth Circuit distinguished a number of cases in which, unlike in *Newdow* (but

11   exactly as here), a congressional body successfully intervened to defend the constitutionality of a

12   statute that Department had refused to defend.  *Newdow*, 313 F.3d at 498.

13          In any event, although the Court need not reach this issue, it is clear from *Chadha* that the

14   House *does* have standing here.  In *Chadha*, a private party challenged the constitutionality of a

15   federal statute that the Department declined to defend.  After the Ninth Circuit ruled for the

16   plaintiff, the House and Senate moved to intervene for the purpose of filing a petition for

17   certiorari.  *Chadha*, 462 U.S. at 930 n.5.  The Ninth Circuit granted that motion, and the Supreme

18   Court granted the subsequent House and Senate petitions for certiorari, holding—over the

19   Department's suggestion otherwise, *see* Mem. for the Fed. Resp't, *U.S. House of Representatives*

20   *v. INS*, Nos. 80-2170 & 80-2171, 1981 U.S. S. Ct. Briefs LEXIS 1423, at *4 (Aug. 28, 1981)—

21   that "Congress is both a proper party to defend the constitutionality of [the statute] and a proper

22   petitioner under [the statute governing petitions for writs of certiorari]."  *Chadha*, 462 U.S. at

23

1  939.  In so holding, the Supreme Court made crystal clear that the House and Senate had Article

2  III standing:  "[A]n appeal must present a justiciable case or controversy under Art. III.  Such a

3  controversy clearly exists . . . *because of the presence of the two Houses of Congress as adverse*

4  *parties*."  *Id*. at 931 n.6 (emphasis added).  Therefore, when the Department defaults on its

5  constitutional responsibilities to defend the constitutionality of a statute, as it has here, the House

6  may intervene and, when it does, it has Article III standing.

7         In keeping with *Chadha's* holding, congressional entities—including specifically the

8  House through its Bipartisan Legal Advisory Group—repeatedly have intervened to defend the

9  constitutionality of legislation the Department has refused to defend, including but not limited to:

10  *In re Koerner*, 800 F.2d 1358, 1360 (5th Cir. 1986) ("In response [to the Department's support

11  for plaintiff's constitutional challenge to the Bankruptcy and Federal Judgeship Act of 1984], the

12  United States Senate and the House Bipartisan Leadership Group intervened to defend the

13  constitutionality of the 1984 Act."), and *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d

14  875, 879, 880 (3d Cir. 1986) (President Reagan declared Competition in Contracting Act

15  ["CICA"] unconstitutional and "upon the advice of the Attorney General . . . ordered the

16  executive department not to observe it"; the district court, "grant[ed] the motion of the Senate,

17  the Speaker, and the Bipartisan Leadership Group of the House to intervene as plaintiffs to

18  support the constitutionality of CICA"), *modified* 809 F.2d 979 (3d Cir. 1986); *see also Adolph*

19  *Coors Co. v. Brady*, 944 F.2d 1543, 1545 (10th Cir. 1991); *Barnes v. Carmen*, 582 F. Supp. 163,

20  164 (D.D.C. 1984), *rev'd sub nom. Barnes v. Kline*, 759 F.2d 21, 22 (D.C. Cir. 1984), *vacated on*

21  *mootness grounds sub nom. Burke v. Barnes*, 479 U.S. 361, 362 (1987); *In re Moody*, 46 B.R.

22  231, 233 (M.D.N.C. 1985); *In re Tom Carter Enters., Inc.*, 44 B.R. 605, 606 (C.D. Cal. 1984); *In*

23

5

1 | *re Benny*, 44 B.R. 581, 583 (N.D. Cal. 1984), *aff'd in part and dismissed in part*, 791 F.2d 712

2 | (9th Cir. 1986).

3 |     2. <u>The House Is Entitled To Do More than Just "Present Arguments.</u>"  The Department's

4 | suggestion that the House be limited to "present[ing] arguments," DOJ Resp. at 1, also must be

5 | rejected.  Such a narrow role is not consistent with the status of an intervenor defendant which,

6 | the Supreme Court has made clear, is the proper capacity for the House once the Department

7 | defaulted on its constitutional responsibility to defend DOMA:  "*Congress is the proper party to*

8 | *defend* the validity of a statute when an agency of government, as a defendant charged with

9 | enforcing the statute, agrees with plaintiffs that the statute is inapplicable or unconstitutional."

10 | *Chadha*, 462 U.S. at 940 (emphasis added).  And once the House is permitted to intervene as a

11 | party defendant, *with full responsibility for defense of the statute*, it must have the same rights as

12 | any other party, including the right to take discovery, if necessary, and the right to appeal or

13 | petition for certiorari.  *Id.*; *see also Coalition of Ariz./N.M. Cntys. for Stable Econ. Growth v.*

14 | *Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996) (affirming intervention:  "[T]he right to file

15 | a brief as *amicus curiae* is no substitute for the right to intervene as a party . . . .").

16 |     The Department notes that it supported Supreme Court review of challenged statutes in

17 | *Chadha* (by filing an appeal) and *Lovett* (by petitioning for certiorari).  DOJ Resp. at 3.  But that

18 | is irrelevant because both those actions predated the Supreme Court's opinion in *Chadha*.

19 | Furthermore, the procedural history of *Chadha* itself refutes the Department's position.  In that

20 | case, as noted above, the House and Senate moved to intervene in the Ninth Circuit in order to

21 | petition for certiorari.  *See Chadha*, 462 U.S. at 930 n.5.  The Ninth Circuit granted that motion,

22 | and—not mentioned by the Department—the Supreme Court then *granted* the subsequent House

23 |

6

1  and Senate petitions for certiorari, specifically disregarding the Department's suggestion that its

2  appeal rendered Congress's petition for certiorari superfluous:  "Congress is . . . a proper

3  petitioner under [the statute governing petitions for writs of certiorari]."  *Id.* at 939.  As a result,

4  the Department's appeal was irrelevant which means the Supreme Court flatly has rejected the

5  Department's suggestion that the House must be relegated merely to "present[ing] arguments."

6  DOJ Resp. at 1.  As to *Lovett*, the Supreme Court cited that case in *Chadha* in support of its

7  statement that "[w]e have long held that Congress is the proper party to defend the validity of a

8  statute when an agency of government, as a defendant charged with enforcing the statute, agrees

9  with plaintiffs that the statute is inapplicable or unconstitutional."  *Chadha*, 462 U.S. at 940.

10          3.  The House Does Not Need the Department's Assistance to Defend DOMA.  It

11  follows, therefore, that the House does not need the Department to take "procedural steps . . . to

12  enable [the House] to present arguments" in defense of DOMA, DOJ Resp. at 3; does not need

13  the Department to file "motions . . . to ensure that this Court can consider arguments on both

14  sides of the constitutional issue and that the Court has jurisdiction to enter judgment," *id.*; and

15  does not need the Department's assistance to "invoke the jurisdiction of the Supreme Court," *id.*

16  In short, the House does not need the Department's blessing or approval to defend DOMA in

17  such manner as the House deems fit.  *See Chadha*, 462 U.S. at 930 n.5, 931 n.6, 939-40.

18  Accordingly, the Court should decline to sign the Department's proposed Order—an Order that

19  would limit the House's role to activities "consistent with the Department of Justice's role in this

20  case as counsel for Defendants," Doc. 112-1—inasmuch as there is no basis in law for grafting

21  this opaque and undefined proviso onto an order granting the House's Motion to Intervene.

22

23

1    The disturbing legal implication of the Department's position here is that *it* has the power

2    effectively to preclude judicial determination, in an adversary setting, of a statute's

3    constitutionality by (i) first refusing to defend a statute's constitutionality, and (ii) then

4    withholding or withdrawing its "commitment to provide Congress a full and fair opportunity to

5    participate in the litigation."  DOJ Resp. at 1.  Denying the House the ability to intervene, as a

6    full party, to defend the constitutionality of an act of Congress the Department has chosen not to

7    defend would be tantamount, or nearly so, to providing the Executive Branch with an extra-

8    constitutional post-enactment veto over federal statutes to which it objects.  *See Lear Sigler, Inc.*

9    *v. Lehman*, 842 F.2d 1102, 1122 (9th Cir. 1988), *vacated in part on other grounds*, 893 F.2d 205

10   (9th Cir. 1990) ("executive branch [is not permitted] to interpret the Constitution so as to assume

11   additional powers or thwart the constitutional functions of a coordinate branch").

12       The practical implications of the Department's position are equally disturbing.  The

13   Department has made clear in this case that it will "continue to represent the interests of the

14   United States throughout th[is] litigation."  Letter from Ronald Weich, Ass't Att'y Gen., to the

15   Hon. John A. Boehner, Speaker, U.S. House of Representatives (Feb. 25, 2011) (Doc. 96-1),

16   attached as Ex. 1 to Def.'s Resp. to Order to Show Cause . . . (Feb. 28, 2011) (Doc. 96).  Thus,

17   the Department has a client, and that client is not the House.  What happens when the House's

18   interest in conducting the litigation in the manner it deems appropriate diverges from what the

19   Department perceives to be the interests of the Executive Branch?  What happens, for example,

20   when the House wishes to accelerate or decelerate the timing of a notice of appeal or a petition

21   for certiorari and the Department, in the interests of its client, wishes to do the opposite?  What

22   happens if the Department decides to file pleadings challenging the constitutionality of DOMA

23

1  at the same time that the House is trying to defend the constitutionality of DOMA?  If the

2  Department cannot even support the House's effort to intervene without, at the same time, trying

3  to hamstring the House, how likely is it the Department will move aside when the House has to

4  make substantive litigation decisions?

5  The answer is that the Court should decline the Department's invitation to create

6  conditions that would strain relations between the Legislative and Executive Branches of the

7  federal government, and interfere with the orderly consideration by the Judiciary of DOMA's

8  constitutionality, by granting the House's Motion to Intervene as a full party defendant.

9  **CONCLUSION**

10  For all the reasons stated above and in its Motion to Intervene, the House respectfully

11  requests that the Court grant the motion and enter the House's Proposed Order, Doc. 103-1.

12

13  Respectfully submitted,

14

15  /s/ Paul D. Clement
   Paul D. Clement, Esq.
   H. Christopher Bartolomucci, Esq.

16  Conor B. Dugan, Esq.[1]

17  BANCROFT PLLC

18  Counsel for the Bipartisan Legal Advisory
   Group of the U.S. House of Representatives

19
   May 25, 2011

20

21  _____

22  [1]  Kerry W. Kircher, as ECF filer of this document, attests that concurrence in the filing of the document has been obtained from signatories Paul D. Clement, H. Christopher Bartolomucci, and Conor B. Dugan.

23

9

1

## CERTIFICATE OF SERVICE

2          I certify that on May 25, 2011, I served one copy of the Reply of the Bipartisan Legal

3   Advisory Group of the U.S. House of Representatives to Defendants' Response to Motion to

4   Intervene for a Limited Purpose by CM/ECF, by electronic mail (.pdf format), and by first-class

5   mail, postage prepaid, on the following:

6

7          James R. McGuire, Esq.
           Gregory P. Dresser, Esq.
           Rita F. Lin, Esq.
8          MORRISON & FOERSTER LLP
           425 Market Street
9          San Francisco, CA   94105-2482

10         Jon W. Davidson, Esq.
           Tara L. Borelli, Esq.
11         LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
           3325 Wilshire Blvd.
12         Suite 1300
           Los Angeles, CA   90010-1729
13
           Christopher R. Hall, Trial Attorney
14         U.S. DEPARTMENT OF JUSTICE
           Civil Division - Federal Programs Branch
15         Room 7128
           20 Massachusetts Ave., N.W.
16         Washington, DC   20001

17

18
                                        */s/ Kerry W. Kircher*
19                                      Kerry W. Kircher

20

21

22

23

REPLY OF THE BIPARTISAN LEGAL ADVISORY GROUP OF THE U.S. HOUSE OF REPRESENTATIVES TO DEFENDANTS'
RESPONSE TO MOTION TO INTERVENE FOR A LIMITED PURPOSE
Case No. 3:10-cv-00257-JSW