IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN GOLINSKI,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT and JOHN BERRY, Director of the United States Office of Personnel Management, in his official capacity,<br><br>    Defendant.<br>_____/ | No. C 10-00257 JSW<br><br>**NOTICE OF QUESTIONS FOR HEARING** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING QUESTIONS FOR THE HEARING SCHEDULED ON DECEMBER 16, 2011 AT 9:00 A.M.:

The Court has reviewed the parties' papers and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, with reference to pin cites and without argument or additional briefing. *Cf.* N.D. Civil Local Rule 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority. The Court suggests that associates or of counsel attorneys who are working on this case be permitted to address some or all of the Court's questions contained herein.

The parties shall each have 45 minutes to address the following questions:

1. The passage of Section 3 of the Defense of Marriage Act ("DOMA") marks a unique departure from the recognition the federal government historically has afforded to State marital status determinations. *See, e.g., Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 12 (2004) (holding that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."); *see also Boggs v. Boggs*, 520 U.S. 833, 848 (1997) (holding that family law, including "declarations of status, e.g., marriage, annulment, divorce, custody and paternity," is the archetypal area of local concern).

   a. As DOMA represents a stark departure from the federalist tradition and implicates a core State power to govern domestic relations, is there any authority for the Court to subject the statute to a more rigorous constitutional scrutiny?

   b. The few unique examples cited by BLAG when Congress legislated in the area of domestic relations occurred when Congress was explicitly acting in the role of state government. Are there any historical examples in which Congress legislated on behalf of the federal government in the area of domestic relations?

2. Why should the Court not subject DOMA to heightened scrutiny for impacting marriage, as a basic fundamental freedom and an exercise of personal decision-making protected by the right of privacy? *See, e.g., Loving v. Commonwealth of Virginia*, 388 U.S. 1, 12 (1967); *In re Levenson,* 587 F.3d 925, 931 n.5 (9th Cir. 2009).

3. In *Lawrence v. Texas*, 539 U.S. 558, 567 (2003), the Supreme Court, in overruling *Bowers v. Hardwick*, 478 U.S. 186, 190 (1986), noted that the *Bowers* Court had "misapprehended the claim of liberty presented to it" and had failed "to appreciate the extent of the liberty at stake." Here, BLAG advocates defining the right at issue as the right to same-sex marriage. Is that too narrowly defining the right at issue? What is the authority for the position that only the right to opposite-sex marriage is fundamental as opposed to the right to marriage generally?

4. Are classifications based on religious affiliation treated as suspect class and subject to heightened scrutiny under an Equal Protection analysis? How does BLAG distinguish the line of authority treating classifications based on religious affiliation as a suspect class from classifications based on sexual orientation?

5. What is the statutory authority for and evidence of compliance with the role that the Bipartisan Legal Advisory Group has assumed in this matter? Is this group actually bipartisan? Does BLAG have the support – and funding for the increasing cost of defending DOMA – from a majority of Congress or just from the House of Representatives? *See Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 940 (holding that Congress is the proper party to defend the validity of a statute when an agency of government charged with enforcing the statute agrees that the statute is unconstitutional).

6. How does BLAG distinguish the ruling in *Gill v. Office of Personnel Management*, 699 F. Supp. 2d 374 (D. Mass. 2010), which found that DOMA does not pass constitutional muster under even rational basis scrutiny?

2

7. What are BLAG's proffered bases for upholding the constitutionality of DOMA?

   a. BLAG argues that DOMA provides consistency in the definition of marriage. However, traditionally, marriage has been defined by the states. Under DOMA, for the first time, federal officials are now tasked with determining the validity of particular marriages that have been sanctioned under state law. How does treating some state sanctioned marriages different from others promote consistency or maintain the status quo?

   b. The fact that marriage traditionally has been defined as between a man and a woman merely describes what has been. How does codifying this description constitute a justification, reason, or basis for restricting marriage? *See Heller v. Doe*, 509 U.S. 312, 326 (1993) (holding that "[a]ncient lineage of a legal concept does not give it immunity from attack for lacking a rational basis"); *Lawrence* concurrence. Does BLAG have any authority for the proposition that codification of a long-standing tradition independently constitutes a rational basis?

   c. In support of miscegenation laws, proponents argued that the long-standing tradition of the separation of the races provided justification for prohibiting inter-racial marriage. How does BLAG's argument about the tradition of heterosexual marriage differ from the miscegenation context?

   d. How does the withholding of federal benefits to children of families with same-sex parents encourage responsible parenting and child rearing?

8. How does the sharing of benefits with another group of lawfully married persons denigrate the importance of the benefits already conferred upon the original group? In other words, how are heterosexual lawfully married persons affected by the sharing of benefits with lawfully married homosexual persons?

9. To the extent the Court decides the issues presented on the motion for summary judgment, does BLAG contend the motion to strike evidentiary materials is applicable?

10. Do the parties have anything further they wish to address?

**IT IS SO ORDERED.**

Dated: December 14, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE